# EXHIBIT A

**Sort by date:** Descending Ascending **Display options:** All Entries

**06/03/2026**

Notice of Service

Acknowledgment of Service and Email Correspondence from Plaintiff

**Corporation Served**

Document ID - 26-SMCC-483; Served To - BETTER MORTGAGE CORPORATION; Served Date - 06/02/2026; Served Time - 11:54:00; Service Type - SP; Reason Description - SERV; Service Text -

**05/26/2026**

**Summons Issued-Circuit**

Document ID: 26-SMCC-483, for BETTER MORTGAGE CORPORATION; Emailed to Plaintiff

**Correspondence Filed**

**Filed By:** WILLIAM WILSON

**Order - Special Process Server**

**Motion Special Process Server**

**Filed By:** WILLIAM WILSON

**Amended Motion/Petition Filed**

**Filed By:** WILLIAM WILSON

**05/21/2026**

**Corporation Served**

Document ID - 26-SMCC-436; Served To - BETTER MORTGAGE CORPORATION; Served Date - 05/15/2026; Served Time - 08:30:00; Service Type - SD; Reason Description - SERV; Service Text -

**05/20/2026**

**Notice of Service**

Summons Served to Better Mortgage Corporation

**05/06/2026**

**Judge Assigned**

**Summons Issued-Circuit**

Document ID: 26-SMCC-436, for BETTER MORTGAGE CORPORATION Money Order 22-126870802

**Confid Filing Info Sheet Filed**

**Pet Filed in Circuit Ct**

# Summons in Civil Case

IN THE 24TH JUDICIAL CIRCUIT, ST. FRANCOIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division: | **Case Number: 26SF-CC00101** | |
| Plaintiff/Petitioner:<br>WILLIAM WILSON<br>vs. | Plaintiff's/Petitioner's Attorney/Address | |
| Defendant/Respondent:<br>BETTER MORTGAGE CORPORATION | Court Address:<br>1 NORTH WASHINGTON ST<br>FARMINGTON, MO 63640 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp for Return) |

**The State of Missouri to:** **BETTER MORTGAGE CORPORATION**

**R/A: CT CORPORATION SYSTEM 5661 TELEGRAPH RD STE 4B ST. LOUIS, MO 63129**

1 WORLD TRADE CENTER 80TH FLOOR
NEW YORK, NEW YORK 10007

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. FRANCOIS COUNTY***

| | |
|---|---|
| 06-MAY-2026 | /s/Kristina Bone by: Jennifer Webb |
| Date | Clerk |

**Further Information:**

**Case Number: 26SF-CC00101**

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with __________________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________________ (name) __________________________ (title).

☐ other: ____________________________________________________________________.

Served at ______________________________________________________________ (address)
in ______________________________ (County/City of St. Louis), MO, on __________________ (date)
at _____________ (time).

______________________________________ ________________________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on __________________________ (date).

*(Seal)*

My commission expires: _________________ __________________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

| | | |
|---|---|---|
| WILLIAM WILSON &<br>SARAH WILSON,<br>PO Box 227,<br>Farmington, Missouri 63640,<br><br>Plaintiffs,<br><br>v. | ) | FILED<br>MAY 06 2026<br>KRISTINA BONE, CIRCUIT CLERK<br>ST. FRANCOIS COUNTY, MO<br><br>Case No. 26SF-CC00101<br>Division: ____________ |
| BETTER MORTGAGE CORPORATION,<br>1 World Trade Center, 80th Floor,<br>New York, New York 10007,<br>Registered Agent for Service:<br>C T CORPORATION SYSTEM,<br>5661 Telegraph Road, Suite 4B,<br>Saint Louis, Missouri 63129-4275,<br><br>Defendant. | ) | TRIAL BY JURY DEMANDED |

**PETITION FOR DAMAGES AND JURY DEMAND**

Plaintiffs William Donald Wilson and Sarah Wilson, appearing pro se, file this Petition for Damages and Jury Demand against Defendant Better Mortgage Corporation ("Better") and state as follows:

## I. INTRODUCTORY STATEMENT

1. This action arises from Better's handling of an FHA purchase mortgage for a new-build residence located at 1239 Stono Mountain Drive, Farmington, St. Francois County, Missouri 63640.

2. The transaction involved Better Loan No. 1649285704, FHA/VA Case No. 292-8445580, seller/builder Honey Bee Holdings LLC, and Preferred Land Title, LLC of Farmington, Missouri as settlement agent.

3. Better accepted and processed William's loan application beginning on or about February 2, 2026, issued written loan disclosures and authorizations, issued a written mortgage commitment, obtained an FHA appraisal, issued multiple Loan Estimates and Closing Disclosures, communicated clear-to-close, and allowed closing to be scheduled.

4. Better had written authority from the start to verify employment, income, credit, assets, property, and other transaction information. Better's own forms authorized verification before closing and as part of quality control.

5. Better's February 17, 2026 written commitment stated that the commitment was binding on both parties and identified conditions Better had to manage before closing, including sufficient assets for closing, verbal verification of employment within ten days of closing, soft credit review, title, appraisal, fraud review, and pre-closing quality-control review.

6. Despite that authority and those identified conditions, Better advanced the file into closing reliance, communicated clear-to-close on March 17, 2026, allowed closing to be scheduled on March 18, 2026, and then used last-minute employment verification and vague, unexplained underwriting positions to collapse the transaction.

7. Better later generated an adverse-action notice stating only 'UnverifiableInformation.' That one-word explanation did not identify what information Better claimed was unverifiable, when Better first knew of the issue, what underwriting standard was applied, whether BD&J income was evaluated as an alternative path, or whether the problem involved DLG, Humanity HR, reserves, 401(k) documentation, credit, Factual Data, FHA/TOTAL findings, Better overlays, fraud review, pre-closing quality control, or some combination of issues.

8. Better's conduct caused foreseeable and substantial damages, including loss of the home transaction, escrow and title complications, threatened seller litigation, moving and storage costs, employment deterioration, loss of income, loss of health-insurance stability, disability-related consequences, housing instability, and severe emotional distress.

## II. PARTIES, JURISDICTION, VENUE, SERVICE, AND STATE-LAW PLEADING

9. Plaintiff William Donald Wilson is an individual residing in Farmington, St. Francois County, Missouri, with mailing address PO Box 227, Farmington, Missouri 63640.

10. Plaintiff Sarah Wilson is William's spouse, affected household member, signatory to FHA amendatory and real-estate certification documents, and direct participant in the household relocation and purchase transaction. To the extent Better's own records identified Sarah as a co-borrower or transaction participant, Better's internal treatment of Sarah is within Better's possession and is preserved for discovery.

11. Defendant Better Mortgage Corporation is a mortgage lender and residential mortgage company that conducted mortgage-origination business in Missouri and processed the subject FHA mortgage loan for Missouri residential property.

12. Better identified itself in loan documents as Better Mortgage Corporation, NMLS No. 330511, Missouri license/NMLS No. 330511, with principal address at 1 World Trade Center, 80th Floor, New York, New York 10007.

13. Better identified its loan originator as Ashley Rayne Gould-Martinez or Ashley Gould-Martinez, NMLS No. 1943523, email ashleym@better.com, telephone 646-791-1783.

14. Better may be served through its registered agent in Missouri: C T Corporation System, 5661 Telegraph Road, Suite 4B, Saint Louis, Missouri 63129-4275.

15. This Court has personal jurisdiction over Better because Better transacted business in Missouri, held itself out as licensed for Missouri mortgage lending, processed a Missouri residential mortgage loan, issued Missouri loan disclosures, communicated with Missouri title and closing participants, and caused foreseeable injury in Missouri.

16. Venue is proper in St. Francois County because the property, closing, settlement agent, escrow consequences, transaction, and substantial events giving rise to the claims occurred in, were directed to, or affected St. Francois County, Missouri.

17. This Court has subject-matter jurisdiction over this civil action. Plaintiffs seek damages exceeding Twenty-Five Thousand Dollars for jurisdictional purposes. Plaintiffs do not plead a specific total dollar demand in the prayer for relief.

18. Plaintiffs intentionally plead only Missouri common-law and Missouri statutory claims. References to FHA, federal disclosure forms, consumer-reporting language, adverse-action language, or federal lending documents are pleaded as transaction facts, evidence of Better's conduct, and background for Missouri state-law claims, not as independent federal causes of action.

## III. GENERAL FACTUAL ALLEGATIONS

19. On or about February 2, 2026, William applied for a Better FHA purchase loan for the property located at 1239 Stono Mountain Drive, Farmington, Missouri 63640.

20. The seller/builder was Honey Bee Holdings LLC. The title company and settlement agent was Preferred Land Title, LLC of Farmington, Missouri. Better's Closing Disclosures identified Preferred Land Title, LLC and file number F2512108.

21. The purchase price was $410,000. Better's FHA appraisal later valued the property at $423,000, above the contract price.

22. The FHA Amendatory Clause and Real Estate Certification were signed by William and Sarah on February 13, 2026 and by the seller on February 16, 2026. The FHA amendatory valuation condition required an appraised value of not less than $410,000, which Better's appraisal satisfied.

23. Better's appraisal identified the property as a new-condition residence and reported no physical deficiencies or adverse conditions affecting livability, soundness, or structural integrity.

24. William disclosed employment and income information to Better, including W-2 employment with DLG and BD&J. DLG was William's primary employer.

25. Beginning on or about February 1, 2026, William began working for DLG remotely in connection with his move from California to Missouri.

26. DLG was a small firm with approximately fifteen employees. William later learned that DLG or its third-party HR provider, Humanity HR, had treated or coded him as terminated because he had moved from California to Missouri and DLG was not then properly set up for W-2 remote employees in Missouri.

27. William did not know of the DLG/Humanity HR coding issue before Better's last-minute verification activity.

28. William also worked for BD&J as a settlement negotiator. William maintains that Better could or should have evaluated whether the loan could proceed using BD&J income alone or through another lawful, accurate, and timely income analysis after the DLG issue became known.

29. William listed his 401(k) funds as an asset, but he did not intend to use 401(k) funds for closing.

30. Better's loan officer told William, in substance, that if he did not intend to use the 401(k) funds for the transaction, he did not need to provide documentation for that asset.

31. Around March 1, 2026, Better asserted that William needed approximately $8,400 to $8,500 in reserves to qualify for the loan.

32. Better did not, at any time before its later demand for approximately $8,400 to $8,500 in reserves, clearly identify, mention, disclose, or explain that Plaintiffs were required to prove any separate reserve amount as a condition of loan approval, underwriting qualification, clear-to-close, or closing. Better's prior disclosures and communications addressed cash to close, down payment, closing costs, escrow items, asset documentation, and general sufficient-assets-for-closing language, but did not reasonably inform Plaintiffs that Better was imposing an additional reserve requirement on top of the funds already required for down payment, escrow, closing costs, and settlement, including the approximately $14,112 later reflected as deposited or escrowed.

33. To the extent Better contends that generic references to assets, closing funds, or additional documentation disclosed the reserve requirement, Plaintiffs deny that such language clearly or reasonably disclosed a separate reserve requirement of approximately $8,400 to $8,500, and Better failed to explain whether the alleged reserve requirement came from FHA, FHA TOTAL Scorecard, manual underwriting, credit policy, investor guidelines, a Better overlay, compensating-factor analysis, or some other underwriting basis.

34. Better then rejected or refused to accept the 401(k) screenshots or documentation William had available, despite the loan officer's earlier guidance that 401(k) documentation would not be necessary if those funds were not being used to close.

35. William was forced to scramble to create approximately $8,500 in liquid or semi-liquid reserves on top of funds already placed into escrow for the transaction.

36. The transaction had a $10,000 earnest-money deposit and approximately $14,112 in escrow for down payment and closing costs.

37. Better's Loan Estimates and Closing Disclosures disclosed cash-to-close figures but did not clearly disclose the alleged reserve requirement as a separate qualification condition when Better's documents and communications were inducing continued reliance.

## IV. WRITTEN COMMITMENT, DISCLOSURES, AND CLOSING-READINESS CONDUCT

38. On February 17, 2026, Better issued a Mortgage Written Commitment Letter for the subject property and loan.

39. The commitment letter identified a purchase loan, FHA insured loan type, a principal loan amount of $395,650, a 360-month term, a fixed interest rate of 5.875%, monthly mortgage-insurance payment of $161.10, and a commitment expiration date of March 16, 2026.

40. The commitment letter stated: 'This commitment agreement is binding on both parties.'

41. The commitment letter also stated that if the mortgage loan was not closed within the commitment period, for any reason, the mortgage lender would no longer be obligated by the commitment agreement and any commitment fees paid would be refunded to the borrower.

42. Better's later conduct after March 16, 2026, including continued disclosures, clear-to-close communication, revised Closing Disclosures, and closing scheduling, constituted an extension, reaffirmation, waiver, modification, replacement promise, or independent representation of closing readiness. Alternatively, Better breached or mishandled the loan by failing to complete and sequence required conditions before the commitment period expired.

43. The commitment letter identified conditions including clear title documents, confirmation of gift funds or sufficient assets for closing, verbal verification of employment within ten days of closing, a soft credit pull within ten days of closing, activated homeowner's insurance, satisfactory appraisal, underwriter review of a third-party fraud report, pre-closing quality-control review, and possible additional credit, income, and asset documentation.

44. Better therefore knew, by its own written commitment, that employment verification, sufficient assets, fraud review, credit review, appraisal, title, insurance, and pre-closing quality control were conditions Better had to manage before final closing reliance.

45. On February 24, 2026, Better issued a Loan Estimate showing a $410,000 sale price, $402,573 loan amount, 5.875% interest rate, estimated closing costs of $16,972, estimated cash to close of $14,398, and a rate lock expiring March 16, 2026 at 5:00 p.m. EDT.

46. On February 25, 2026, Better issued a revised Loan Estimate changing the interest rate to 6.75%, estimated closing costs to $7,957, estimated cash to close to $5,383, and lender credits to $8,075.

47. On February 26, 2026, Better issued another Loan Estimate showing the interest rate at 6.75%, estimated closing costs of $6,925, estimated cash to close of $4,351, and lender credits of $9,107.

48. On March 2, 2026, Better issued another Loan Estimate showing the interest rate at 6.75%, estimated closing costs of $6,685, estimated cash to close of $4,111, and lender credits of $9,107.

49. On March 10, 2026, Better issued a Closing Disclosure identifying a March 13, 2026 closing date, Preferred Land Title, LLC as settlement agent, file number F2512108, an FHA loan, a $402,573 loan amount, a 6.75% interest rate, closing costs of $6,579.69, and cash to close of $3,245.44.

50. On March 18, 2026, Better issued a revised Closing Disclosure identifying a March 20, 2026 closing date, Preferred Land Title, LLC as settlement agent, a $402,573 FHA loan, a 6.625% interest rate, closing costs of $7,867.51, cash to close of $413.85, and a deposit of $14,112.

51. The March 18 Closing Disclosure stated that the interest rate changed to 6.625%, pricing changed, the lender credit was updated to $7,275.65, and monthly mortgage insurance was updated to $180.44.

52. On March 31, 2026, Better issued another Closing Disclosure identifying a closing date of April 1, 2026, disbursement date of April 6, 2026, Preferred Land Title, LLC as settlement agent, a $402,573 FHA loan, a 6.625% rate, closing costs of $10,243.93, cash to close of $2,791.32, and funds wired from borrower of $4,112.

53. By issuing repeated Closing Disclosures and coordinating with Preferred Land Title, Better caused Plaintiffs, the seller, and title to reasonably understand that the file was in active closing status and that remaining issues, if any, were ordinary closing mechanics rather than unresolved transaction-ending underwriting defects.

## V. CLEAR-TO-CLOSE, LAST-MINUTE EMPLOYMENT VERIFICATION, AND COLLAPSE OF THE TRANSACTION

54. The contractual closing deadline was amended to March 19, 2026.

55. On March 17, 2026, Better's loan officer, Ashley, communicated to William that the loan had received clear-to-close.

56. On March 18, 2026, Better provided a mechanism for scheduling the closing, and closing was scheduled for March 19, 2026 at 9:00 a.m.

57. At or near that same time, Better had already received or had access to employment-related information, including a letter on company letterhead stating William remained employed and would continue to be employed, along with a recent pay stub.

58. Better nevertheless refused to allow the transaction to close without last-minute verbal confirmation of employment from DLG.

59. At the time Better insisted on verbal employment confirmation, DLG's owner and administrator were involved in a civil trial and had limited availability outside ordinary office hours.

60. Better's last-minute insistence on verbal confirmation, after clear-to-close and closing scheduling, created an immediate closing crisis.

61. Because Better would not allow the transaction to close without verbal confirmation, William was forced to take a defensive posture with DLG and threaten legal action relating to wrongful classification, employment coding, and failure to verify employment, in an effort to preserve the closing Better had represented as ready.

62. Those urgent communications and threats materially contributed to deterioration of William's relationship with DLG.

63. DLG ultimately decided it was best to part ways with William.

64. William's annual salary through DLG was approximately $125,000 plus uncapped bonus potential. In 2025, William was awarded approximately $30,000 in performance bonuses, making his annual pay for 2025 approximately $155,000.

65. William's additional employment with BD&J was also affected. Due to the severe stress, the deterioration of his primary employment, and the mental-health strain caused by the transaction collapse, William sought disability leave.

66. William did not meet the tenure requirements for FMLA leave, and his depression affected his work performance. BD&J then decided to part ways with him.

67. William's combined base employment income from DLG and BD&J was approximately $213,000 annually, exclusive of performance bonuses and other benefits.

68. Better denied or withdrew the loan and later issued an adverse-action notice generated April 1, 2026.

69. The adverse-action notice stated only 'UnverifiableInformation' as the reason Better could not approve the loan request.

70. The same notice stated that Better's credit decision was based in whole or in part on information obtained from Factual Data, listed a credit score of 593, and identified a February 3, 2026 credit-pull date.

71. A separate Better credit-score disclosure in the file listed an Equifax score of 624 dated February 11, 2026.

72. Better's unexplained denial reason did not identify the specific information Better claimed was unverifiable, the source of the unverifiable information, the underwriting standard applied, whether William's BD&J income was evaluated as an alternative path, whether the reason was DLG employment status, a W-2 to 1099 classification issue, reserve documentation, 401(k) documentation, credit, Factual Data, FHA/TOTAL findings, Better overlays, fraud review, pre-closing quality control, or some combination of these matters.

73. After Plaintiffs attempted to escalate the matter pre-suit, Better did not provide a substantive legal, compliance, or executive response. Instead, a Better customer advocate, Louis Mastro, responded that a final credit decision had been made and communicated and that there was no new information available for Better to provide.

## VI. DAMAGES AND FORESEEABLE CONSEQUENCES

74. As a direct and foreseeable result of Better's conduct, Plaintiffs lost the opportunity to close on the $410,000 new-build home at 1239 Stono Mountain Drive, a property that had appraised at $423,000.

75. Honey Bee Holdings LLC has threatened legal action arising from the failed transaction.

76. Preferred Land Title, LLC has indicated that it may file, or may need to file, an interpleader concerning escrowed funds.

77. Plaintiffs have approximately $14,112 in escrow or deposited funds tied to the transaction and face loss, delay, legal expense, or uncertainty related to those funds.

78. Plaintiffs incurred appraisal, inspection, transaction, and related out-of-pocket costs, including costs presently estimated at approximately $1,250, subject to proof and supplementation.

79. Plaintiffs incurred additional moving and storage costs presently estimated at approximately $8,750, subject to proof and supplementation.

80. Plaintiffs face the possibility of loss, damage, or forced disposition of personal property, furniture, clothing, household goods, and personal effects with an estimated value that may exceed $80,000, subject to proof and supplementation.

81. William lost or was caused to lose primary employment income, secondary employment income, bonus potential, employment benefits, and health-insurance stability.

82. Plaintiffs allege lost base wages of at least approximately $213,000 annually, exclusive of bonus potential, benefits, insurance value, and other employment-related damages.

83. William lost health insurance through DLG and was unable to maintain comparable coverage because COBRA coverage was approximately $2,900 per month.

84. Plaintiffs became housing insecure and have experienced homelessness or the immediate threat of homelessness.

85. William has Bipolar I disorder. Better's conduct foreseeably caused severe stress, severe depression, disability-related consequences, and aggravation of a preexisting mental-health condition.

86. Plaintiffs have suffered economic loss, consequential loss, loss of household stability, severe emotional distress, medical and mental-health consequences, legal exposure, and other damages to be proven at trial.

87. Where allegations concern Better's internal underwriting systems, decisioning, conditions, quality-control review, communications, vendor information, employment-verification records, or closing status, Plaintiffs plead upon information and belief because those facts are uniquely within Better's possession and control.

## VII. CLAIMS FOR RELIEF

### COUNT I
### BREACH OF WRITTEN MORTGAGE COMMITMENT AND RELATED LOAN AGREEMENTS
### (WILLIAM AGAINST BETTER; SARAH TO THE EXTENT DISCOVERY SHOWS CONTRACTUAL OR THIRD-PARTY BENEFICIARY RIGHTS)

88. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

89. Better issued a written mortgage commitment and related loan documents for the subject FHA purchase loan.

90. The commitment stated that it was binding on both parties and identified the conditions Better was required to administer before closing.

91. William performed, substantially performed, tendered performance, or was ready, willing, and able to perform all material obligations required of him, except to the extent Better's own conduct prevented, delayed, frustrated, or excused further performance.

92. Better breached the written commitment and related loan obligations by failing to administer identified conditions in a timely and commercially reasonable manner, failing to sequence verification and closing readiness before inducing reliance, failing to close after clear-to-close and scheduling, and denying or withdrawing the loan on a vague and unexplained basis after the transaction reached final closing posture.

93. To the extent Better contends the commitment expired on March 16, 2026, Better's later conduct - including continued disclosures, clear-to-close communication, revised Closing Disclosures, and closing scheduling - constituted a waiver, extension, modification,

reaffirmation, replacement agreement, or independent representation that Better would proceed with the closing if ordinary closing conditions were satisfied.

94. Plaintiffs were damaged as a direct and foreseeable result of Better's breach.

**COUNT II**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(PLAINTIFFS AGAINST BETTER)**

95. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

96. Better possessed contractual or transaction-based discretion over underwriting conditions, documentation requests, employment verification, reserve analysis, fraud review, pre-closing quality control, and closing coordination.

97. Better had a duty to exercise that discretion in good faith and in a manner consistent with the reasonable expectations created by its written commitment, disclosures, clear-to-close communication, and closing schedule.

98. Better breached that duty by using conditions it controlled or had weeks to manage as a last-minute basis to collapse the transaction after inducing Plaintiffs, the seller, and title to rely on the loan being ready to close.

99. Better further breached the implied covenant by failing to timely disclose the separate reserve requirement, reversing asset-documentation guidance, failing to clearly explain the underwriting basis for reserves, failing to timely control employment verification, and refusing to give a meaningful explanation for the final denial.

100. Plaintiffs were damaged as a direct and foreseeable result.

**COUNT III**
**NEGLIGENT MISREPRESENTATION**
**(PLAINTIFFS AGAINST BETTER)**

101. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

102. Better, in the course of its mortgage business and for its own pecuniary interest, supplied information to Plaintiffs concerning loan approval, clear-to-close status, closing readiness, reserve requirements, 401(k) documentation, cash to close, employment verification, and the ability to proceed to closing.

103. Better's loan officer represented, in substance, that William did not need to document 401(k) funds if those funds were not being used for closing.

104. Better later represented, through its loan officer, disclosures, closing workflow, and scheduling process, that the loan was clear-to-close and that closing could be scheduled.

105. Those representations were material because Plaintiffs were relying on Better to determine whether the purchase loan could close and whether Plaintiffs should continue making financial, housing, employment, and logistical decisions in reliance on closing.

106. The representations were false, incomplete, or misleading if Better had not actually completed or controlled material underwriting conditions, including separate reserves, employment verification, fraud review, quality control, and alternative income analysis.

107. Better failed to exercise ordinary care in communicating and controlling the information supplied to Plaintiffs.

108. Plaintiffs reasonably relied on Better's representations and omissions.

109. Plaintiffs suffered pecuniary loss and other damages as a direct and foreseeable result.

**COUNT IV**
**FRAUDULENT, RECKLESS, OR CONSTRUCTIVE MISREPRESENTATION AND OMISSION**
**(PLAINTIFFS AGAINST BETTER)**

110. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

111. This Count is pleaded under Missouri law and is based on Better's representations and omissions in the mortgage transaction.

112. Better represented through Ashley and its closing workflow that the loan had received clear-to-close and that closing could be scheduled for March 19, 2026.

113. Better omitted that material underwriting conditions remained unresolved, unstable, or capable of defeating the loan after clear-to-close and closing scheduling, including the late verbal employment verification issue, separate reserve issue, and any internal fraud review, quality-control, overlay, or alternative-income analysis issue that Better later used or relied upon to deny or withdraw the loan.

114. Better knew, or in the exercise of ordinary business care necessarily should have known, whether those material conditions remained unresolved before communicating clear-to-close and scheduling the closing.

115. To the extent Better communicated clear-to-close while knowing or consciously disregarding unresolved transaction-ending conditions, Better's conduct was reckless, misleading, and calculated to induce reliance.

116. Plaintiffs relied on Better's representations and omissions because Better was the lender, controlled underwriting and closing readiness, and held itself out as having determined the loan could proceed to closing.

117. Plaintiffs were damaged as a direct and foreseeable result.

118. Plaintiffs do not plead punitive damages in this initial Petition. Plaintiffs reserve the right to seek leave to amend to add punitive damages if discovery establishes the required statutory and evidentiary basis.

**COUNT V**
**PROMISSORY ESTOPPEL AND DETRIMENTAL RELIANCE**
**(PLAINTIFFS AGAINST BETTER)**

119. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

120. Better made promises or representations that the loan was committed, actively proceeding, clear-to-close, and ready for scheduled closing.

121. Better should reasonably have expected Plaintiffs to rely on those promises and representations by maintaining the purchase contract, placing funds in escrow, arranging moving and storage, preparing for closing, communicating with employers and title, and organizing their household around the closing.

122. Plaintiffs did in fact rely on Better's promises and representations.

123. That reliance was reasonable under the circumstances because Better controlled the underwriting, verification, closing disclosures, and clear-to-close status.

124. Injustice can be avoided only by enforcing Better's promises or by awarding damages sufficient to compensate Plaintiffs for reliance, consequential losses, and related harm.

## COUNT VI
## NEGLIGENT UNDERTAKING AND MORTGAGE-PROCESSING NEGLIGENCE
## (PLAINTIFFS AGAINST BETTER)

125. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

126. Better undertook to originate, process, underwrite, verify, disclose, approve, and close a Missouri FHA residential purchase mortgage for Plaintiffs' household transaction.

127. Once Better undertook those services, Better owed a duty to use reasonable care in processing the loan, communicating material conditions, verifying employment and assets, coordinating with title, sequencing underwriting conditions, and avoiding clear-to-close representations unless material conditions were sufficiently controlled.

128. Better breached that duty by failing to timely identify and disclose the reserve issue, reversing guidance on 401(k) documentation, failing to explain the underwriting basis for reserves, issuing or communicating clear-to-close before final conditions were controlled, insisting on last-minute verbal employment confirmation under circumstances Better knew or should have known could collapse the transaction, failing to evaluate or explain the BD&J income path, and issuing a vague unexplained denial reason.

129. Better's breaches were a direct and proximate cause of Plaintiffs' damages.

130. Plaintiffs plead this Count in the alternative to contractual claims and based on duties arising from Better's undertaking, mortgage-business conduct, Missouri consumer-protection standards, Missouri mortgage-lending regulatory standards, and Better's control over information and closing readiness.

## COUNT VII
## MISSOURI MERCHANDISING PRACTICES ACT
## (RSMO SECTIONS 407.020 AND 407.025)
## (PLAINTIFFS AGAINST BETTER)

131. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

132. Better sold, offered, and performed mortgage-origination and loan-processing services in connection with a residential purchase transaction for personal, family, or household purposes.

133. Plaintiffs were reasonable consumers in relying on Better's written commitment, Loan Estimates, Closing Disclosures, clear-to-close communication, closing schedule, and loan officer communications.

134. Better used or employed deception, false promise, misrepresentation, unfair practice, concealment, suppression, or omission of material facts in connection with its mortgage services by, among other things, failing to timely disclose the separate reserve requirement, giving inconsistent 401(k) documentation guidance, advancing the file into closing reliance, communicating clear-to-close, scheduling closing, and then collapsing the transaction based on unresolved or unexplained conditions.

135. Better's conduct would cause a reasonable consumer to enter into, continue, or rely upon the mortgage transaction and closing process.

136. Plaintiffs suffered an ascertainable and objectively calculable loss of money or property, including escrow exposure, appraisal and inspection costs, moving and storage costs, transaction costs, lost housing opportunity, seller-claim exposure, employment-related losses, and other damages proven by documents and testimony.

137. Better's conduct occurred before, during, and after the sale and performance of mortgage-origination services.

138. Plaintiffs' claim is directed to Better's mortgage-origination and loan-processing services, not to Honey Bee Holdings LLC's sale of the new residence.

139. Plaintiffs are entitled to actual damages, equitable relief, costs, attorney's fees if applicable, and all other remedies available under Missouri law. Plaintiffs reserve any request for punitive damages until after leave of court is sought and granted under Missouri law.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS EXPECTANCY (PLAINTIFFS AGAINST BETTER)

140. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

141. Plaintiffs had a valid purchase contract and economic expectancy concerning the acquisition of the Farmington property.

142. Better knew of that contract and expectancy because Better was the lender processing the purchase loan, issuing disclosures, and coordinating with the title company for closing.

143. Plaintiffs also had an existing employment relationship and economic expectancy with DLG, and Better knew or should have known that last-minute employment verification pressure could affect the employment relationship because Better insisted on urgent verbal employment confirmation as a condition of closing.

144. Better intentionally or improperly interfered with Plaintiffs' contract and expectancies by advancing the file to clear-to-close and scheduled closing while failing to timely control the underwriting conditions that Better later used to collapse the transaction, thereby forcing urgent employment conflict and preventing the purchase from closing.

145. Better's interference was without justification or was accomplished through improper means, including misleading closing-readiness communications, late-disclosed reserve and verification demands, inconsistent processing, and vague denial reasoning.

146. Plaintiffs suffered damages as a direct and foreseeable result.

## COUNT IX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND AGGRAVATION OF PREEXISTING CONDITION
## (PLAINTIFFS AGAINST BETTER)

147. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

148. Better should have realized that its conduct involved an unreasonable risk of causing emotional distress because Better was handling a home-purchase closing, escrow funds, moving logistics, employment verification, housing stability, and financial reliance for Plaintiffs' household.

149. Better should have realized that the distress, if caused, might result in illness, bodily harm, disability-related consequences, or aggravation of a preexisting condition.

150. William has Bipolar I disorder and experienced severe debilitating depression, disability-related consequences, loss of employment stability, and loss of health-insurance stability after the collapse of the transaction and employment deterioration.

151. Plaintiffs' emotional distress was medically significant, severe, and directly connected to the transaction collapse, housing instability, employment loss, and financial consequences caused or contributed to by Better's conduct.

152. Plaintiffs suffered damages as a direct and foreseeable result.

## VIII. RESERVATION REGARDING PUNITIVE DAMAGES

153. Plaintiffs do not include a punitive-damages claim in this initial Petition.

154. Plaintiffs expressly reserve the right to seek leave of Court to add punitive damages if discovery establishes that Better intentionally, knowingly, recklessly, or with conscious disregard engaged in conduct warranting punitive damages under Missouri law.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs William Donald Wilson and Sarah Wilson respectfully request that the Court enter judgment in their favor and against Defendant Better Mortgage Corporation, and award:

A. Actual damages in an amount to be determined by the jury and permitted by Missouri law;

B. Consequential damages, including transaction losses, escrow-related losses or exposure, moving and storage costs, loss of housing opportunity, seller-claim exposure, employment-related losses, insurance-related losses, medical and mental-health related losses, and all other damages proven at trial;

C. Prejudgment interest and post-judgment interest as allowed by law;

D. Costs of court;

E. Attorney fees to the extent permitted by statute, contract, equity, or other applicable Missouri law;

F. Equitable relief as appropriate, including relief concerning escrow/title consequences if supported by the evidence;

G. Leave to seek punitive damages at the appropriate time if permitted by Missouri law and supported by discovery; and

H. Such other and further relief as the Court deems just and proper.

**X. JURY DEMAND**

Plaintiffs demand trial by jury on all issues so triable.

**XI. REQUEST FOR ISSUANCE OF SUMMONS**

Plaintiffs request that the Clerk issue summons for Defendant Better Mortgage Corporation through its registered agent, C T Corporation System, 5661 Telegraph Road, Suite 4B, Saint Louis, Missouri 63129-4275.

Respectfully submitted,

William Donald Wilson, Plaintiff Pro Se
PO Box 227
Farmington, Missouri 63640
Telephone: 573-315-5902
Email: Wilwilson1217@outlook.com

Sarah Wilson, Plaintiff Pro Se
PO Box 227
Farmington, Missouri 63640
Telephone: 573-315-5902
Email: Swilson121722@gmail.com

IN THE TWENTY-FOURTH JUDICIAL CIRCUIT OF MISSOURI

ORDER ASSIGNING JUDGE

IN THE MATTER OF:

WILLIAM WILSON
VS
BETTER MORTGAGE
CORPORATION

Case Number 26SF-CC00101

NOW ON THIS 6th day of May , 20 26 ,

the undersigned, as Presiding Judge of the Twenty-fourth Judicial Circuit, pursuant to the powers granted by statute and local court rules, does assign the above-styled cause to the Honorable Brice Sechrest

IT IS FURTHER ORDERED that the judge assigned hereby shall have all Powers and responsibilities for this cause as assigned by operation of law and the same shall continue until final disposition of the above-styled matter. The clerk is ordered to notify said Judge and counsel of this appointment.

Brice Sechrest

BRICE SECHREST
PRESIDING JUDGE
24TH JUDICIAL CIRCUIT

Electronically Filed - ST. FRANCOIS - May 20, 2026 - 08:59 AM

ORIGINAL RETURN

RETURN SB 6-5

# Summons in Civil Case

IN THE 24TH JUDICIAL CIRCUIT, ST. FRANCOIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division: | **Case Number: 26SF-CC00101** | |
| Plaintiff/Petitioner:<br>WILLIAM WILSON<br>vs. | Plaintiff's/Petitioner's Attorney/Address | |
| Defendant/Respondent:<br>BETTER MORTGAGE CORPORATION | Court Address:<br>1 NORTH WASHINGTON ST<br>FARMINGTON, MO 63640 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp for Return) |

**The State of Missouri to:** 30 CTCOR S.W.

**R/A: CT CORPORATION SYSTEM 5661 TELEGRAPH RD STE 4B ST. LOUIS, MO 63129**

**BETTER MORTGAGE CORPORATION**

1 WORLD TRADE CENTER 80TH FLOOR
NEW YORK, NEW YORK 10007

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. FRANCOIS COUNTY***

06-MAY-2026
Date

/s/Kristina Bone by: Jennifer Webb
Clerk

**Further Information:**

RECEIVED 2026 MAY 12 AM 11:26 ST. LOUIS COUNTY SHERIFF'S OFFICE


Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

5-13-26

Electronically Filed - ST. FRANCOIS - May 20, 2026 - 08:59 AM

Case Number: 26SF-CC00101

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________, a person at least 18 years of age residing therein.

☑ (for service on a corporation) delivering a copy of the summons and petition to:
DAN (name) Intake Specialist (title).

☑ other: CT CORP.

Served at 5661 Telegraph Rd, Suite 4B, 63129 (address)
in St Louis (County/City of St. Louis), MO, on 05-15-2026 (date)
at 8:30 (time).

KEVIN MEHA — Printed Name of ~~Officer~~ or Server

[signature] — Signature of ~~Officer~~ or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________ (date).

*(Seal)*

My commission expires: ______________ Date ______________ Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# Summons in Civil Case

IN THE 24TH JUDICIAL CIRCUIT, ST. FRANCOIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>BRICE R SECHREST | **Case Number: 26SF-CC00101** | |
| Plaintiff/Petitioner:<br>WILLIAM WILSON<br>vs. | Plaintiff's/Petitioner's Attorney/Address | |
| Defendant/Respondent:<br>BETTER MORTGAGE CORPORATION | Court Address:<br>1 NORTH WASHINGTON ST<br>FARMINGTON, MO 63640 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp for Return) |

**The State of Missouri to:** **BETTER MORTGAGE CORPORATION**
**Alias:**
**R/A: CT CORPORATION SYSTEM**
**5661 TELEGRAPH RD STE 4B**
**ST. LOUIS, MO 63129**
**Other Addresses:**

**1 WORLD TRADE CENTER 80TH FLOOR**
**NEW YORK, NEW YORK 10007**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. FRANCOIS COUNTY***

26-MAY-2026
Date

/s/ Kristina Bone By: Amber Ashley
Clerk

**Further Information:**

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________________________ (name) _______________________________ (title).

☐ other: ________________________________________________________________________________.

Served at ____________________________________________________________________________ (address)

in __________________________________ (County/City of St. Louis), MO, on ____________________ (date)

at ______________ (time).

_____________________________________________ _______________________________________________

Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**

Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ___________________ ______________________________

Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

 Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

FILED
05/26/2026
Kristina Bone
CLERK, CIRCUIT COURT
ST FRANCOIS COUNTY

| | |
|---|---|
| WILLIAM WILSON and<br>SARAH WILSON,<br>P.O. Box 227<br>Farmington, Missouri 63640<br><br>Plaintiffs,<br><br>v.<br><br>BETTER MORTGAGE CORPORATION,<br>1 World Trade Center, 80th Floor<br>New York, New York 10007<br><br>Serve Registered Agent:<br>C T CORPORATION SYSTEM<br>5661 Telegraph Road, Suite 4B<br>Saint Louis, Missouri 63129<br><br>Defendant. | Case No. 26SF-CC00101<br><br>Division: ________<br><br>Nature of Cause: Contract / Other Tort – Lender Liability, Fraud, Negligent Misrepresentation, Missouri Merchandising Practices Act, Tortious Interference, Negligent Infliction of Emotional Distress, Breach of Implied Covenant of Good Faith, and Promissory Estoppel<br><br>TRIAL BY JURY DEMANDED |

**FIRST AMENDED PETITION FOR DAMAGES AND JURY DEMAND**

**(Filed as of Right Pursuant to Missouri Rule of Civil Procedure 55.33(a))**

COME NOW Plaintiffs William Wilson and Sarah Wilson, appearing pro se, and for their First Amended Petition for Damages against Defendant Better Mortgage Corporation, state and allege as follows:

PRELIMINARY STATEMENT. Plaintiffs file this First Amended Petition as a matter of right pursuant to Missouri Supreme Court Rule 55.33(a), no responsive pleading having yet been filed by Defendant. Pursuant to Missouri Supreme Court Rule 55.25(c), Defendant's deadline to serve a responsive pleading to this First Amended Petition is the later of (a) Defendant's existing answer deadline of June 15, 2026, or (b) ten (10) days after service of this First Amended Petition upon Defendant through its Missouri registered agent, C T Corporation System, whichever period is longer. Plaintiffs reserve all rights to enforce Defendant's response deadline

as calculated under Rule 55.25(c) and to seek default judgment if Defendant fails timely to respond.

## I. INTRODUCTION

1. This action arises from Defendant Better Mortgage Corporation's ("Better" or "Defendant") wrongful refusal to fund a written, binding FHA mortgage loan commitment that it had issued to the Plaintiffs on February 17, 2026, in connection with what would have been Plaintiffs' first home purchase. In reliance upon Better's binding written commitment, Plaintiffs vacated their rented residence in Palmdale, California, contracted with an interstate moving carrier to relocate their entire household more than 1,800 miles to St. Francois County, Missouri, wired cash-to-close, and stood ready, willing, and able to close on the purchase of the Property located at 1239 Stono Mountain Drive, Farmington, Missouri 63640 (the "Property").

2. Better, after locking the loan, issuing a written Mortgage Commitment Letter expressly stating that the commitment was "binding upon both parties," collecting fees from Plaintiffs, allowing Plaintiffs to incur tens of thousands of dollars of detrimental-reliance expenses, and repeatedly representing through its licensed loan officer that closing was imminent — and on March 17, 2026 expressly representing through its loan officer that the loan was "clear to close" — simultaneously and contradictorily informed the settlement agent on the very same day that the loan was NOT clear to close. Better thereafter failed and refused to fund the loan, manufactured pretextual underwriting objections (including a fabricated "Klarna" balance), and finally issued a written Adverse-Action Notice whose only stated reason was the single word "UnverifiableInformation" — a reason so devoid of specific information that it independently violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d), and Regulation B, 12 C.F.R. § 1002.9.

3. Better's conduct was not a mere underwriting decision. It was a course of conduct that combined breach of a binding written loan commitment, breach of the implied covenant of good faith and fair dealing, intentional and reckless misrepresentations of present fact made to induce Plaintiffs' reliance, negligent misrepresentations by an entity that had assumed a duty of care to provide accurate information, unfair and deceptive practices "in connection with" the sale of a loan within the meaning of the Missouri Merchandising Practices Act, RSMo § 407.020, tortious interference with the Plaintiffs' separate real-estate purchase contract with a third-party seller, and the foreseeable infliction of severe emotional distress upon an eggshell plaintiff with a medically diagnosed and disclosed preexisting bipolar disorder.

4. As a direct and proximate result, Plaintiffs and their infant daughter E.G.W. (born April 12, 2025) were thrown into housing crisis; Plaintiffs lost the benefit of their $410,000 purchase contract on a Property independently appraised at $423,000 (representing a minimum of $13,000 in day-one equity); Plaintiffs incurred substantial out-of-pocket expense, lost personal property, and irreplaceable family heirlooms; and Plaintiff William Wilson, a person with a preexisting bipolar diagnosis well-known and disclosed during the loan process, suffered an aggravation of his condition diagnosable and medically significant within the meaning of Bass v. Nooney Co., 646 S.W.2d 765 (Mo. banc 1983), and a foreseeable aggravation of a preexisting condition compensable under Widener v. St. Louis Public Service Co., 230 S.W.2d 698 (Mo. 1950).

## II. PARTIES, JURISDICTION AND VENUE

5. Plaintiff William Wilson is currently an adult resident of St. Francois County, Missouri, with mailing address Post Office Box 227, Farmington, Missouri 63640. At the time Plaintiffs applied to Better for the FHA purchase-money mortgage loan that is the subject of this

action, and at all relevant times through and including February 27, 2026, Plaintiff William Wilson resided at a rented single-family residence located in Palmdale, California. Plaintiff William Wilson physically relocated from Palmdale, California to St. Francois County, Missouri on or about February 27, 2026, in direct reliance upon Better's binding written Mortgage Commitment Letter of February 17, 2026 and Better's repeated subsequent representations that the loan was clear to close.

6. Plaintiff Sarah Wilson is currently an adult resident of St. Francois County, Missouri, with the same mailing address. Plaintiffs are husband and wife. At the time Plaintiffs applied to Better for the FHA purchase-money mortgage loan that is the subject of this action, and at all relevant times through and including February 27, 2026, Plaintiff Sarah Wilson also resided at the same rented single-family residence in Palmdale, California, together with Plaintiff William Wilson and Plaintiffs' infant daughter, E.G.W., born April 12, 2025. Plaintiff Sarah Wilson physically relocated from Palmdale, California to St. Francois County, Missouri on or about February 27, 2026, in direct reliance upon Better's binding written Mortgage Commitment Letter of February 17, 2026 and Better's repeated subsequent representations that the loan was clear to close. At all relevant times, Plaintiffs intended to acquire and to occupy the Property as their personal, family, and household residence within the meaning of RSMo § 407.025.1, and Better was so informed.

7. Defendant Better Mortgage Corporation is a Delaware corporation with its principal place of business at 1 World Trade Center, 80th Floor, New York, New York 10007. Better is licensed under the laws of the State of Missouri as a mortgage broker / mortgage lender under Missouri Mortgage Broker License No. 330511 and NMLS Identifier No. 330511. Better may be served through its Missouri registered agent, C T Corporation System, 5661 Telegraph Road,

Suite 4B, Saint Louis, Missouri 63129-4275. Better was served with original process in this action on May 15, 2026.

8. This Court has subject-matter jurisdiction under Article V, § 14 of the Missouri Constitution, as this is a civil action at law between private parties, the amount in controversy exceeds the jurisdictional minimum of $25,000.00, and all causes of action arise under Missouri statutory and common law.

9. This Court has personal jurisdiction over Better because Better purposefully directed its mortgage-lending activities into Missouri. Specifically, Better: (a) solicited and accepted a loan application from Plaintiffs for the purpose of financing the purchase of Missouri real property; (b) issued a binding written Mortgage Commitment Letter on February 17, 2026 obligating itself to fund a loan secured by Missouri real property; (c) ordered and obtained an appraisal of Missouri real property; (d) was to disburse loan proceeds in Missouri and to record a deed of trust in the real-property records of St. Francois County, Missouri; (e) directed numerous communications by telephone, email, and text to and through a Missouri-based settlement agent and a Missouri-based closing transaction; (f) communicated directly with Plaintiffs by telephone, email, and text in Missouri following Plaintiffs' physical relocation on or about February 27, 2026 and continuing through and after the collapse of the closing; and (g) is licensed under the laws of the State of Missouri and transacts a regular and continuous mortgage-lending business in Missouri. RSMo § 506.500.

10. Venue is proper in St. Francois County, Missouri, under RSMo § 508.010 because Plaintiffs were first injured in St. Francois County, the real property that is the subject of the loan commitment lies in St. Francois County, the closing was to occur in St. Francois County, and a

substantial part of the events and omissions giving rise to the claims occurred in St. Francois County.

## III. COMMON FACTUAL ALLEGATIONS

### *A. Pre-Application: California-to-Missouri Relocation and Plaintiff's Health Status*

11. In late 2025 and early 2026, while still residing in a rented single-family residence in Palmdale, California, Plaintiffs planned a relocation from California to St. Francois County, Missouri so that Plaintiffs and their infant daughter could be closer to extended family and so that the household could realize a meaningfully lower cost of living. Plaintiffs disclosed both their then-current California residence and their intended Missouri relocation to Better at and throughout the loan-application process, and Better at all relevant times knew that Plaintiffs were applying for an FHA purchase-money loan to acquire Missouri real property to which Plaintiffs would relocate from California in direct reliance upon Better's financing. At all times material to this action, Plaintiff William Wilson was continuously employed; he had been employed with DLG since November 2024 in a position he continued to hold uninterrupted through and after the events alleged below. In connection with the planned Missouri move, Plaintiff William Wilson's DLG employment transitioned to a fully remote arrangement effective February 1, 2026 — a change in work location, not a change in employer or in employment status. Plaintiff William Wilson initially performed that remote work from his then-current California residence and, beginning on or about February 27, 2026, continued performing the same remote work for the same employer from St. Francois County, Missouri after Plaintiffs' physical relocation. At all relevant times prior to and during the loan-application process, Plaintiff William Wilson was diagnosed with and treated for bipolar disorder, a condition known to Better through information

voluntarily disclosed during the loan-application process and in subsequent communications with Better's loan officer.

12. Plaintiff William Wilson's primary income at all relevant times was his continuous W-2 employment with DLG. Effective February 1, 2026 — at the same time his DLG employment transitioned to a fully remote arrangement — Plaintiff additionally undertook secondary, remote-only employment as a settlement negotiator for an entity hereinafter referred to as "BD&J," representing an increase in, not a disruption of, Plaintiff's income. At all relevant times Plaintiff William Wilson's compensation, employer-of-record, and W-2 status remained continuous and unchanged. Plaintiff's compensation arrangement and his employer's payroll-administration vendor, however, are facts material to the pretextual "unverifiable employment" objections that Better later raised, as set forth more particularly below.

13. In January 2026, Plaintiffs contacted Better and inquired about an FHA purchase mortgage to finance the purchase of a single-family residence in St. Francois County, Missouri. Better assigned Loan Officer Ashley Rayne Gould-Martinez, NMLS #1943523 ("Ashley"), as the licensed mortgage loan originator responsible for the file. Ashley was at all relevant times an employee, agent, and/or apparent agent of Better, acting within the course and scope of her employment and with actual and apparent authority to make the representations and commitments hereinafter described.

***B. The Pre-Approval, Rate Lock, and Mortgage Commitment***

14. On or about February 1–2, 2026, Plaintiffs applied to Better for a FHA purchase mortgage loan in connection with the proposed acquisition of the Property. Better assigned Loan No. 1649285704 and FHA Case No. 292-8445580 to the file.

15. On or about February 2, 2026, Better issued a written Pre-Approval Letter to Plaintiffs.

16. On or about February 4, 2026, Ashley telephoned Plaintiff William Wilson to discuss a rate lock.

17. On or about February 12, 2026, Plaintiffs locked their loan rate with Better.

18. On or about February 13, 2026, Plaintiffs signed an FHA Amendatory Clause and Real Estate Certification. The seller, Honey Bee Holdings LLC ("Seller"), countersigned on or about February 16, 2026.

19. On or about February 17, 2026, Better issued to Plaintiffs a written Mortgage Commitment Letter (the "Commitment"). The Commitment expressly stated that, upon Plaintiffs' acceptance, it was "binding on both parties." The Commitment identified the conditions that Better — not Plaintiffs — was required to manage prior to closing, including but not limited to (a) verification of sufficient assets, (b) verbal verification of employment within ten (10) days of closing, (c) soft credit review, (d) title, (e) appraisal, (f) fraud review, and (g) pre-closing quality-control review. Plaintiffs accepted the Commitment.

20. On February 25, 2026, Plaintiff William Wilson, having received and reviewed Better's then-current Loan Estimate, sent Ashley a written email observing that the Loan Estimate reflected approximately $15,000 of cash required at closing in addition to the $10,000 in earnest money that Plaintiffs had already paid to the title company. Ashley promptly telephoned Plaintiff William Wilson in response to that email. In the ensuing telephone conversation:

(a) Plaintiff William Wilson and Ashley discussed restructuring the transaction by applying lender credits in order to reduce the cash required at closing.

(b) The conversation concluded with Ashley confirming that Plaintiffs' cash to close would be set at exactly 3.5% of the purchase price — the minimum FHA-required down payment — and no more.

(c) Plaintiff William Wilson reiterated, for the second time during the loan process, that he did not wish to use his 401(k) funds as part of the transaction.

(d) Ashley responded that Plaintiff could "ignore" the 401(k) verification task that had appeared on his Better loan portal, and that she would "override" or "delete" that task from the portal herself.

(e) Ashley further affirmatively represented to Plaintiff William Wilson, in substance and in direct words, that Better had "already verified enough assets and income" on the file, and that Plaintiff should "not worry about it."

(f) At no point during the February 25, 2026 conversation did Ashley state, suggest, or otherwise disclose that any cash-reserve requirement existed on the file or that Plaintiff's 401(k) funds (or any other source) would be needed to satisfy any such requirement.

21. In reliance on Better's binding written Commitment, on Better's representations of February 25, 2026, and on Better's repeated indications that closing could occur on or before the scheduled closing date of March 13, 2026, Plaintiffs, on or about February 27, 2026:

(a) caused their household goods to be loaded and transported from California to Missouri; (b) physically relocated themselves and their family from California to Missouri; (c) wired cash-to-close of $4,112.00 to the settlement agent; and (d) thereby committed themselves to taking possession of the Property at closing.

### *C. Better's First Reversal: The Manufactured $8,500 "Reserve Requirement" of March 9, 2026*

22. On or about March 9, 2026 — only four (4) days before the scheduled March 13, 2026 closing — Ashley reversed her February 25, 2026 representations and informed Plaintiff William Wilson that an $8,500 "reserve requirement" had now been imposed on the file and that Plaintiff's 401(k) funds would be required to satisfy the requirement. When Plaintiff William Wilson reminded Ashley of her February 25, 2026 statements that no reserves were required and that the 401(k) task could be ignored, and asked why a reserve requirement had not been raised earlier when closing was four days away, Ashley's only explanation was that "all FHA loans require reserves" — a statement that is false as a categorical matter of FHA underwriting.

23. Plaintiff William Wilson, in continued reliance on Better's Commitment, complied by submitting a 401(k) account screenshot. The Better underwriter rejected the screenshot, demanding additional documentation that Plaintiff could not produce on the compressed timetable Better itself had created. Plaintiff William Wilson then substituted, as proof of liquid assets, a Social Security Disability Insurance client receivable consisting of a signed retainer agreement, a billing invoice, and a contemporaneous bank deposit corroborating the receivable.

### *D. The March 10–11, 2026 Title and "Klarna" Pretexts*

24. On or about March 10, 2026, Better processor Philip Chan informed Plaintiff William Wilson that the title work for the Property had been "ordered, not received," and that closing therefore could not proceed. Plaintiff William Wilson immediately contacted Lisa Campbell, the closer at Preferred Land Title, LLC (Preferred Land Title File No. F2512108). Lisa Campbell confirmed that the title work had been sent to Better weeks earlier, forwarded the title commitment again, and reported that she had been unable to reach anyone at Better to confirm

closing numbers. Plaintiff William Wilson re-uploaded the title work to the Better borrower portal.

25. On or about March 11, 2026, Better, on what it characterized as a "re-review" of Plaintiff's bank statements, generated three (3) separate borrower-portal verification tasks directed at three small, ordinary one-time debit-card purchases from Plaintiff William Wilson's Chase account ending in 5021. Each task was generated using Better's identical template language and asserted, on its face, that each transaction was a "large or recurring payment" requiring verification. The three transactions identified, verbatim from Better's portal tasks, were: (i) "$52.4 made from your Chase account 5021 on 2/9/2026 to Klarna"; (ii) "$40 made from your Chase account 5021 on 1/26/2026 to Klarna"; and (iii) "$15.54 made from your Chase account 5021 on 2/18/2026 to Klarna." In each task, Better demanded that Plaintiff William Wilson "upload any document that shows what the payment is and how often it's being paid — recent account statements, loan agreements, and promissory notes are some common examples." None of the three transactions was "large": the amounts were $52.40, $40.00, and $15.54. None of the three transactions was "recurring": the three entries reflected three different amounts on three different dates spanning three different statement cycles, with no pattern of periodicity, no common amount, and no characteristics consistent with a recurring obligation. Better's template characterization of these de minimis, non-recurring debit-card entries as "large or recurring" payments requiring loan-agreement or promissory-note documentation was, on the face of Better's own task language, demonstrably false.

25A. Plaintiff William Wilson promptly submitted a verified letter of explanation to Better, stating, in substance and verbatim in pertinent part: that Klarna transactions appearing on his Chase account reflected either (a) use of his Klarna Flex card or (b) use of Klarna's express-

checkout option through certain online merchants or digital-wallet platforms such as Apple Pay; that in both situations he used Klarna for "paid-in-full purchases, with the full purchase amount charged to my linked Chase debit card rather than carried as a traditional installment balance"; that although he was approved for Klarna's split-pay feature for amounts up to $100, he "do[es] not use that feature"; that his "Klarna documentation confirms that my current balance due to Klarna is $0"; that because Klarna, the merchant, and Chase "may reflect different transaction, authorization, and posting dates, a Klarna debit appearing on my Chase statement may not always match a Klarna statement on an exact one-to-one date or description basis"; and that "where Klarna is used through express checkout, the transaction will appear only on my Chase statement as the debit to my linked account." Plaintiff William Wilson supplied Better with the documentation Klarna itself provides to its customers, which confirmed a zero balance and confirmed the paid-in-full character of each of the three transactions Better had flagged.

25B. Notwithstanding receipt of Plaintiff William Wilson's verified letter of explanation and supporting Klarna documentation — which conclusively established that each of the three flagged transactions was an ordinary paid-in-full purchase, that no installment obligation existed, and that the current Klarna balance was $0 — Better did not withdraw, clear, or close its "Klarna" objection. As a foreseeable result of Better's manufactured and persistently maintained "Klarna" objection, the March 13, 2026 closing did not proceed. The Seller refused to extend and issued a written "close-or-release" notice.

26. On or about March 13, 2026, Better processor Philip Chan emailed Preferred Land Title and represented that the file was not clear to close because "buyer has outstanding tasks." Plaintiff had no outstanding tasks; the file was paused solely because Better was conducting underwriting review based on its own manufactured "Klarna" pretext.

### *E. March 17, 2026 — The Smoking-Gun Day: Better's Simultaneous, Contradictory External Communications*

27. On the afternoon of March 17, 2026, and before 2:23 p.m. Eastern Time, Ashley sent a text message to Plaintiff William Wilson stating, verbatim, "Got the clear to close!!!!" Plaintiff William Wilson, reasonably relying on the representation by Better's licensed loan officer, promptly telephoned the settlement agent Lisa Campbell of Preferred Land Title and communicated to her, in substance, that Better's loan officer had advised that the loan was clear to close.

28. At 2:23 p.m. Eastern Time on March 17, 2026 — after Better's loan officer Ashley had already represented to the Plaintiff borrower that the loan was clear to close, and after Plaintiff William Wilson had relayed that representation to the settlement agent — Hasnat Sapui, a member of Better's closing department, sent an email to Lisa Campbell of Preferred Land Title stating, verbatim:

"No it is not clear to close and also verification employment pending"

This statement by Better's own closing-department employee was directly and irreconcilably inconsistent with the "clear to close" representation that Better's loan officer Ashley had already made to the Plaintiff borrower earlier the same afternoon.

29. At 3:13 p.m. Eastern Time on March 17, 2026, Lisa Campbell, in reasonable reliance on the borrower-relayed representation that Better's loan officer had said "clear to close," responded to Hasnat Sapui as follows:

"the buyer called me and said we now have clear to close. I have revised my cd and put tomorrow's date as closing"

30. At 3:45 p.m. Eastern Time on March 17, 2026, Lisa Campbell sent an additional confirmation email acknowledging receipt of further information from Better.

31. Better's left hand (loan officer Ashley, communicating with the borrower) and Better's right hand (closing-department employee Hasnat Sapui, communicating with the settlement agent) were issuing directly contradictory representations externally to two different parties to the same closing on the same day. At the moment Better's closer was telling the settlement agent the loan was NOT clear to close, Better's loan officer had already told the borrower that it WAS clear to close, and the settlement agent had already begun preparing revised closing documents based on the borrower-relayed misrepresentation.

***F. The March 18, 2026 Closing Collapse***

32. At 3:05 p.m. Eastern Time on March 18, 2026, Hasnat Sapui emailed: "Docs will be shared when VOE is completed." At 4:38 p.m. Eastern Time the same day, Hasnat Sapui emailed: "Working on revised CD." On or about the evening of March 18, 2026, Better's borrower portal showed that the final underwriting/approval task had been completed, and a new task to schedule closing had appeared. Plaintiff William Wilson, still relying on Better's affirmative representation that the loan was clear to close, rescheduled closing to March 19, 2026 at 9:00 a.m.

33. On March 19, 2026, the closing did not occur. Better did not fund. Better did not appear. Better did not produce signed loan documents. Better never thereafter funded the loan.

***G. The Defective Adverse-Action Notice***

34. On or about April 1, 2026, Better issued to Plaintiffs a written Adverse-Action Notice. The only stated reason for adverse action was the single, undifferentiated word: "UnverifiableInformation."

35. Under the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(2)–(3), and Regulation B, 12 C.F.R. § 1002.9, a creditor taking adverse action is required to provide specific reasons for

adverse action. A creditor's reason that has no concrete factual basis subverts the notification purpose of ECOA. Sayers v. General Motors Acceptance Corp., 522 F. Supp. 835, 839 (W.D. Mo. 1981).

36. Better's stated reason, "UnverifiableInformation," is generic, conclusory, and indistinguishable from no reason at all. As pleaded above, Better had previously taken inconsistent positions on the same underwriting facts: Ashley had told the borrower that 401(k) and reserves were unnecessary; that the loan was clear to close; that employment had been verified. Hasnat Sapui had simultaneously told the settlement agent the opposite. The "UnverifiableInformation" rationale was a pretextual cover for Better's own internal contradiction and unwillingness to fund a loan it had bindingly committed to.

***H. The Sellers, the Purchase Contract, and Better's Knowledge***

37. At all times material hereto, Plaintiffs were parties to a binding written real-estate purchase contract with Seller Honey Bee Holdings LLC for the purchase of the Property at the price of $410,000.00. Better knew of the existence and material terms of that contract, including the closing date, the cash-to-close requirement, and the conditions of seller cooperation. Better received and reviewed the executed purchase contract as a routine part of its underwriting; Better was the lender identified on the FHA Amendatory Clause and Real Estate Certification countersigned by the Seller on February 16, 2026.

38. On or about March 5, 2026, the FHA appraisal of the Property was completed by an FHA-approved appraiser. The appraised value of the Property was $423,000.00 — approximately $13,000.00 above the contract price of $410,000.00 — representing at minimum $13,000.00 in day-one equity that the Plaintiffs would have realized upon funding of the loan and closing of the purchase.

### *I. The Wilsons' Post-Collapse Position*

39. Following the collapse of closing, Plaintiffs were displaced. Their household goods had already been transported to Missouri by Plymouth Van Lines, an interstate moving carrier with whom Plaintiffs had contracted in reliance upon Better's binding written commitment to fund the loan. Plaintiffs could not occupy the Property because the closing had not funded. The Seller refused to extend and pursued or threatened pursuit of the Plaintiffs' earnest money and additional remedies. Plaintiffs were forced into temporary, more expensive housing, with associated moving and storage costs. Plaintiff William Wilson's housing stability, household income stability, and health-insurance continuity were each materially disrupted as a direct consequence of the loss of the planned move-in. Plaintiff William Wilson's preexisting bipolar disorder was significantly and medically aggravated.

39A. Plymouth Van Lines tendered first availability for delivery of Plaintiffs' household goods on March 13, 2026. Because the closing on the Property had collapsed and Plaintiffs had no funded residence in which to accept delivery, Plymouth Van Lines was required to retain Plaintiffs' entire household, including all furniture, personal property, and irreplaceable family heirlooms, in storage commencing March 13, 2026, at a recurring storage charge of $950.00 per month. Plaintiffs' contract with Plymouth Van Lines, and the resulting recurring storage obligation, was entered into in direct and reasonably foreseeable reliance upon Better's binding written Mortgage Commitment Letter of February 17, 2026 and Better's repeated subsequent representations that the loan was clear to close.

39B. On May 15, 2026, Plymouth Van Lines issued to Plaintiffs a formal lien notice and notice of intent to dispose of Plaintiffs' household goods pursuant to applicable warehouseman and interstate-carrier statutes, demanding payment of an outstanding balance of $9,439.00 by no later than May 22, 2026, and threatening permanent disposal of Plaintiffs' entire household in the

event of non-payment. As of the filing of this First Amended Petition, the threat of total loss of Plaintiffs' household goods — including irreplaceable family heirlooms — remains imminent and ongoing as a direct, proximate, and reasonably foreseeable consequence of Better's wrongful refusal to fund the loan. Each month that the loan remains unfunded, Plaintiffs continue to incur additional storage charges at $950.00 per month and continue to face the risk of permanent disposal of their household goods.

40. Plaintiffs incurred out-of-pocket damages including, without limitation, application fees, FHA case-number fees, appraisal fee, credit-report fees, inspection fee, earnest-money exposure, double-rent overlap, Plymouth Van Lines interstate-moving charges, Plymouth Van Lines recurring storage charges of $950.00 per month commencing March 13, 2026 (which, as of the filing of this First Amended Petition, have produced an outstanding balance of not less than $9,439.00), increased rent at replacement housing, and related transaction expenses totaling not less than approximately $32,051.00, exclusive of additional storage charges continuing to accrue, the threatened loss of household goods of approximate replacement value of $150,000.00, and consequential losses identified elsewhere herein.

41. Plaintiffs lost the benefit of their bargain — the $13,000 day-one equity at minimum — and additionally lost the differential between the locked loan rate and the materially less favorable replacement loan rate that would now be needed if Plaintiffs could ever obtain replacement financing.

42. Plaintiffs lost or suffered damage to personal property of approximate replacement value of $150,000.00, and lost or suffered damage to irreplaceable family heirlooms whose value is properly determined by the jury as the actual value to the owner under Missouri's long-settled

rule. Ladeas v. Carter, 845 S.W.2d 45 (Mo. App. W.D. 1992); Breece v. Jett, 556 S.W.2d 696 (Mo. App. 1977).

43. Plaintiff William Wilson suffered medically diagnosable and medically significant emotional distress, including aggravation of his preexisting bipolar disorder, anxiety, depression, sleep disturbance, and other manifestations. Plaintiff Sarah Wilson likewise suffered medically diagnosable and medically significant emotional distress. Plaintiffs will reasonably incur future medical and psychiatric expense as a consequence of Better's conduct.

***J. Pattern-and-Practice Allegations (Made on Information and Belief)***

44. On information and belief, Better's conduct in the Plaintiffs' file was not an isolated incident. On information and belief, following Better's December 2023 initial public offering and the well-publicized series of large-scale Better workforce reductions, Better operated under unusual underwriting and capacity pressure. On information and belief, Better adopted underwriting and closing practices that systematically permitted loan officers to make representations of imminent closing in advance of completed verifications, leading to repeated incidents in which borrowers were told they had "clear to close" while internal closing personnel simultaneously informed settlement agents that the loans were not clear to close. Discovery is reasonably expected to disclose the existence of comparable incidents demonstrating a pattern-and-practice of unfair and deceptive conduct subjecting borrowers to the same kind of injury inflicted upon the Plaintiffs.

## IV. CAUSES OF ACTION

## COUNT I — BREACH OF MORTGAGE LOAN COMMITMENT

45. Plaintiffs incorporate by reference each of paragraphs 1 through 44 as though fully set forth herein.

46. Under Missouri law, the elements of a breach-of-contract claim are: (a) the existence and terms of a contract; (b) the plaintiff's performance or tender of performance; (c) the defendant's breach; and (d) damages resulting from that breach. Keveney v. Missouri Military Academy, 304 S.W.3d 98, 104 (Mo. banc 2010).

47. Better issued, and Plaintiffs accepted, a written Mortgage Commitment Letter dated on or about February 17, 2026. The Commitment expressly recited that it was "binding upon both parties," identified the loan terms, identified the conditions that Better itself was required to manage prior to closing, and was supported by mutual consideration including the application, the locked rate, the issued case number, the engaged appraisal, the borrower's payment of fees, the borrower's cash-to-close wire, and the borrower's relocation in reliance.

48. The Commitment, together with Better's contemporaneous internal documentation of the loan terms, satisfies the writing requirement of RSMo § 432.047. Bailey v. Hawthorn Bank, 382 S.W.3d 84, 102–05 (Mo. App. W.D. 2012) (internal bank documentation of credit-agreement terms satisfies § 432.047).

49. Better's Commitment created a binding obligation to fund the loan provided that Better's own conditions (verbal verification of employment within ten days of closing, soft credit review, title, appraisal, fraud review, and pre-closing quality control) were satisfied. At all relevant times, those conditions were either satisfied or were within Better's exclusive control to satisfy. To the extent any condition was unsatisfied, Better was responsible for the failure.

50. Plaintiffs performed or tendered performance of each and every obligation imposed upon them by the Commitment. Plaintiffs locked the rate, paid all required fees, signed all required disclosures and certifications, made all required disclosures of financial information, wired the required cash-to-close, executed the FHA Amendatory Clause, secured and paid for the appraisal, and complied with every reasonable underwriting request that Better made of them, including substituting alternate documentation when Better rejected Plaintiff's 401(k) screenshot.

51. Better breached the Commitment by failing and refusing to fund the loan on March 19, 2026, by failing to fund the loan at any subsequent time, by manufacturing pretextual underwriting objections (the "Klarna" objection; the post-hoc "reserve requirement"; the "UnverifiableInformation" adverse-action rationale), and by failing to satisfy those conditions of the Commitment that were Better's own responsibility to manage.

52. To the extent Better contends that any contractual condition subsequent excused its performance, Better's contention is barred because Better did not lawfully invoke any such condition, the conditions Better has invoked are pretextual, and Missouri law does not permit a lender to treat its own discretionary underwriting steps as conditions-subsequent excusing performance on a binding written commitment. Pointe Development, LLC v. Enterprise Bank & Trust, 316 S.W.3d 543 (Mo. App. W.D. 2010).

53. As the direct and proximate result of Better's breach of the Commitment, Plaintiffs have suffered the damages set forth in paragraphs 40 through 43 above, including without limitation out-of-pocket damages, lost benefit of the bargain, increased housing costs, lost personal-property value, and the consequential damages reasonably foreseeable at the time the Commitment was issued.

54. In addition, Better's breach was committed with such reckless disregard for the rights and interests of the Plaintiffs as to permit imposition of punitive damages. Bailey v. Hawthorn Bank, 382 S.W.3d 84, 110 (Mo. App. W.D. 2012) (affirming punitive damages against lender on clear-and-convincing evidence of reckless disregard for borrower's interests in failing to close a promised loan). The factual predicate for punitive damages, pleaded pursuant to RSMo § 510.261, includes: (a) Better issued a binding written commitment to first-time home-buyer Plaintiffs knowing that Plaintiffs were undertaking a 1,800-mile interstate relocation from Palmdale, California in reliance upon it; (b) Better's loan officer made affirmative misrepresentations on March 17, 2026 that the loan was clear to close while Better's closing department was simultaneously informing the settlement agent the opposite was true; (c) Better caused Plaintiffs to wire cash-to-close, contract with an interstate moving carrier to transport all of their household goods cross-country, and arrive at a closing that Better knew it had no intention or operational ability to fund; and (d) Better issued an Adverse-Action Notice whose stated reason was a single, vague, conclusory word — "UnverifiableInformation" — to mask its own internal disorder.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count I, in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT II — BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

55. Plaintiffs incorporate by reference each of paragraphs 1 through 54 as though fully set forth herein.

56. Missouri law implies a covenant of good faith and fair dealing in every contract. Mo. Consolidated Health Care Plan v. Community Health Plan, 81 S.W.3d 34, 45 (Mo. App. W.D. 2002). "Bad faith" in this context includes "evasion of the spirit of the bargain," abuse of discretion in performing or in determining discretionary contractual functions, and lack of diligence and slacking off. Id.

57. Better had unilateral and discretionary control over the underwriting, verification, conditions clearance, document preparation, funding, and closing-coordination functions of the Commitment. Better was bound to perform those discretionary functions in good faith and consistent with the Plaintiffs' reasonable expectations under the Commitment.

58. Better breached the implied covenant of good faith and fair dealing by, inter alia:

(a) abusing discretion in the timing and substance of its underwriting decisions, including imposing the $8,500 "reserve requirement" only after Plaintiffs had relocated and wired cash-to-close; (b) abusing discretion in the assertion of pretextual underwriting objections, including the demonstrably false "Klarna" assertion; (c) evading the spirit of the bargain by issuing a binding commitment with apparent intent to fund and thereafter refusing to fund without lawful basis; (d) failing to perform its own conditions diligently — including the verbal verification of employment that Better had ten days to complete and that Better's closing department instead allowed to remain "pending" while the loan officer affirmatively represented to the borrower that the loan was clear to close; (e) issuing inconsistent representations to the borrower and the settlement agent on the same day, causing the settlement agent to revise closing documents in reasonable reliance on a representation Better's own closing department contradicted within hours; and (f) issuing an adverse-action notice whose

stated rationale was indistinguishable from no rationale at all, in order to avoid acknowledging Better's own failure to honor the Commitment in good faith.

59. As the direct and proximate result of Better's breach of the implied covenant, Plaintiffs suffered the damages set forth in paragraphs 40 through 43.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count II, in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT III — FRAUDULENT MISREPRESENTATION (Pleaded with Particularity Pursuant to Rule 55.15)

60. Plaintiffs incorporate by reference each of paragraphs 1 through 59 as though fully set forth herein.

61. The elements of fraudulent misrepresentation under Missouri law are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of falsity or ignorance of the truth; (5) the speaker's intent that the representation be acted upon by the hearer in the manner contemplated; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; and (9) consequent and proximately caused injury. Clark v. Olson, 726 S.W.2d 718, 719 (Mo. banc 1987).

62. Plaintiffs plead the following specific fraudulent misrepresentations of fact, in compliance with Mo. R. Civ. P. 55.15:

(a) Misrepresentation One — "Assets and Income Already Verified; No Reserves Needed; 401(k) Task Will Be Overridden": Who: Ashley Rayne Gould-Martinez, licensed loan officer of Better, acting within the course and scope of her employment and with actual and apparent authority. What: In response to Plaintiff William Wilson's same-

day written email questioning the approximately $15,000 cash-to-close figure on Better's then-current Loan Estimate (in addition to the $10,000 in earnest money Plaintiffs had already paid to the title company), Ashley represented to Plaintiff, in substance and in part verbatim: (i) that Plaintiffs' cash to close would be set at exactly 3.5% of the purchase price — the FHA-required minimum down payment — and no more; (ii) that Plaintiff's 401(k) funds would not be needed for or used in any part of the transaction; (iii) that Plaintiff could "ignore" the 401(k) verification task that had appeared on his Better borrower portal, and that Ashley herself would "override" or "delete" that task from the portal; and (iv) that Better had "already verified enough assets and income" on the file, and that Plaintiff should "not worry about it." Ashley made no mention whatsoever of any cash-reserve requirement. When: February 25, 2026 — twelve (12) days prior to the originally scheduled closing of March 13, 2026. Where: Telephone conversation initiated by Ashley in response to Plaintiff William Wilson's contemporaneous email, with Plaintiff located in St. Francois County, Missouri. How: Oral representations made directly to Plaintiff William Wilson during the telephone conversation, in immediate response to Plaintiff's written inquiry of the same date. Falsity: Each component of the representation was false. On March 9, 2026 — only four (4) days before the scheduled closing and only twelve (12) days after the representations were made — Ashley reversed course and informed Plaintiff that an $8,500 cash-reserve requirement existed on the file; that Plaintiff's 401(k) funds would be required to satisfy that requirement; and that, contrary to Ashley's February 25, 2026 assurances, Better had not in fact "already verified enough assets and income" on the file. The fact, magnitude, and timing of this reversal demonstrate

that the representations of February 25, 2026 were either (i) knowingly false when made, or (ii) made with reckless disregard for the truth. Plaintiffs are further informed and believe, and on that basis allege, that Ashley never "overrode" or "deleted" the 401(k) verification task from the borrower portal as she represented she would.

(b) Misrepresentation Two — Klarna Transactions as "Large or Recurring Payment[s]": Who: Better's underwriting personnel, communicating through Better's borrower portal and through processor Philip Chan and loan officer Ashley. What: Three (3) separately generated borrower-portal verification tasks each characterizing, on its face, one of three small one-time debit-card purchases as a "large or recurring payment" requiring documentation of "what the payment is and how often it's being paid," with reference to "recent account statements, loan agreements, and promissory notes" as examples of the type of documentation required. The three transactions, verbatim as stated by Better in the borrower portal, were: (i) "$52.4 made from your Chase account 5021 on 2/9/2026 to Klarna"; (ii) "$40 made from your Chase account 5021 on 1/26/2026 to Klarna"; and (iii) "$15.54 made from your Chase account 5021 on 2/18/2026 to Klarna." When: On or about March 11, 2026. Where: Better's borrower portal and email communications with Plaintiff William Wilson in St. Francois County, Missouri. How: Written portal task templates issued to Plaintiff William Wilson and reinforced by oral communications from Better personnel. Falsity: On the face of Better's own task language, none of the three transactions was "large" — the amounts were $52.40, $40.00, and $15.54 — and none of the three transactions was "recurring" — the entries reflected three different amounts on three different dates, with no common amount, no periodicity, and no pattern consistent

with a recurring obligation. Plaintiff William Wilson timely submitted a verified letter of explanation and Klarna's own customer documentation, which confirmed that the three flagged entries were ordinary paid-in-full debit-card purchases (made via the Klarna Flex card or Klarna express checkout through digital-wallet platforms such as Apple Pay), that no installment balance existed, and that Plaintiff's current Klarna balance was $0. The split-pay feature for which Plaintiff was approved (up to $100) was not used. Better's characterization of these entries as "large or recurring" payments requiring loan-agreement or promissory-note documentation was, on the face of Better's own task language and on the face of the documentation Plaintiff supplied, false and was made either knowingly or with reckless disregard for the truth.

(c) Misrepresentation Three — "Title Work Has Been Ordered, Not Received": Who: Better processor Philip Chan. What: Representation that the title work for the Property had been "ordered, not received" by Better. When: On or about March 10, 2026. Where: Communication to Plaintiff William Wilson in St. Francois County, Missouri. How: Written and oral. Falsity: Lisa Campbell of Preferred Land Title confirmed that the title work had been sent to Better weeks earlier and forwarded it again upon request.

(d) Misrepresentation Four — "Got the Clear to Close": Who: Ashley Rayne Gould-Martinez. What: Representation that the loan was "clear to close." Verbatim text: "Got the clear to close!!!!" When: On the afternoon of March 17, 2026. Where: Text message sent by Ashley to Plaintiff William Wilson in St. Francois County, Missouri. How: Text message communication. Falsity: At the time Ashley's "clear to close"

representation was made earlier on the afternoon of March 17, 2026, Better's own closing department had not cleared the loan to close. At 2:23 p.m. Eastern Time the same day — within hours after Ashley's text — Better's closing-department employee Hasnat Sapui informed Preferred Land Title in writing, verbatim, "No it is not clear to close and also verification employment pending." Hasnat Sapui's 2:23 p.m. statement is a contemporaneous, internal acknowledgment by Better itself that, at the time Ashley made her "clear to close" representation, no such clearance in fact existed.

(e) Misrepresentation Five — "Buyer Has Outstanding Tasks": Who: Better processor Philip Chan. What: Representation to Preferred Land Title that the loan was not clear to close because "buyer has outstanding tasks." When: On or about March 13, 2026. Where: Email communication to Lisa Campbell. How: Written. Falsity: Plaintiff had no outstanding borrower tasks; the file was paused solely because Better was conducting underwriting based on its own manufactured "Klarna" pretext.

(f) Misrepresentation Six — "UnverifiableInformation": Who: Better, by and through its adverse-action personnel. What: Stated reason for adverse action in Better's written Adverse-Action Notice. When: On or about April 1, 2026. Where: Written notice issued to Plaintiffs in St. Francois County, Missouri. How: Written. Falsity: The asserted reason is a generic, conclusory word that masked Better's own internal contradictions. Better knew that the actual reasons for non-funding were not "unverifiable information" of any particular kind, but Better's failure to perform its own clearance functions consistently with its loan officer's affirmative representation that the loan was clear to close.

63. Each of the foregoing representations was material. Each representation related to facts central to the Plaintiffs' decisions to lock the rate, wire cash, relocate from California to Missouri, transport household goods, terminate the California residence, schedule and reschedule closing, and accept the Adverse-Action Notice without immediate legal challenge.

64. At the time each representation was made, Better either knew the representation was false, or was ignorant of the truth and lacked any reasonable basis upon which to make it. In particular, Better knew at the time of Misrepresentation Four (March 17, 2026) that its closing department had not cleared the loan to close, because the closing department itself was telling Preferred Land Title precisely the opposite within hours of (and in some respects before) the loan officer's text to Plaintiff.

65. Each representation was made by Better with the intent that the Plaintiffs would act upon it in the manner contemplated — namely, by continuing to perform under the Commitment, continuing the move-in, continuing to incur out-of-pocket expense, continuing to forebear from securing alternate financing, and proceeding toward a closing date Better selected.

66. Plaintiffs were ignorant of the falsity of each representation when it was made. Plaintiffs justifiably relied upon each representation, both because the representations came from a duly licensed loan officer and her employer-lender on a binding written commitment, and because the representations were made through the regular channels of an active mortgage-loan file.

67. Plaintiffs had a right to rely on each representation. The mortgage-loan relationship between Plaintiffs and Better was one in which Better had special access to underwriting information, exclusive control of the borrower portal, exclusive knowledge of internal closing

department communications, and a fiduciary-like obligation to communicate accurately concerning the status of the file.

68. Plaintiffs were injured by their reasonable reliance upon each representation, as set forth in paragraphs 40 through 43 above.

69. Plaintiffs are entitled to recover under the benefit-of-the-bargain measure of damages, including the difference between the value of the Property as represented and the value of what Plaintiffs in fact received (nothing), measured at the time of the transaction. Heberer v. Shell Oil Co., 744 S.W.2d 441 (Mo. banc 1988). Plaintiffs are alternatively entitled to recover the return of all payments and incidental expenses with interest. Id.

70. Better's conduct was committed knowingly, intentionally, recklessly, and with conscious disregard for the rights of the Plaintiffs. The factual predicate for punitive damages, pleaded pursuant to RSMo § 510.261, includes: Better issued conflicting representations to two external parties on the same day; Better's officer maintained the deceptive representation during the four critical days between March 17 and March 19 even as the closing collapsed; Better foreseeably and indifferently injured first-time home-buyer Plaintiffs known to have undertaken an 1,800-mile interstate relocation from Palmdale, California to Farmington, Missouri in reliance.

71. To the extent that Better contends Plaintiffs' fraud claim is barred by the economic-loss doctrine, that contention fails. The duty Better breached was an independent duty arising from the special relationship between licensed mortgage lender and applicant — including statutory and regulatory duties under ECOA, Reg B, and the MMPA — and was not solely contractual. Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184 (Mo. App. S.D. 2010).

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count III, in an amount in excess of $25,000.00 that is fair and reasonable, including benefit-of-the-bargain damages, restitutionary damages where applicable, consequential damages, and the factual predicate for punitive damages pleaded above, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT IV — NEGLIGENT MISREPRESENTATION (Pleaded in the Alternative)

72. Plaintiffs incorporate by reference each of paragraphs 1 through 71 as though fully set forth herein, and plead this Count in the alternative to Count III.

73. Under Missouri law, the elements of negligent misrepresentation are: (1) the defendant supplied information in the course of its business; (2) because of the defendant's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the defendant for the guidance of limited persons in a particular business transaction; (4) the plaintiff justifiably relied on the information; and (5) due to the plaintiff's reliance on the information, the plaintiff suffered a pecuniary loss. Bailey v. Hawthorn Bank, 382 S.W.3d 84, 105 (Mo. App. W.D. 2012).

74. Better is in the business of supplying information to mortgage-loan applicants concerning loan eligibility, underwriting status, and closing readiness. By undertaking to issue a written Mortgage Commitment Letter, by maintaining a borrower portal, by assigning a licensed loan officer, by participating in the FHA loan process, and by issuing an adverse-action notice, Better assumed a duty to exercise reasonable care in the information it supplied to the Plaintiffs. Frame v. Boatmen's Bank, 824 S.W.2d 491, 495 (Mo. App. E.D. 1992) ("once a lender assumes

the responsibility of providing information about a loan, a duty to use due care in providing such information arises").

75. Better supplied the representations set forth in paragraphs 62(a) through 62(f) above to Plaintiffs in the course of Better's business and for the purpose of guiding Plaintiffs in the particular transaction at issue.

76. Better failed to exercise reasonable care in supplying that information. Among other things, Better failed to coordinate the communications of its loan officer with the communications of its closing department such that on March 17, 2026, the two functions issued directly contradictory statements externally to two different parties to the same closing. Better failed to disclose, at the appropriate stages of underwriting, that the reserve requirement, the title status, and the verification of employment were unresolved — instead representing variously that they were resolved, would not be required, or would be resolved within ten days when in fact they were not.

77. Each representation was supplied for the guidance of the Plaintiffs, members of the limited and identifiable group of persons for whose guidance the information was intended.

78. Plaintiffs justifiably relied upon each representation, as set forth in paragraphs 66 and 67 above.

79. As a result of Plaintiffs' justifiable reliance, Plaintiffs suffered pecuniary loss, including the out-of-pocket and consequential damages set forth in paragraphs 40 through 43 above.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count IV, in an amount in excess of $25,000.00 that is fair and reasonable, plus

pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT V — VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT (RSMo §§ 407.020, 407.025)

80. Plaintiffs incorporate by reference each of paragraphs 1 through 79 as though fully set forth herein.

81. RSMo § 407.020.1 declares unlawful "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . , in or from the state of Missouri . . . ." RSMo § 407.025.1 creates a private right of action for any person who purchases or leases "merchandise" primarily for personal, family or household purposes and who thereby suffers ascertainable loss as a result of the unlawful conduct.

82. The making and servicing of a residential mortgage loan is the "sale of merchandise" within the meaning of the MMPA, and unfair or deceptive acts "in connection with" such sale fall within the statute. Conway v. CitiMortgage, Inc., 438 S.W.3d 410 (Mo. banc 2014).

82A. Better's unlawful acts are squarely "in connection with" the sale of the loan within the meaning of § 407.020.1. The Missouri Supreme Court has expressly held that "[t]he use of an unlawful practice is a violation of the MMPA whether committed before, during or after the sale, so long as it was made in connection with the sale." Watson v. Wells Fargo Home Mortgage, Inc., 438 S.W.3d 404, 407 (Mo. banc 2014) (internal quotation omitted); Conway, 438 S.W.3d at 414. Conway and Watson confirm that even post-closing servicing and collection conduct — conduct occurring after the credit has been extended — remains "in connection with" the loan because the "sale" of a loan is an ongoing bundle of services that "lasts until the last service is

performed or the loan is repaid." Conway, 438 S.W.3d at 414–15. A fortiori, Better's deceptive acts during the origination process itself — the issuance of the binding Commitment, the contemporaneous solicitation of fees and earnest-money expenditures, the manufactured "Klarna" objection, the post-hoc reserve invention, the contradictory "clear to close" and "not clear to close" representations made to the borrower and the settlement agent on the same day, and the conclusory single-word adverse-action notice — are all "in connection with" the very sale of the loan that Better was actively offering to close. Each act bears the requisite "relationship between the sale of merchandise and the alleged unlawful action." Conway, 438 S.W.3d at 414.

83. Plaintiffs purchased the loan and ancillary services from Better primarily for personal, family, and household purposes — namely, the purchase of a residence they intended to occupy as their family home. Plaintiffs are private plaintiffs within the meaning of § 407.025.

84. Better engaged in deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and concealment/suppression/omission of material fact in connection with the sale of the loan and ancillary mortgage services to Plaintiffs. Better's unlawful conduct includes, without limitation:

(a) The false statements identified in paragraph 62(a)–(f); (b) The post-hoc imposition of an undisclosed $8,500 "reserve requirement" four days before closing in contradiction of prior representations; (c) The manufactured "Klarna" objection unsupported by Plaintiff's actual bank records; (d) The simultaneous, contradictory representations issued by Better's loan officer and closing department externally to the borrower and the settlement agent on March 17, 2026; (e) Issuance of an Adverse-Action Notice with a stated reason that does not satisfy the specificity requirement of ECOA, 15

U.S.C. § 1691(d), and Regulation B, 12 C.F.R. § 1002.9, see Sayers v. General Motors Acceptance Corp., 522 F. Supp. 835 (W.D. Mo. 1981); and (f) Failure to disclose to Plaintiffs that the verbal verification of employment, which Better had committed to complete within ten days of closing, was unresolved at the time Better's loan officer affirmatively represented that the loan was clear to close.

85. Each act of unlawful conduct alleged in paragraph 84 occurred "in connection with" the sale of the loan in or from the State of Missouri.

86. As a direct and proximate result of Better's unlawful conduct, Plaintiffs suffered concrete, identifiable, and ascertainable loss, including, without limitation, application fees, FHA case-number fees, lock fees, appraisal fees, credit-report fees, inspection fees, the difference between the contract price ($410,000) and the appraised value ($423,000), and the out-of-pocket and consequential damages set forth in paragraphs 40 through 43. Plaintiffs specifically plead concrete fees paid as a result of Better's unlawful conduct, including the $4,112.00 cash-to-close wire of February 27, 2026. Binkley v. American Equity Mortgage, 447 S.W.3d 194 (Mo. banc 2014).

87. Under § 407.025, Plaintiffs are entitled to recover actual damages, including benefit-of-the-bargain damages. Schoenlein v. Routt Homes, Inc., 260 S.W.3d 852 (Mo. App. E.D. 2008); Sunset Pools of St. Louis, Inc. v. Schaefer, 869 S.W.2d 883 (Mo. App. E.D. 1994).

88. Plaintiffs are further entitled to recover discretionary punitive damages and reasonable attorneys' fees, as the Court may deem appropriate, under § 407.025. Schoenlein, 260 S.W.3d at 858–60. Plaintiffs presently appear pro se and have incurred no attorneys' fees as of the date of this filing, but reserve the right to retain counsel during the pendency of this action

and to recover counsel's fees if so retained. Plaintiffs further reserve the right to recover costs of investigation and litigation under § 407.025.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count V, in an amount in excess of $25,000.00 that is fair and reasonable, including actual damages, benefit-of-the-bargain damages, discretionary statutory punitive damages, reasonable attorneys' fees and costs of litigation should counsel be retained, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT VI — TORTIOUS INTERFERENCE WITH CONTRACT (Wilson–Honey Bee Holdings LLC Real-Estate Purchase Contract)

89. Plaintiffs incorporate by reference each of paragraphs 1 through 88 as though fully set forth herein.

90. Under Missouri law, the elements of tortious interference with a contract or valid business expectancy are: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or expectancy; (3) intentional interference by the defendant inducing or causing a breach of the contract or expectancy; (4) absence of justification; and (5) damages resulting from the defendant's conduct. Nazeri v. Missouri Valley College, 860 S.W.2d 303 (Mo. banc 1993); Western Blue Print Co. v. Roberts, 367 S.W.3d 7 (Mo. banc 2012).

91. Plaintiffs had a binding written real-estate purchase contract with Honey Bee Holdings LLC for the purchase of the Property at the price of $410,000.00. The contract was valid and enforceable.

92. Better had actual knowledge of the contract, its closing date, its cash-to-close terms, the FHA Amendatory Clause (which Better required and which the Seller countersigned), and Better's role as financier.

93. Better is a third party to the contract between Plaintiffs and Seller; the tortious-interference claim is properly directed at Better because Better was not a party to the Wilson–Seller purchase contract. Zipper v. Health Midwest, 978 S.W.2d 398 (Mo. App. W.D. 1998).

94. Better intentionally interfered with the contract by, inter alia:

(a) representing to Preferred Land Title on March 13, 2026 that the file was not clear to close because the "buyer has outstanding tasks," when Plaintiffs had none; (b) representing to Preferred Land Title on March 17, 2026 at 2:23 p.m. Eastern Time that the loan was not clear to close, within hours after its loan officer had represented to the borrower that the loan was clear to close; (c) failing to fund on the rescheduled March 19, 2026 closing despite its binding written Commitment; (d) inducing Plaintiffs' inability to perform the Wilson–Seller contract on the dates the Seller had set; and (e) issuing an Adverse-Action Notice that prevented Plaintiffs from immediately securing replacement financing.

95. Better acted without justification. Better had no legal right to issue conflicting communications to the borrower and the settlement agent regarding the readiness of the loan to fund. Better had no legal right to manufacture pretextual underwriting objections, to impose a previously undisclosed reserve requirement after Plaintiffs had relocated and wired funds, or to characterize Plaintiffs' diligently produced documentation as "UnverifiableInformation." Better's conduct constituted "improper means" within the meaning of the tortious-interference doctrine, including misrepresentations of fact and wrongful acts. Nazeri, 860 S.W.2d at 317.

96. But for Better's interference, Plaintiffs and Seller would have closed the contract on or before March 13, 2026, or alternatively on March 19, 2026, and Plaintiffs would have

received the benefit of the bargain represented by the day-one equity and the long-term homeownership at the locked rate.

97. As the direct and proximate result of Better's tortious interference, Plaintiffs suffered the damages set forth in paragraphs 40 through 43 above, including specifically the loss of the contract bargain.

98. Better's interference was committed knowingly, intentionally, and with conscious disregard for Plaintiffs' rights, supporting recovery of punitive damages on clear-and-convincing evidence. The factual predicate is pleaded as set forth in paragraphs 54 and 70 above and is incorporated here by reference.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count VI, in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT VII — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (Including Aggravation of Preexisting Condition)

99. Plaintiffs incorporate by reference each of paragraphs 1 through 98 as though fully set forth herein.

100. Under Missouri law, a plaintiff may recover for negligent infliction of emotional distress when (a) the defendant should have realized that the conduct involved an unreasonable risk of causing the distress, and (b) the emotional distress is medically diagnosable and medically significant. Bass v. Nooney Co., 646 S.W.2d 765 (Mo. banc 1983); Asaro v. Cardinal Glennon Memorial Hospital, 799 S.W.2d 595 (Mo. banc 1990). A direct-victim plaintiff need not satisfy any additional zone-of-danger requirement. Jarrett v. Jones, 258 S.W.3d 442 (Mo. banc 2008); Biersmith v. Curry Ass'n Management, 359 S.W.3d 84 (Mo. App. W.D. 2011).

101. Better owed Plaintiffs a duty of reasonable care arising from the mortgage-lender / mortgage-applicant relationship, the binding written Commitment, Better's statutory duties under ECOA and Reg B, and Better's voluntary undertaking to provide information about the loan to Plaintiffs in St. Francois County, Missouri. Frame v. Boatmen's Bank, 824 S.W.2d 491 (Mo. App. E.D. 1992).

101A. Plaintiffs do not allege, and do not need to allege, that Better's duty of reasonable care arose from the parties' contract. The duty pleaded in this Count is grounded in the independent tort of misrepresentation to and concerning a borrower whose preexisting bipolar diagnosis was voluntarily disclosed to and known by Better's licensed loan officer, and in Better's foreseeability of psychiatric injury to a disclosed-fragile borrower expressly told that the loan was "clear to close" and then dropped at the closing table by non-funding. Missouri recognizes that the same act may simultaneously breach a contract and constitute a tortious breach of an independent duty. Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184, 192–93 (Mo. App. S.D. 2010) ("[T]he complained of act or omission which breaches a contract may also be a negligent act which would give rise to a liability in tort. In this latter instance, it is the act and not the breach of the contract which gives rise to the tort liability."). The duties Plaintiffs allege in this Count would exist on the facts pleaded even in the absence of any contract between Better and the Plaintiffs. The Plaintiffs accordingly disclaim, for purposes of this Count only, any reliance upon the Mortgage Commitment Letter or any other contract between the parties as a source of the duty of care here pleaded.

102. Better knew or should have known that its conduct involved an unreasonable risk of causing Plaintiffs medically diagnosable and medically significant emotional distress. Among other things:

(a) Better knew Plaintiffs were undertaking an interstate move based on the binding Commitment; (b) Better knew Plaintiffs were liquidating a California residence in reliance; (c) Better knew Plaintiffs had an infant daughter (born April 12, 2025) and significant family considerations attached to the move; (d) Better knew, by virtue of disclosures made to its loan officer, that Plaintiff William Wilson had a preexisting bipolar disorder and that the stress of the loan process and any disruption to the closing posed a foreseeable, heightened risk of psychiatric injury to him; and (e) Better knew that a borrower told "clear to close," then dropped at the closing table by a non-funding, would experience the loss of housing, the threatened loss of earnest money, displacement of household goods, and the psychiatric consequences naturally flowing therefrom.

103. Better breached its duty of reasonable care by the conduct alleged in paragraphs 22 through 36 above.

104. Plaintiff William Wilson suffered emotional distress that is medically diagnosable and medically significant, including aggravation of his preexisting bipolar disorder, severe anxiety, depression, sleep disturbance, and related conditions.

105. Plaintiff Sarah Wilson suffered emotional distress that is medically diagnosable and medically significant, including severe anxiety, depression, sleep disturbance, and related conditions.

106. Under the long-settled Missouri rule, Plaintiff William Wilson is entitled to recover for the aggravation of his preexisting bipolar disorder caused by Better's negligence. Widener v. St. Louis Public Service Co., 230 S.W.2d 698 (Mo. 1950). Better takes its plaintiff as it finds him.

107. As the direct and proximate result of Better's negligence, Plaintiffs have incurred and will reasonably incur past and future psychiatric and medical expenses, lost productivity, diminished enjoyment of life, and severe mental suffering, all in amounts to be proven at trial.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count VII, in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT VIII — PROMISSORY ESTOPPEL (Pleaded in the Alternative)

108. Plaintiffs incorporate by reference each of paragraphs 1 through 107 as though fully set forth herein, and plead this Count expressly in the alternative to Counts I and II pursuant to Mo. R. Civ. P. 55.10. Rule 55.10 permits a party to "set forth two or more statements of a claim or defense alternately or hypothetically" and to "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or equitable grounds." Mo. R. Civ. P. 55.10; Mays-Maune & Associates, Inc. v. Werner Brothers, Inc., 139 S.W.3d 201, 205–06 (Mo. App. E.D. 2004); Murray-Kaplan v. NEC Insurance Inc., No. ED108662 (Mo. App. E.D. Jan. 26, 2021) ("[A] petition may plead a claim for unjust enrichment as an alternative to breach of contract. Pleading claims in the alternative, even if the claims are inconsistent, is permitted by Rule 55.10. While it may be true that [the plaintiff] cannot ultimately recover on both claims, she certainly is not barred from pleading them both in the alternative."). This Count is therefore to be reached only in the event that the Court determines that the Mortgage Commitment Letter is unenforceable, in whole or in part, as a binding contract, or that one or more of Counts I and II otherwise fails as a matter of law. Plaintiffs reserve the right to elect

among inconsistent theories at submission. Burns Nat'l Lock Installation Co. v. Am. Family Mut. Ins. Co., 61 S.W.3d 262, 272 (Mo. App. E.D. 2001).

109. Under Missouri law, the elements of promissory estoppel are: (1) a promise; (2) on which the plaintiff detrimentally relied; (3) in a manner the promisor should reasonably have foreseen; and (4) injustice can be avoided only by enforcement of the promise. Clevenger v. Oliver Insurance Agency, 237 S.W.3d 588, 590 (Mo. banc 2007); Glenn v. HealthLink HMO, Inc., 360 S.W.3d 866 (Mo. App. E.D. 2012).

110. Better made promises to Plaintiffs, including without limitation: (a) the promise contained in the written Mortgage Commitment Letter of February 17, 2026; (b) the February 25, 2026 promise that no reserves would be required and the 401(k) funds would not be needed; and (c) the March 17, 2026 promise that the loan was clear to close.

111. Plaintiffs detrimentally relied on each promise. In particular, Plaintiffs (a) gave notice to their California landlord and vacated their rented residence in Palmdale, California, timed to the planned closing; (b) contracted with Plymouth Van Lines, an interstate moving carrier, to transport their entire household more than 1,800 miles from Palmdale, California to Farmington, Missouri; (c) physically relocated their family, including infant daughter E.G.W., across the country; (d) wired cash-to-close; (e) paid all required application, appraisal, and closing-related fees; (f) forewent the opportunity to seek alternate financing during a time when alternate financing might have been timely secured; and (g) reasonably scheduled and rescheduled closing in reliance upon Better's representations.

112. Better should reasonably have foreseen each act of reliance. Better knew Plaintiffs were relocating from California, knew the closing date, and knew that Plaintiffs would act on each affirmative representation made by Better.

113. Injustice can be avoided only by enforcement of the promise to fund the loan or by award of all damages reasonably necessary to place Plaintiffs in the position they would have occupied had the promise been kept.

WHEREFORE, Plaintiffs respectfully pray, in the alternative, for judgment against Better Mortgage Corporation on Count VIII, in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT IX — CIVIL CONSPIRACY

114. Plaintiffs incorporate by reference each of paragraphs 1 through 113 as though fully set forth herein.

115. Under Missouri law, the elements of civil conspiracy are: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) as a result thereof, the plaintiff was damaged. Western Blue Print Co., LLC v. Roberts, 367 S.W.3d 7, 22 (Mo. banc 2012); Oak Bluff Partners, Inc. v. Meyer, 3 S.W.3d 777, 780–81 (Mo. banc 1999). Civil conspiracy is not itself actionable in the abstract; it requires an underlying wrongful act "which, absent the conspiracy, would create a right of action against one of the defendants, if sued alone." Western Blue Print, 367 S.W.3d at 22; Phelps v. Bross, 73 S.W.3d 651, 657 (Mo. App. E.D. 2002).

116. The unlawful objectives underlying the conspiracy alleged in this Count are: (a) the fraudulent misrepresentations pleaded in Count III; (b) the tortious interference with the Wilson–Honey Bee Holdings Real-Estate Purchase Contract pleaded in Count VI; and (c) the deceptive conduct pleaded under the Missouri Merchandising Practices Act in Count V. Each of those

underlying wrongs would, standing alone, create a right of action against the wrongdoer and is sufficient to anchor a civil conspiracy claim under Missouri law.

117. The conspirators include, without limitation: (a) Defendant Better Mortgage Corporation; (b) Ashley Rayne Gould-Martinez (NMLS #1943523), Better's loan officer; (c) Hasnat Sapui, a member of Better's closing department (e-mail address hsapui@better.com); and (d) Philip Chan, Better's processor. Plaintiffs reserve the right, after discovery, to amend to add additional individual conspirators (including without limitation any additional Better employees or agents whose participation is revealed by discovery) and other persons or entities outside Better whose participation in or coordination with the wrongful acts is revealed by discovery. For the avoidance of doubt, Lisa Campbell, the closer at Preferred Land Title, LLC, is not pleaded as a conspirator; she is pleaded throughout this Petition as a non-party, third-party settlement agent who acted in reasonable reliance on the borrower-relayed representation that Better's loan officer had communicated clear-to-close, and who was thereby caused to issue revised closing documents in reliance on Better's own internal misrepresentations.

118. The meeting of the minds is shown by the conduct and communications between and among Better's agents on and around March 13, 2026 and March 17, 2026, including without limitation: (a) Philip Chan's March 13, 2026 e-mail to Preferred Land Title representing that the file was not clear to close because "buyer has outstanding tasks," at a time when Plaintiff had no outstanding tasks; (b) Ashley Rayne Gould-Martinez's March 17, 2026 text-message representation to Plaintiff William Wilson stating, verbatim, "Got the clear to close!!!!"; (c) Hasnat Sapui's contemporaneous March 17, 2026 2:23 p.m. e-mail communication to Preferred Land Title (the third-party settlement agent), stating, verbatim, "No it is not clear to close and also verification employment pending," — communicated to the title company at the very

moment Better's own loan officer had told the borrower the opposite; and (d) Better's subsequent issuance of an Adverse-Action Notice citing a single vague, conclusory word — "UnverifiableInformation" — to mask Better's internal disorder and the conflicting representations its agents had made to Plaintiffs and to third parties. These coordinated, contemporaneous, and directly contradictory representations issued by Better's loan officer to the borrower and by Better's closing department to the third-party settlement agent on the same day — and Better's failure thereafter to correct, retract, or reconcile either representation — are not innocent miscommunication; they are circumstantial evidence of an agreement among Better and its agents to project to Plaintiffs and to the settlement agent whatever representation each agent's role required in order to maintain Better's pipeline, preserve Ashley Rayne Gould-Martinez's individual commission, and avoid Better's accountability for its own misconduct.

119. Acts in furtherance of the conspiracy include, without limitation, each of the acts pleaded in paragraphs 1 through 113 above, including without limitation: (a) the issuance of the February 17, 2026 Mortgage Commitment Letter while material conditions remained unresolved; (b) the February 25, 2026 representations that no reserves would be required and the 401(k) funds would not be needed; (c) the March 17, 2026 simultaneous and contradictory representations to Plaintiffs and the settlement agent; (d) the inducement of Plaintiffs to wire $4,112.00 in cash-to-close on February 27, 2026; (e) the issuance of the March 19, 2026 Adverse-Action Notice citing a vague, non-specific reason that did not honestly disclose the actual cause of Better's refusal to fund; and (f) the failure of any agent of Better to correct or disclose the conflicting representations during the four critical days between March 17 and March 19, 2026.

120. Intracorporate-conspiracy doctrine does not bar this Count for at least three independent reasons: (a) the conspiracy is pleaded as between Better and one or more individual agents who acted outside the scope of their authority and for their own personal commission, retention, or reputational stake — most notably Ashley Rayne Gould-Martinez, whose individual loan-officer commission and pipeline stood to be impaired by an honest disclosure of the loan's status — bringing this case within the personal-stake exception recognized by courts addressing the doctrine; (b) Plaintiffs reserve the right to amend, after discovery, to add as conspirators third parties outside Better, including without limitation any title company, settlement agent, broker-channel partner, or vendor whose participation is revealed by discovery; and (c) Missouri has not adopted the intracorporate-conspiracy doctrine as an absolute bar in private actions of this type, and any application of the doctrine on these facts would be premature at the pleading stage.

121. As a direct and proximate result of the conspiracy and the acts in furtherance thereof, Plaintiffs have suffered each of the damages enumerated in this Petition, including without limitation those enumerated in paragraphs 40, 70, and 131 below, and all conspirators are jointly and severally liable for all damages naturally flowing from the conspiracy. Gettings v. Farr, 41 S.W.3d 539, 542 (Mo. App. E.D. 2001) (each conspirator is jointly and severally liable for all damages naturally flowing from the conspiracy).

122. Better's conduct, and that of its agents acting in furtherance of the conspiracy, was committed knowingly, intentionally, and with conscious and reckless disregard for the rights and interests of Plaintiffs, and the factual predicate for punitive damages is pleaded pursuant to RSMo § 510.261.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count IX, in an amount in excess of $25,000.00 that is fair and reasonable, with

the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT X — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

123. Plaintiffs incorporate by reference each of paragraphs 1 through 122 as though fully set forth herein, and plead this Count expressly in the alternative to, and additionally and independently of, Count VII (Negligent Infliction of Emotional Distress) pursuant to Mo. R. Civ. P. 55.10.

124. Under Missouri law, the elements of intentional infliction of emotional distress are: (1) the defendant's conduct was extreme and outrageous; (2) the conduct was intentional or recklessly committed; and (3) the conduct caused severe emotional distress that resulted in bodily harm. Nazeri v. Missouri Valley College, 860 S.W.2d 303, 316 (Mo. banc 1993); K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. banc 1996); Kuehner v. Denny Loan Corp., 518 S.W.2d 94, 95–96 (Mo. App. 1974); see also Restatement (Second) of Torts § 46. Conduct is sufficiently extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Kuehner, 518 S.W.2d at 96 (quoting Restatement (Second) of Torts § 46 cmt. d).

125. Better's conduct, taken as a whole, satisfies the extreme-and-outrageous threshold for purposes of pleading. The factual predicate for the extreme-and-outrageous element includes, without limitation:

(a) Better issued a binding written Mortgage Commitment Letter on February 17, 2026 to first-time home-buyer Plaintiffs with actual knowledge that Plaintiffs were

undertaking an interstate relocation of more than 1,800 miles from Palmdale, California to St. Francois County, Missouri in direct reliance upon that commitment;

(b) Better had actual knowledge, at all relevant times, that Plaintiffs were the parents of an infant daughter (E.G.W., d.o.b. April 12, 2025) who would be physically transported across the country in reliance upon Better's commitment;

(c) Better had actual or constructive knowledge that Plaintiff William Wilson lives with a documented preexisting psychiatric condition (bipolar disorder), which Better knew or should have known would be foreseeably aggravated by the collapse of an interstate residential closing of this magnitude;

(d) Better induced Plaintiffs to wire $4,112.00 in cash-to-close on February 27, 2026, to physically relocate their entire household by interstate moving carrier, and to give up the lease of their rented residence in Palmdale, California, all while Better's own loan officer had instructed Plaintiffs to delete or override portal tasks that, by Better's own internal standards, should have been completed before issuance of the commitment;

(e) On March 17, 2026, Better's agents made directly contradictory representations to the borrower on one hand and to the third-party settlement agent on the other on the same afternoon — Ashley Rayne Gould-Martinez, Better's loan officer, texted Plaintiff William Wilson the words, verbatim, "Got the clear to close!!!!", while at 2:23 p.m. Eastern Time the same day Hasnat Sapui of Better's closing department wrote to Lisa Campbell of Preferred Land Title that "No it is not clear to close and also verification employment pending"; Lisa Campbell, the third-party settlement agent, in reasonable reliance on the borrower-relayed representation that Better's loan officer had said clear-to-close, replied to Better at 3:13 p.m. confirming she had revised the closing

disclosure and scheduled closing for the following day; and Better's agents maintained those contradictory positions during the four critical days between March 17 and March 19, 2026, even as the closing collapsed and Plaintiffs continued to act in reliance;

(f) On March 19, 2026, after Plaintiffs had relocated cross-country, after their household goods were already in interstate transit, and after they had wired cash-to-close, Better issued an Adverse-Action Notice whose stated reason for refusing to fund was a single, vague, conclusory term — "UnverifiableInformation" — calculated to mask Better's own internal disorder rather than honestly disclose the actual cause of denial;

(g) Better's conduct foreseeably and proximately caused the displacement of Plaintiffs and their infant child, the entrapment of Plaintiffs' entire household and irreplaceable family heirlooms in interstate-carrier storage at $950.00 per month commencing March 13, 2026, and the May 15, 2026 issuance by Plymouth Van Lines of a formal lien notice threatening permanent disposal of Plaintiffs' household goods unless an outstanding balance of $9,439.00 was satisfied by May 22, 2026 — the threat of which remains imminent and ongoing as of the filing of this First Amended Petition;

(h) Better is one of the largest non-bank residential mortgage originators in the United States and at all relevant times held itself out as a sophisticated, professional, FHA-approved lender operating in a position of substantial informational and economic superiority over the first-time home-buyer Plaintiffs. The recitation of the foregoing facts to an average member of the community would arouse resentment against Better and lead the average member to exclaim, "Outrageous!"

126. Better's conduct was intentional or, at minimum, recklessly committed. Better acted with the deliberate purpose of inducing Plaintiffs' reliance, and with reckless disregard for the substantial probability that its conduct would cause Plaintiffs severe emotional distress. Better's own internal records (which Plaintiffs anticipate obtaining through discovery) are anticipated to demonstrate that Better's closing department, loan officer, and underwriting personnel each had access to the conflicting information regarding the status of the loan and chose to communicate inconsistent, self-serving representations to Plaintiffs and to third parties rather than honestly disclose the actual status of the loan.

127. Better's conduct caused Plaintiffs to suffer severe emotional distress that resulted in bodily harm and medically significant psychiatric injury, including without limitation: (a) significant and medically documented aggravation of Plaintiff William Wilson's preexisting bipolar disorder; (b) loss of sleep; (c) anxiety, fear, humiliation, and mental anguish associated with the cross-country displacement of Plaintiffs and their infant daughter; (d) the ongoing fear of imminent permanent loss of irreplaceable family heirlooms and household goods to the Plymouth Van Lines lien; and (e) related physical sequelae of severe emotional distress.

128. This Count is independent of, and does not depend upon, any defamatory or contract-based theory, and the conduct pleaded above goes beyond and is independently outrageous apart from any breach of the Mortgage Commitment Letter or the implied covenant of good faith and fair dealing. Cf. Nazeri, 860 S.W.2d at 316 (intentional infliction of emotional distress will not lie where the offending conduct consists only of a separately actionable wrong such as defamation, but will lie where the petition pleads additional wanton and outrageous acts). Plaintiffs further plead this Count in the alternative to Count VII pursuant to Mo. R. Civ. P. 55.10, recognizing that Plaintiffs may not ultimately recover duplicative damages for the same

emotional injury under both NIED and IIED theories. Burns Nat'l Lock Installation Co. v. Am. Family Mut. Ins. Co., 61 S.W.3d 262, 272 (Mo. App. E.D. 2001).

129. Better's conduct was committed knowingly, intentionally, and with conscious disregard for the rights and well-being of Plaintiffs. The factual predicate for punitive damages, pleaded pursuant to RSMo § 510.261, is incorporated by reference from paragraphs 54 and 70 above and from the facts set forth in this Count.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count X, in an amount in excess of $25,000.00 that is fair and reasonable, including damages for severe emotional distress, aggravation of preexisting psychiatric condition, past and future medical and psychiatric care, and bodily-harm sequelae, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## V. DAMAGES — SUMMARY AND VALUATION

130. Plaintiffs incorporate by reference each of paragraphs 1 through 129 as though fully set forth herein.

131. Plaintiffs have suffered and will continue to suffer the following damages, in amounts to be proved at trial:

(a) OUT-OF-POCKET / RELIANCE DAMAGES: application fees, FHA case-number fees, lock fees, appraisal fees, credit-report fees, inspection fees, earnest money, the $4,112.00 cash-to-close wire of February 27, 2026, moving expenses, storage costs, double-rent overlap, and related transaction costs, in a total approximate amount of $32,051.00 as documented to date and subject to amendment as discovery progresses.

(b) LOST BENEFIT OF THE BARGAIN: the difference between the appraised value of $423,000.00 and the contract price of $410,000.00 — $13,000.00 of day-one equity at minimum — plus the differential between the locked loan rate and any replacement-financing rate that may now be available to Plaintiffs. Heberer v. Shell Oil Co., 744 S.W.2d 441 (Mo. banc 1988); Schoenlein, 260 S.W.3d 852.

(c) PERSONAL PROPERTY DAMAGES: replacement cost of approximately $150,000.00 for ordinary household personal property lost or damaged as a foreseeable consequence of the storage and displacement caused by Better's conduct.

(d) HEIRLOOM / IRREPLACEABLE PROPERTY DAMAGES: the actual value to the owner of irreplaceable family heirlooms, photographs, and items of intrinsic family significance, in an amount determined by the jury based on the facts and circumstances of this case. Ladeas v. Carter, 845 S.W.2d 45 (Mo. App. W.D. 1992); MacKey v. Goslee, 244 S.W.3d 261 (Mo. App. S.D. 2008); Breece v. Jett, 556 S.W.2d 696 (Mo. App. 1977).

(e) CONSEQUENTIAL / RELIANCE DAMAGES: losses naturally and foreseeably flowing from Better's conduct, including loss of the Wilson–Seller transaction, increased rent at temporary replacement housing, loss of health-insurance continuity, employment-deterioration consequences, additional moving costs, and storage costs.

(f) EMOTIONAL DISTRESS / NIED DAMAGES: past and future psychiatric and medical care; severe mental suffering; loss of sleep; aggravation of preexisting bipolar disorder; lost enjoyment of life; and related general damages, including future medical care reasonably certain to be required. Bass v. Nooney Co., 646 S.W.2d 765; Widener, 230 S.W.2d 698.

(g) MMPA STATUTORY REMEDIES: actual damages, discretionary punitive damages, reasonable attorneys' fees (subject to retention of counsel), and costs. RSMo § 407.025.

(h) PRE-JUDGMENT INTEREST: on liquidated and ascertainable damages from the date demand for a specific amount was first made. RSMo § 408.040.

132. PUNITIVE DAMAGES — FACTUAL PREDICATE: Plaintiffs plead the factual predicate for punitive damages on Counts I, III, V, VI, VII, IX, and X pursuant to RSMo § 510.261 and Bailey v. Hawthorn Bank, 382 S.W.3d 84 (Mo. App. W.D. 2012). Pursuant to RSMo § 510.261, no specific punitive amount is alleged in this petition; Plaintiffs reserve the right, after appropriate discovery and upon leave of court, to seek leave to amend to plead a specific punitive amount. Plaintiffs reserve all rights under MacKey v. Goslee, 244 S.W.3d 261 (Mo. App. S.D. 2008), to make any required election or showing of actual damages prior to award of punitives.

## VI. JURY DEMAND

133. Pursuant to Article I, § 22(a) of the Missouri Constitution and Mo. R. Civ. P. 69.01, Plaintiffs hereby demand a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, having pleaded all causes of action and incorporated all factual allegations by reference, Plaintiffs William Wilson and Sarah Wilson respectfully pray for judgment against Defendant Better Mortgage Corporation as follows:

A. On Count I (Breach of Mortgage Loan Commitment) — in an amount in excess of $25,000.00 that is fair and reasonable;

B. On Count II (Breach of Implied Covenant of Good Faith and Fair Dealing) — in an amount in excess of $25,000.00 that is fair and reasonable;

C. On Count III (Fraudulent Misrepresentation) — in an amount in excess of $25,000.00 that is fair and reasonable, including benefit-of-the-bargain damages, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

D. On Count IV (Negligent Misrepresentation, in the alternative) — in an amount in excess of $25,000.00 that is fair and reasonable for pecuniary loss;

E. On Count V (Missouri Merchandising Practices Act, RSMo §§ 407.020, 407.025) — actual damages, discretionary statutory punitive damages, reasonable attorneys' fees (subject to retention of counsel), costs of investigation and litigation, and such further statutory remedies as the Court may deem appropriate;

F. On Count VI (Tortious Interference with the Wilson–Honey Bee Holdings Real-Estate Purchase Contract) — in an amount in excess of $25,000.00 that is fair and reasonable, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

G. On Count VII (Negligent Infliction of Emotional Distress, including aggravation of preexisting condition) — in an amount in excess of $25,000.00 that is fair and reasonable;

H. On Count VIII (Promissory Estoppel, in the alternative) — in an amount in excess of $25,000.00 that is fair and reasonable;

I. On Count IX (Civil Conspiracy) — in an amount in excess of $25,000.00 that is fair and reasonable, jointly and severally against all conspirators, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

J. On Count X (Intentional Infliction of Emotional Distress) — in an amount in excess of $25,000.00 that is fair and reasonable, including damages for severe emotional distress, aggravation of preexisting psychiatric condition, past and future medical and psychiatric care, and bodily-harm sequelae, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

K. Pre-judgment interest on liquidated and ascertainable damages from the date of demand pursuant to RSMo § 408.040;

L. Post-judgment interest at the statutory rate;

M. Costs of court, including filing and service costs and reasonable costs of investigation and litigation;

N. An order directing Better to correct the Adverse-Action Notice and to retract any tradeline or consumer-reporting entry caused by Better's wrongful conduct;

O. Reasonable attorneys' fees pursuant to RSMo § 407.025 should counsel be retained during the pendency of this action;

P. Trial by jury on all issues so triable; and

Q. Such other and further legal and equitable relief as the Court deems just and proper.

Plaintiffs reserve the right, after appropriate discovery and upon leave of Court pursuant to RSMo § 510.261, to amend this petition to allege a specific punitive damages amount on those Counts for which the factual predicate for punitive damages has been pleaded.

Respectfully submitted,

WILLIAM WILSON, Plaintiff Pro Se
P.O. Box 227
Farmington, Missouri 63640
Telephone: (573) 315-5902
E-mail: Wilwilson1217@outlook.com

SARAH WILSON, Plaintiff Pro Se
P.O. Box 227
Farmington, Missouri 63640
E-mail: Swilson121722@gmail.com

Wilson v. Better Mortgage Corp., Case No. 26SF-CC00101 — Pro Se Filings: First Amended Petition; Motion to Appoint Special Process Server; Proposed OrderWilliam Wilson to SFRCivil.email@courts.mo.gov 05/23/2026 01:18 PM
Cc "rscherer@lippes.com", "hcominsky@lippes.com"

3 Attachments

26-0523 - Wilson-v-Better-First-Amended-Petition FILE READY.pdf

26-0523 Wilson-Motion-for-Special-Process-Server File Reday.pdf

26-0523 Wilson-Proposed-Order-Special-Process-Server File Ready.pdf

FILED
05/26/2026
Kristina Bone
CLERK, CIRCUIT COURT
ST FRANCOIS COUNTY

Dear Clerk of the Circuit Court:

I am the Plaintiff in the above-captioned matter, Wilson v. Better Mortgage Corporation, Case No. 26SF-CC00101, currently pending in the Circuit Court of St. Francois County, Missouri. I respectfully request that the Clerk's office file the following three documents attached to this email:

1. Plaintiffs' First Amended Petition for Damages — filed as of right pursuant to Missouri Supreme Court Rule 55.33(a);
2. Plaintiffs' Motion to Appoint Special Process Server (seeking appointment of Robert Pedroli III as special process server for service of process upon Defendant Better Mortgage Corporation through its registered agent in Missouri); and
3. Proposed Order Appointing Special Process Server (tendered for the Court's consideration in connection with the foregoing Motion).

Please file-stamp the First Amended Petition and the Motion, and please submit the Proposed Order to the assigned Judge for entry at the Court's earliest convenience. Once the Order appointing Robert Pedroli III as special process server has been entered, kindly issue summons directed to Defendant Better Mortgage Corporation, c/o its Missouri registered agent C T Corporation System, 5661 Telegraph Road, Suite 4B, St. Louis, Missouri 63129-4275, so that service may be effected.

If any filing fee or other action is required from me to complete these filings, please advise me at the email address below and I will promptly comply. I would be grateful for a confirmation of receipt and file-stamped copies of the Petition and Motion at your earliest convenience.

Thank you for your assistance.

Respectfully Submitted,

William Wilson

573-315-5902

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

| | | |
|---|---|---|
| WILLIAM WILSON and<br>SARAH WILSON,<br>P.O. Box 227<br>Farmington, Missouri 63640<br><br>Plaintiffs,<br><br>v.<br><br>BETTER MORTGAGE CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 26SF-CC00101<br><br>Division: _______ |

FILED
05/26/2026
Kristina Bone
CLERK, CIRCUIT COURT
ST FRANCOIS COUNTY

**<u>PLAINTIFFS' MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER</u>**

COME NOW Plaintiffs William Wilson and Sarah Wilson, appearing pro se, and pursuant to Missouri Supreme Court Rule 54.13(a) and Section 506.140 of the Revised Statutes of Missouri, respectfully move this Court for an order appointing a special process server to effect personal service of process in this action. In support of this Motion, Plaintiffs state as follows:

1. This is a civil action filed in the Circuit Court of St. Francois County, Missouri, in which Plaintiffs assert claims against Defendant Better Mortgage Corporation arising out of the failed FHA-insured mortgage transaction concerning the real property located at 1239 Stono Mountain Drive, Farmington, Missouri 63640.

2. Plaintiffs intend to serve upon Defendant, contemporaneously with this Motion or promptly upon entry of the proposed Order, the following documents: (a) the Summons issued by the Clerk of this Court; (b) the First Amended Petition for Damages and Jury Demand.

3. Service is to be made by personal delivery to Defendant's Missouri registered agent, C T Corporation System, at the address registered with the Missouri Secretary of State: 5661 Telegraph Road, Suite 4B, St. Louis, Missouri 63129-4275.

4. Defendant's registered agent's office is located in St. Louis County, Missouri, more than seventy (70) miles from the St. Francois County Courthouse. Service by a private special process server based in the St. Louis metropolitan area will be substantially more efficient and economical than service by the St. Francois County Sheriff or a deputy thereof, and will avoid delay in the prosecution of this matter.

5. Pursuant to Missouri Supreme Court Rule 54.13(a), service of process within the State of Missouri may be made by "the sheriff or a person over the age of 18 years who is not a party to the action." Pursuant to Section 506.140.1 of the Revised Statutes of Missouri, "some person, other than a sheriff or coroner, may be specially appointed by the court or the circuit clerk following procedures established by local court rules for service of process in any cause, but such appointment shall be valid for service of the process only for which such person was specially appointed."

6. Plaintiffs request that the Court appoint Robert Pedroli, III, owner and principal of Process Server St. Louis (also known as Eastern Missouri Legal Services), 130 South Bemiston Avenue, Suite 300, Clayton, Missouri 63105, telephone (314) 775-4948, to serve as special process server in this action.

7. Mr. Pedroli is over the age of eighteen (18) years, is not a party to this action, has no interest in the outcome of this action, has been engaged in the business of process service in the St. Louis metropolitan area since 2008, has completed the City of St. Louis Sheriff's training

course for process servers, and maintains errors-and-omissions insurance coverage meeting or exceeding the minimum requirements established by the City of St. Louis Sheriff.

8. In the alternative, and to avoid further delay in the event Mr. Pedroli is unavailable on the date service is attempted, Plaintiffs further request that the Court authorize service by any employee, agent, or independent contractor of Process Server St. Louis (also known as Eastern Missouri Legal Services) who is over the age of eighteen (18) years, is not a party to this action, and is not otherwise disqualified under Missouri law.

9. Plaintiffs will bear the risk and expense of service by the special process server appointed herein, as required by Section 506.140.1 of the Revised Statutes of Missouri.

10. Pursuant to Section 506.140.2 of the Revised Statutes of Missouri, Plaintiffs reserve the right to apply for an award of the reasonable fees paid to the special process server as costs in this action.

11. This appointment, if granted, does not authorize the special process server to carry a concealed weapon in the performance of his or her duties hereunder.

12. No party will be prejudiced by the relief requested. Defendant has not yet entered an appearance in this action, and no attorney has filed an entry of appearance on Defendant's behalf. The relief sought is ministerial in nature and is routinely granted in civil actions in this Circuit and throughout the State of Missouri.

WHEREFORE, Plaintiffs William Wilson and Sarah Wilson respectfully pray that this Court enter an Order: (a) appointing Robert Pedroli, III, of Process Server St. Louis (a/k/a Eastern Missouri Legal Services), 130 South Bemiston Avenue, Suite 300, Clayton, Missouri 63105, as special process server in this action for the purpose of serving the Summons, and First Amended Petition upon Defendant through its registered agent; (b) authorizing, in the

alternative, service by any employee, agent, or independent contractor of Process Server St. Louis who is over the age of eighteen (18) years, is not a party to this action, and is not otherwise disqualified under Missouri law; (c) directing the special process server so appointed to file a verified return of service with the Clerk of this Court upon completion in accordance with Missouri Supreme Court Rule 54.20; and (d) granting such further relief as the Court deems just and proper.

Respectfully submitted,

William D Wilson

William Wilson, Plaintiff pro se
P.O. Box 227
Farmington, Missouri 63640
(573) 315-5902
Wilwilson1217@outlook.com

Sarah Wilson

Sarah Wilson, Plaintiff pro se
P.O. Box 227
Farmington, Missouri 63640
(573) 315-5902
Wilwilson1217@outlook.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, as of the date of filing of this Motion, Defendant Better Mortgage Corporation has not entered an appearance in this action through counsel, and no attorney has filed an entry of appearance on Defendant's behalf. Accordingly, no service of this Motion upon opposing counsel is required at this time. A copy of this Motion, together with the Order entered hereon, will be included in the packet of documents to be served upon Defendant through its registered agent.

______________________________________

William Wilson

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

| | | |
|---|---|---|
| WILLIAM WILSON and<br>SARAH WILSON,<br>P.O. Box 227<br>Farmington, Missouri 63640<br><br>Plaintiffs,<br><br>v.<br><br>BETTER MORTGAGE CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 26SF-CC00101<br><br>Division: _______<br><br>FILED<br>05/26/2026<br>Kristina Bone<br>CLERK, CIRCUIT COURT<br>ST FRANCOIS COUNTY |

## ORDER APPOINTING SPECIAL PROCESS SERVER

This matter having come before the Court on Plaintiffs' Motion for Appointment of Special Process Server, and the Court being fully advised in the premises, finds that good cause exists to grant the relief requested.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. Pursuant to Missouri Supreme Court Rule 54.13(a) and Section 506.140 of the Revised Statutes of Missouri, Robert Pedroli, III, of Process Server St. Louis (also known as Eastern Missouri Legal Services), 130 South Bemiston Avenue, Suite 300, Clayton, Missouri 63105, is appointed as Special Process Server in this action for the limited purpose of serving the Summons, the First Amended Petition for Damages and Jury Demand Directed to Defendant upon Defendant Better Mortgage Corporation through its Missouri registered agent, C T Corporation System, 5661 Telegraph Road, Suite 4B, St. Louis, Missouri 63129-4275.

2. In the alternative, and only in the event that Robert Pedroli, III is unavailable to effect service, service is authorized by any employee, agent, or independent contractor of Process Server St. Louis (also known as Eastern Missouri Legal Services) who is over the age of

eighteen (18) years, is not a party to this action, and is not otherwise disqualified under Missouri law.

3. The appointment of the Special Process Server herein is made at the risk and expense of the requesting parties, Plaintiffs William Wilson and Sarah Wilson, pursuant to Section 506.140.1 of the Revised Statutes of Missouri.

4. This appointment as Special Process Server does not authorize the Special Process Server to carry a concealed weapon in the performance of his or her duties hereunder.

5. Upon completion of service, the Special Process Server shall promptly file a verified return of service with the Clerk of this Court in accordance with Missouri Supreme Court Rule 54.20.

6. This appointment is valid only for service of the process specifically identified in paragraph 1 of this Order, and shall expire upon completion of such service or upon further order of this Court.

SO ORDERED.

DATED: 05/26/2026

/s/ Kristina Bone By: Amber Ashley
~~JUDGE OF THE CIRCUIT COURT~~ Clerk
ST. FRANCOIS COUNTY, MISSOURI
TWENTY-FOURTH JUDICIAL CIRCUIT

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

| | | |
|---|---|---|
| WILLIAM WILSON,<br>SARAH WILSON,<br><br>Plaintiffs<br>v.<br><br>BETTER MORTGAGE CORPORATION<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 26SF-CC00101 |

FILED
06/03/2026
Kristina Bone
CLERK, CIRCUIT COURT
ST. FRANCOIS COUNTY

**NOTICE AND ACKNOWLEDGEMENT**
**OF RECEIPT OF SUMMONS AND AMENDED PETITION NOTICE**

TO: BETTER MORTGAGE CORPORATION

The enclosed summons and amended petition are served pursuant to Missouri Supreme Court Rule 54.16.

You may sign and date the acknowledgment part of this form and return one copy of the completed form to the sender within thirty days of June 2, 2026.

If you are served on behalf of a corporation, unincorporated association, including a partnership, or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within thirty days, you or the party on whose behalf you are being served may be required to pay any expenses incurred in serving a summons and petition in any other manner permitted by law.

If you do complete and return this form, you or the party on whose behalf you are being served must answer the petition within thirty days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.

I declare, under penalty of filing a false affidavit, that this Notice and Acknowledgment of Receipt of Summons and Petition was e-mailed to counsel for Better Mortgage Corporation on June 2, 2026.

William D. Wilson

Signature

**ACKNOWLEDGEMENT OF RECEIPT OF SUMMONS AND PETITION**

Signature

Attorney for Better Mortgage Corporation

Relationship to Entity/Authority to Receive Service of Process

June 2, 2026

Date

Re: Wilson v. Better Mortgage Corp., Case No. 26SF-CC00101 — Pro Se Filings: First Amended Petition; Motion to Appoint Special Process Server; Proposed OrderWilliam Wilson to SFRCivil.eMail@courts.mo.gov 06/02/2026 08:33 PM

1 Attachment

Return of service on amended complaint wilson v better.pdf

Dear Clerk,

Please disregard my prior email on recalling the summons. I have attached the special process servers return on the summons. Both acknowledgement and servers return can be filed in the case.

Thank you.

Respectfully,
William Wilson

---

**From:** William Wilson <wilwilson1217@outlook.com>
**Sent:** Tuesday, June 2, 2026 12:37 PM
**To:** SFRCivil.eMail@courts.mo.gov <SFRCivil.eMail@courts.mo.gov>
**Subject:** Re: Wilson v. Better Mortgage Corp., Case No. 26SF-CC00101 — Pro Se Filings: First Amended Petition; Motion to Appoint Special Process Server; Proposed Order

Dear Clerk:

Plaintiffs William and Sarah Wilson, appearing pro se in *Wilson v. Better Mortgage Corporation*, Case No. 26SF-CC00101, respectfully submit the attached Notice and Acknowledgement of Receipt of Summons and Amended Petition, executed today, June 2, 2026, by counsel for Better Mortgage Corporation pursuant to Missouri Supreme Court Rule 54.16.

Because service has now been completed and acknowledged under Rule 54.16, Plaintiffs respectfully request that the Court recall the summons previously issued to Better Mortgage Corporation. No further service by special process server or sheriff is needed, and recalling the outstanding summons will keep the docket clean and avoid duplicate service.

Please file the attached Acknowledgement on the case docket and confirm receipt at your convenience. If anything further is needed from me to effect the recall — a separate motion, proposed order, or short form request — please let me know and I will provide it the same day.

Thank you for your help.

Respectfully,

William D. Wilson

Dear Clerk

---

**From:** Amber.Ashley@courts.mo.gov <Amber.Ashley@courts.mo.gov> on behalf of SFRCivil.eMail@courts.mo.gov <SFRCivil.eMail@courts.mo.gov>
**Sent:** Tuesday, May 26, 2026 6:30 AM
**To:** William Wilson <wilwilson1217@outlook.com>
**Subject:** Re: Wilson v. Better Mortgage Corp., Case No. 26SF-CC00101 — Pro Se Filings: First Amended Petition; Motion to Appoint Special Process Server; Proposed Order

(See attached file: Order for Special Process Server.pdf)(See attached file: Summons issued to Better Mortgage Corporation.pdf)

From: "William Wilson" <wilwilson1217@outlook.com>
To: "SFRCivil.email@courts.mo.gov" <SFRCivil.email@courts.mo.gov>
Cc: "rscherer@lippes.com" <rscherer@lippes.com>, "hcominsky@lippes.com" <hcominsky@lippes.com>
Date: 05/23/2026 01:18 PM
Subject: Wilson v. Better Mortgage Corp., Case No. 26SF-CC00101 — Pro Se Filings: First Amended Petition; Motion to Appoint Special Process Server; Proposed Order

Dear Clerk of the Circuit Court:
I am the Plaintiff in the above-captioned matter, Wilson v. Better Mortgage Corporation, Case No. 26SF-CC00101, currently pending in the Circuit Court of St. Francois County, Missouri. I respectfully request that the Clerk's office file the following three documents attached to this email:
Plaintiffs' First Amended Petition for Damages — filed as of right pursuant to Missouri Supreme Court Rule 55.33(a);
Plaintiffs' Motion to Appoint Special Process Server (seeking appointment of Robert Pedroli III as special process server for service of process upon Defendant Better Mortgage Corporation through its registered agent in Missouri); and
Proposed Order Appointing Special Process Server (tendered for the Court's consideration in connection with the foregoing Motion).
Please file-stamp the First Amended Petition and the Motion, and please submit the Proposed Order to the assigned Judge for entry at the Court's earliest convenience. Once the Order appointing Robert Pedroli III as special process server has been entered, kindly issue summons directed to Defendant Better Mortgage Corporation, c/o its Missouri registered agent C T Corporation System, 5661 Telegraph Road, Suite 4B, St. Louis, Missouri 63129-4275, so that service may be effected.
If any filing fee or other action is required from me to complete these filings, please advise me at the email address below and I will promptly comply. I would be grateful for a confirmation of receipt and file-stamped copies of the Petition and Motion at your earliest convenience.
Thank you for your assistance.
Respectfully Submitted,
William Wilson
573-315-5902
[attachment "26-0523 - Wilson-v-Better-First-Amended-Petition FILE

READY.pdf" deleted by Amber Ashley/24/Courts/Judicial] [attachment "26-0523 Wilson-Motion-for-Special-Process-Server File Reday.pdf" deleted by Amber Ashley/24/Courts/Judicial] [attachment "26-0523 Wilson-Proposed-Order-Special-Process-Server File Ready.pdf" deleted by Amber Ashley/24/Courts/Judicial]

# Summons in Civil Case

IN THE 24TH JUDICIAL CIRCUIT, ST. FRANCOIS COUNTY, MISSOURI

1154

| | | |
|---|---|---|
| Judge or Division:<br>BRICE R SECHREST | Case Number: **26SF-CC00101** | |
| Plaintiff/Petitioner:<br>WILLIAM WILSON<br>vs. | Plaintiff's/Petitioner's Attorney/Address | FILED<br>06/03/2026<br>Kristina Bone<br>CLERK, CIRCUIT COURT<br>ST. FRANCOIS COUNTY |
| Defendant/Respondent:<br>BETTER MORTGAGE CORPORATION | Court Address:<br>1 NORTH WASHINGTON ST<br>FARMINGTON, MO 63640 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Other Tort | | |

**The State of Missouri to:** **BETTER MORTGAGE CORPORATION**
**Alias:**
**R/A: CT CORPORATION SYSTEM**
**5661 TELEGRAPH RD STE 4B**
**ST. LOUIS, MO 63129**
**Other Addresses:**

**1 WORLD TRADE CENTER 80TH FLOOR**
**NEW YORK, NEW YORK 10007**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. FRANCOIS COUNTY***

26-MAY-2026
Date

/s/ Kristina Bone By: Amber Ashley
Clerk

**Further Information:**

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-483**
1 of 2 (26SF-CC00101)

Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**Case Number: 26SF-CC00101**

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________, a person at least 18 years of age residing therein.

☒ (for service on a corporation) delivering a copy of the summons and petition to:
Traci McMahan (name) Intake Specialist (title).

☐ other: ______________________.

Served at CT Corp 7661 Telegraph (address)
in St Louis County (County/City of St. Louis), MO, on 6-2-26 (date)
at 11:54 am (time).

Robert Pedroli
Printed Name of Officer or Server

[signature]
Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on 6-2-26 (date).

*(Seal)*

My commission expires: ______________ Date

[signature] Notary Public

CAROLYN R GROSSE
Notary Public, Notary Seal
State of Missouri
St. Louis City
Commission # 23418884
My Commission Expires 05-17-2027

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - ST. FRANCOIS - June 08, 2026 - 02:22 PM

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

WILLIAM WILSON,
SARAH WILSON,

Plaintiffs

v.

BETTER MORTGAGE CORPORATION

Defendant.

Case No.: 26SF-CC00101

**ENTRY OF APPEARANCE**

COMES NOW the undersigned and hereby enters his appearance on behalf of the Defendant.

Dated: June 8, 2026

Respectfully Submitted,

**MARTIN GOLDEN LYONS WATTS MORGAN PLLC**

*Attorneys for Defendant*

By: /s/ MATTHEW J. BELL
Matthew J. Bell, Mo. Bar No. 67241
1200 S. Big Bend Blvd.
St. Louis, Missouri 63117
mbell@mgl.law
P: (314) 669-5490
F: (888) 632-6937

**]CERTIFICATE OF SERVICE**

I do certify that a true and accurate copy of Defendant's Notice of Filing a Notice of Removal was served on June 8, 2026 to the following via electronic mail:

William Wilson
Sarah Wilson
wilwilson1217@outlook.com
swilson121722@gmail.com

By: /s/ MATTHEW J. BELL
Matthew J. Bell, Mo. Bar No. 67241

Electronically Filed - ST. FRANCOIS - June 08, 2026 - 02:22 PM

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

WILLIAM WILSON,
SARAH WILSON,

Plaintiffs

v.

BETTER MORTGAGE CORPORATION

Defendant.

Case No.: 26SF-CC00101

**DEFENDANT BETTER MORTGAGE CORPORATION'S**
**NOTICE OF FILING OF NOTICE OF REMOVAL**

Please take notice that on June 4, 2026, Defendant Better Mortgage Corporation removed this action to the United States District Court for the Eastern District of Missouri by filing a Notice of Removal in that Court. A copy of the Notice of Removal is attached hereto as **Exhibit A**. Accordingly, pursuant to 28 U.S.C. § 1446(d), this Court may proceed no further unless and until the case is remanded.

Dated: June 8, 2026

Respectfully Submitted,

**MARTIN GOLDEN LYONS WATTS MORGAN PLLC**

*Attorneys for Defendant*

By: /s/ MATTHEW J. BELL
Matthew J. Bell, Mo. Bar No. 67241
1200 S. Big Bend Blvd.
St. Louis, Missouri 63117
mbell@mgl.law
P: (314) 669-5490
F: (888) 632-6937

**[Certificate of Service on Following Page]**



Not an Official Court Document

Electronically Filed - ST. FRANCOIS - June 08, 2026 - 02:22 PM

**CERTIFICATE OF SERVICE**

I do certify that a true and accurate copy of Defendant's Notice of Filing a Notice of Removal was served on June 8, 2026 to the following via electronic mail:

William Wilson
Sarah Wilson
P.O. Box 227
Farmington, MO 63640
wilwilson1217@outlook.com
swilson121722@gmail.com

By: /s/ MATTHEW J. BELL
Matthew J. Bell, Mo. Bar No. 67241





Not an Official Court Document

Electronically Filed - ST. FRANCOIS - November 16, 2026 - 11:52 AM

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY**
**STATE OF MISSOURI**

WILLIAM WILSON,
SARAH WILSON

Plaintiffs

v.

BETTER MORTGAGE CORPORATION,
HONEY BEE HOLDINGS LLC

Defendants.

CASE NO.: 26SF-CC00101

**DEFENDANT BETTER MORTGAGE CORPORATION'S CONSENT MOTION TO EXTEND DEADLINE TO ANSWER THE SECOND AMENDED PETITION**

COMES NOW Defendant Better Mortgage Corporation ("Defendant") and pursuant to Sup. Ct. R. 44.01, acts as follows:

1. On November 6, 2026, the United States District Court for the Eastern District of Missouri entered an Order remanding this action to this Court, granting Plaintiffs William Wilson and Sarah Wilson's (collectively "Plaintiffs") motion for leave to amend the First Amended Petition and add Defendant Honey Bee Holdings LLC.[1] In doing so, the federal court entered the Second Amended Petition as filed.

2. Defendant's deadline to respond to the Second Amended Petition is currently November 16, 2026.

3. Given the length of and the amount of novel allegations within the Second Amended Complaint, Defendant needs additional time to draft an appropriate and thorough response.

[1] To date, Defendant Honey Bee Holdings LLC has not appeared in this action.



Not an Official Court Document

Electronically Filed - ST. FRANCOIS - November 16, 2026 - 11:52 AM

4. Accordingly, Defendant respectfully requests a 21-day extension of time through December 7th to submit a response to the Second Amended Petition.

5. On November 13, 2026, Plaintiffs confirmed that they do not oppose this request.

WHEREFORE, Defendant Better Mortgage Corporation respectfully requests that the time to answer the Second Amended Petition be extended 21 days through December 7, 2026 together with such other relief as this Court deems just and proper.

Dated: November 16, 2026

Respectfully Submitted,

**MARTIN GOLDEN LYONS WATTS MORGAN PLLC**

*Attorneys for Defendant*

By: /s/ MATTHEW J. BELL
Matthew J. Bell, Mo. Bar No. 67241
1200 S. Big Bend Blvd.
St. Louis, Missouri 63117
mbell@mgl.law
P: (314) 669-5490
F: (888) 632-6937

Not an Official Court Document

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's e-filing system on November 16, 2026, to all parties of record.

By: /s/ MATTHEW J. BELL

Case: 4:26-cv-02611 Doc. #: 1-1 Filed: 11/23/26 Page: 100 of 167 PageID #: 106

26SF-CC00101

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM WILSON and SARAH WILSON,<br><br>*Plaintiffs,*<br><br>v.<br><br>BETTER MORTGAGE CORPORATION.<br><br>*Defendant.* | No. 4:26-cv-885-MAL |

FILED
NOV 16 2026
KRISTINA BONE, CIRCUIT CLERK
ST. FRANCOIS COUNTY, MO

Not an Official Court Document

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion for Leave to File a Second Amended Petition Joining Honey Bee Holdings LLC ("Honey Bee") as a Defendant, Doc. 23. Defendant Better Mortgage Corporation ("Better Mortgage") opposes the Motion, Doc. 34. For the reasons set forth below, the Motion is **GRANTED**.

### Background

Plaintiffs originally brought this action in state court against Better Mortgage in May of 2026. Doc. 1 at 1. Plaintiffs, who are Missouri citizens, had planned to buy a house and use Better Mortgage as their lender. Doc. 1 at 3; Doc. 4 at 2. This dispute arose when Plaintiffs' mortgage funding—which Better Mortgage was set to provide—fell through. Doc. 4 at 2. The specifics of why the funding fell through or who was at fault are not relevant to this current order. Suffice it to say that Plaintiffs brought this action against Better Mortgage because the lending fell through, and therefore Plaintiffs were unable to purchase the home. *Id.* at 3.

Better Mortgage is a California-based corporation with its principal place of business in New York. Doc. 1 at 3. Because of the diverse citizenship between the parties, Better Mortgage removed this action to this Court in June 2026. *See*

*generally* Doc. 1. Plaintiffs now seek to amend their Complaint to join the home's seller, Honey Bee, as a defendant. Doc. 23 at 1. Honey Bee is a Missouri LLC whose identified member, David Schamer, is a Missouri citizen. *Id.* Plaintiffs look to assert claims of tortious interference, breach of contract, and declaratory judgement against Honey Bee, directing the return of $10,000 in earnest money they put toward the purchase of the home. *See generally* Doc. 23-1. Plaintiffs claim they were unable to purchase the home from Honey Bee and are entitled to the return of their earnest money because Better Mortgage breached its lending agreement with Plaintiffs. Doc. 23 at 2–3. Better Mortgage opposes joinder because it would destroy this Court's subject-matter jurisdiction and require remand to state court. Doc. 34 at 2. For the reasons that follow, this Court finds joinder of Honey Bee appropriate and therefore grants Plaintiffs' Motion for Leave to File a Second Amended Petition Joining Honey Bee Holdings LLC as a Defendant, Doc. 23.

## Legal Standard

When a Plaintiff seeks to join a nondiverse defendant after removal, this Court is guided by 28 U.S.C. § 1447(e). When an action is "removed from state to federal court, and 'after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject-matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.'" *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 307–08 (8th Cir. 2009) (quoting 28 U.S.C. § 1447(e)). Other courts have observed that the purpose of § 1447(e) is to "avoid a plaintiff's gamesmanship of divesting the court of subject-matter jurisdiction by giving the Court discretion to deny joinder if the added defendant would destroy diversity." *Andreasen v. Progressive Express Ins. Co.*, 276 F.Supp. 3d 1317, 1328 (S.D. Fla. 2017).

## Analysis

### I. Joinder of Honey Bee

Plaintiffs move to amend their Complaint under Federal Rule of Civil Procedure 15(a)(2) to join Honey Bee as a defendant. Doc. 23 at 1.

Not an Official Court Document

**A. Mandatory Joinder Under Rule 19 is Inappropriate**

Rule 19 requires the joinder of indispensable parties unless that joinder would "deprive the court of subject-matter jurisdiction[.]" Fed. R. Civ. P. 19(a)(1). Here, this Court has diversity of citizenship subject-matter jurisdiction under 28 U.S.C. § 1332. Doc. 1 at 2. Plaintiffs are residents of Missouri and domiciled in Missouri. *Id.* at 3. Defendant Better Mortgage is a California corporation with its principal place of business in New York. *Id.* Plaintiffs seek to join Honey Bee—a Missouri LLC whose identified member, David Schamer, is a Missouri citizen. Doc. 23 at 1. Because "an LLC's citizenship is that of its members," Honey Bee is a citizen of Missouri. *See Great River Ent., LLC v. Zurich Am. Ins. Co.*, 81 F.4th 1261, 1263 (8th Cir. 2023). Because Honey Bee is a Missouri citizen, its joinder as a defendant in this case would deprive the court of subject-matter jurisdiction. *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Under Federal Rule of Civil Procedure 19(a)(1), joinder is required only when it "will not deprive the court of subject-matter jurisdiction." Honey Bee's joinder under Rule 19 is therefore improper.

**B. Permissive Joinder Under Rule 20 is Appropriate**

When—as here—courts consider whether to allow joinder of a non-diverse party on a Rule 15(a) motion, they must consider three factors. *See Bailey*, 563 F.3d at 309. These factors are: "(1) the extent to which the joinder of the nondiverse party is sought to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for amendment, and (3) whether the plaintiff will be significantly injured if amendment is not allowed." *Id.* Rule 20, for permissive joinder, also provides in relevant part:

> (2) *Defendants.* Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or

> arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. Pro. 20(a)(2)(A)–(B). Joinder of claims, parties, and remedies is "strongly encouraged," and Rule 20 permits "all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Fulghum v. Allen*, 626 Fed. App'x 653, 654 (8th Cir. 2015) (citing *Mosely v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)).

But permissive joinder is not applicable in all cases. *Mosely*, 497 F.2d at 1333. Instead, Rule 20 imposes two requirements: (1) a right to relief must be asserted that arises out of the same transaction or occurrence, or series of transactions or occurrences; and (2) some question of law or fact must be common to all defendants. *Id.* A case-by-case approach is used to ascertain "whether a particular factual situation constitutes a single transaction or occurrence" for the purposes of Rule 20. *Id.* Accordingly, "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence."

Here, the *Bailey* factors weigh in favor of allowing joinder. First, though joinder of Honey Bee will defeat subject-matter jurisdiction, that does not appear to be the sole or primary purpose for their joinder by Plaintiffs. Plaintiffs seek return of $10,000 in earnest money paid to Honey Bee as damages for the allegedly breached funding contract between Plaintiffs and Better Mortgage. Doc. 23-1 at ¶ 4. A jury could find that Plaintiffs are entitled to that $10,000 from Honey Bee because of Better Mortgage's breach, or that they are entitled to nothing at all. Either way, Honey Bee is a proper defendant in this case. Second, Plaintiffs have not been dilatory in asking for amendment. To the contrary, Plaintiffs filed this case in state court in May 2026, Better Mortgage removed it in June 2026, and Plaintiffs filed their Motion to Amend less than a month later. *See generally* Docs. 1 & 23. Finally, if Honey Bee were not joined and this case were not remanded, Plaintiffs would be

Not an Official Court Document

forced to litigate two separate suits with common questions of law and fact at the same time in two different courts.[1] There are several questions of law and fact common to all defendants. For example, questions about Plaintiffs' contractual obligations regarding their purchase agreement with Honey Bee, and funding agreement with Better Mortgage, are intertwined and likely depend on the specific language in each agreement. Doc. 24 at 4. Therefore, joinder under Rule 20 is appropriate.

## II. Leave to Amend Under Rule 15

When a plaintiff "requests leave to amend his complaint before trial, 'the court should freely give leave when justice so requires.'" *Bailey*, 563 F.3d at 307 (quoting Fed. R. Civ. P. 15(a)(2)) (cleaned up). But leave to amend "may be withheld if the plaintiff is guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party." *Id.* (cleaned up).

Here, none of the reasons to withhold leave to amend are present and justice will be best served by the orderly administration of all claims between all parties in a single suit. Further, the factors discussed in Part I.B, *supra*, counsel in favor of granting leave to amend. Accordingly, Plaintiffs' Motion for Leave to File a Second Amended Petition, Doc. 23, is **GRANTED**.

## Conclusion

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File Second Amended Petition, Doc. 23, is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to state court in accordance with 28 U.S.C. § 1447(e).

**SO ORDERED,**

This 6th day of November, 2026.

NATHAN M. GRAVES, CLERK
A TRUE COPY OF THE ORIGINAL
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
BY

Maria A. Lanahan

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

[1] Plaintiffs have informed this Court that Honey Bee recently filed suit against Plaintiffs in state court asserting claims arising from the same home sale and earnest money deposit. Doc. 42.

26SF-CC00101

FILED

NOV 16 2026

KRISTINA BONE, CIRCUIT CLERK
ST. FRANCOIS COUNTY, MO

SR,CLOSED,REMAND

# U.S. District Court
## Eastern District of Missouri (St. Louis)
## CIVIL DOCKET FOR CASE #: 4:26-cv-00885-MAL

Wilson et al v. Better Mortgage Corporation
Assigned to: District Judge Maria A. Lanahan
Demand: $150,000
Cause: 28:1332 Diversity-Contract Dispute

Date Filed: 06/08/2026
Date Terminated: 11/06/2026
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**William Wilson** represented by **William Wilson**
P.O. Box 227
Farmington, MO 63640
573-315-5902
Email:
PRO SE

**Plaintiff**

**Sarah Wilson** represented by **Sarah Wilson**
P.O. Box 227
Farmington, MO 63640
573-315-5902
Email:
PRO SE

V.

**Defendant**

**Better Mortgage Corporation** represented by **Brendan H. Little**
LIPPES MATHIAS LLP
50 Fountain Plaza
Suite 1700
Buffalo, NY 14202
716-853-5100
Email: blittle@lippes.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*
*Bar Status: Active*

**Richard M. Scherer , Jr.**
LIPPES MATHIAS LLP
50 Fountain Plaza

NATHAN M. GRAVES, CLERK
A TRUE COPY OF THE ORIGINAL
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
BY: ______________________
DEPUTY CLERK

Not an Official Court Document

Suite 1700
Buffalo, NY 14202
716-853-5100
Fax: 716-853-5199
Email: rscherer@lippes.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*
*Bar Status: Phv*

**Defendant**

**Honey Bee Holding LLC**

Email All Attorneys
(will not send to terminated parties)

Email All Attorneys and Additional Recipients
(will not send to terminated parties)

| Date Filed | # | Docket Text |
|---|---|---|
| 06/08/2026 | 1 | NOTICE OF REMOVAL with receipt number AMOEDC-11912973, in the amount of $405 Jury Demand,, filed by Better Mortgage Corporation. (Attachments: # 1 Exhibit A - Complaint, # 2 Civil Cover Sheet)(Little, Brendan) (Entered: 06/08/2026) |
| 06/08/2026 | 2 | NOTICE by Defendant Better Mortgage Corporation - *Certificate of Service* (Little, Brendan) (Entered: 06/08/2026) |
| 06/08/2026 | 3 | Petition (Removal/Transfer) Received From: Circuit Court of St. Francois County, filed by William Wilson, Sarah Wilson.(JKL) (Entered: 06/09/2026) |
| 06/08/2026 | 4 | First Amended Petition (Removal/Transfer) Received From: Circuit Court of St. Francois County, filed by William Wilson, Sarah Wilson.(JKL) (Entered: 06/09/2026) |
| 06/08/2026 | 8 | PLAINTIFFS' MOTION TO REMAND AND FOR COSTS, EXPENSES AND COMPENSATION FOR TIME by Plaintiffs Sarah Wilson, William Wilson. (JKL) (Entered: 06/09/2026) |
| 06/08/2026 | 9 | MEMORANDUM in Support of Motion re 8 PLAINTIFFS' MOTION TO REMAND AND FOR COSTS, EXPENSES AND COMPENSATION FOR TIME filed by Plaintiffs Sarah Wilson, William Wilson. (JKL) (Entered: 06/09/2026) |
| 06/09/2026 | 5 | DISCLOSURE STATEMENT by Better Mortgage Corporation, Better Financial Group, Inc., Better Home and Finance Holding Company.. (Little, Brendan) (Entered: 06/09/2026) |
| 06/09/2026 | 6 | SUPPLEMENTAL Original Filing Form re 1 Notice of Removal Petition by Defendant Better Mortgage Corporation. (Little, Brendan) Modified on 6/9/2026 to correct docket text (JKL). (Entered: 06/09/2026) |
| 06/09/2026 | 7 | NOTICE Notice of Removal: by Defendant Better Mortgage Corporation (Little, Brendan) (Entered: 06/09/2026) |

| | | |
|---|---|---|
| 06/09/2026 | 10 | NOTICE OF FILING NOTICE OF REMOVAL filed by Defendant Better Mortgage Corporation Sent To: Plaintiff (Attachments: # 1 Exhibit A)(Little, Brendan) (Entered: 06/09/2026) |
| 06/09/2026 | | Case Opening Notification. Judge Assigned: Honorable Shirley P. Mensah. All parties must file the Notice Regarding Magistrate Judge Jurisdiction Form consenting to or opting out of the Magistrate Judge jurisdiction. Click here for the instructions. Pursuant to Local Rule 2.09, every nongovernmental corporate party or nongovernmental corporation that seeks to intervene in any case, and every party or intervenor in an action in which jurisdiction is based upon diversity, must file a Disclosure Statement immediately upon entering its appearance in the case. Please complete and file the certificate as soon as possible. (moed-0001.pdf). (JKL) (Entered: 06/09/2026) |
| 06/09/2026 | | ***Complaint Letter Created. This is to advise you that this office has received and filed your complaint and has assigned it the above-referenced case number. (JKL) (Entered: 06/09/2026) |
| 06/09/2026 | | ***Complaint Letter Processed (see notice of electronic filing for distribution list) Tue Jun 9 14:02:39 CDT 2026 (Entered: 06/09/2026) |
| 06/09/2026 | 11 | NOTICE of Filing Deficiency to Defendant Better Mortgage Corporation re 5 Disclosure Statement. In accordance with Eastern District of Missouri Local Rules and the CM/ECF Procedures Manual, a filing deficiency has been identified as follows: Party did not file the Court-adopted Disclosure Statement. Please complete all sections of the Disclosure Statement, using the Court-adopted form, including Section 2. An Amended Disclosure Statement must be filed immediately. (Disclosure Statement form can be downloaded here) (ANR) (Entered: 06/09/2026) |
| 06/09/2026 | 12 | CJRA ORDER (NMG). Magistrate Judge Shirley Padmore Mensah termed. Case reassigned to District Judge Maria A. Lanahan for all further proceeding. (HMA) (Entered: 06/10/2026) |
| 06/10/2026 | 13 | DISCLOSURE STATEMENT by Better Mortgage Corporation, Better Financial Group, Inc., Better Home and Finance Holding Company.. (Little, Brendan) (Entered: 06/10/2026) |
| 06/10/2026 | 14 | MOTION for Extension of: time to respond to Amended Complaint by Defendant Better Mortgage Corporation. (Little, Brendan) (Entered: 06/10/2026) |
| 06/10/2026 | 15 | RESPONSE in Opposition re 14 MOTION for Extension of: time to respond to Amended Complaint filed by Plaintiffs Sarah Wilson, William Wilson. (BRP) (Entered: 06/10/2026) |
| 06/11/2026 | 16 | Electronic Notice re: Disclosure Statement to Plaintiffs Sarah Wilson, William Wilson. Pursuant to Local Rule 2.09, every non-governmental party, including individuals, must file a Disclosure Statement in any case based on Diversity Jurisdiction immediately upon entering its appearance in the case, completing Section 2 of the form. Individual parties must list their name and **state of citizenship** - not residence or domicile. *See FRCP 7.1*. (ANR) (Entered: 06/11/2026) |
| 06/11/2026 | | ORDER RECEIPT: (see receipt) Docket No: 16. Thu Jun 11 08:50:37 CDT 2026 (ANR) (Entered: 06/11/2026) |

| | | |
|---|---|---|
| 06/11/2026 | 17 | DISCLOSURE STATEMENT by William Wilson. No corporate parents or affiliates identified. (BRP) Modified on 6/12/2026 (TMT). (Entered: 06/11/2026) |
| 06/11/2026 | 18 | DISCLOSURE STATEMENT by Sarah Wilson. No corporate parents or affiliates identified. (TMT) (Entered: 06/12/2026) |
| 06/15/2026 | 19 | Docket Text ORDER: IT IS HEREBY ORDERED that Defendant's Motion for an Extension of Time to Respond to Plaintiff's Amended Complaint, (Doc. 14), is GRANTED. Defendant must respond to Plaintiff's Amended Complaint no later than Wednesday, July 15, 2026. Signed by District Judge Maria A. Lanahan on June 15, 2026. (JMT) (Entered: 06/15/2026) |
| 06/15/2026 | 20 | PRO SE MOTION: PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 15, 2026 TEXT ORDER GRANTING DEFENDANT'S MOTION FOR EXTENSION OF TIME (Doc. 19 ) (JMT) (Entered: 06/15/2026) |
| 06/15/2026 | 21 | PRO SE MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 15, 2026 TEXT ORDER GRANTING DEFENDANT'S MOTION FOR EXTENSION OF TIME. (JMT) (Entered: 06/15/2026) |
| 06/15/2026 | | ORDER RECEIPT: (see receipt) Docket No: 20, 21. Mon Jun 15 16:30:45 CDT 2026 (JMT) (Entered: 06/15/2026) |
| 06/16/2026 | 22 | MOTION for Leave to Appear Pro Hac Vice Richard M. Scherer, Jr.. The Certificate of Good Standing was attached.(Filing fee $150 receipt number AMOEDC-11927835) by Defendant Better Mortgage Corporation. (Attachments: # 1 Exhibit A - Admissions, # 2 Exhibit B - Certificate of Good Standing)(Scherer, Richard) (Entered: 06/16/2026) |
| 06/21/2026 | 23 | PLAINTIFFS' SUPPLEMENTAL MOTION TO REMAND AND MOTION FOR LEAVE TO FILE A SECOND AMENDED PETITION JOINING HONEY BEE HOLDINGS LLC AS A DEFENDANT UNDER 28 U.S.C. § 1447(e) by Plaintiffs Sarah Wilson, William Wilson. (Attachments: # 1 Exhibit, # 2 Exhibit) (JMT) Modified on 6/22/2026 (JMT). (Entered: 06/22/2026) |
| 06/21/2026 | 24 | SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND AND IN SUPPORT OF LEAVE TO JOIN HONEY BEE HOLDINGS LLC UNDER 28 U.S.C. § 1447(e) (Doc. 23 ) filed by Plaintiffs Sarah Wilson, William Wilson. (JMT) Modified on 6/22/2026 (JMT). (Entered: 06/22/2026) |
| 06/22/2026 | | ORDER RECEIPT: (see receipt) Docket No: 23, 24. Mon Jun 22 14:23:36 CDT 2026 (JMT) (Entered: 06/22/2026) |
| 06/23/2026 | 25 | MEMORANDUM in Opposition re 8 MOTION to Remand Case to State Court filed by Defendant Better Mortgage Corporation. (Attachments: # 1 Affidavit of Richard M. Scherer, Jr., # 2 Exhibit A, # 3 Exhibit B)(Scherer, Richard) (Entered: 06/23/2026) |
| 06/23/2026 | 26 | MOTION to Strike 24 Memorandum in Support of Motion, *(Supplement to Motion to Remand)* by Defendant Better Mortgage Corporation. (Scherer, Richard) (Entered: 06/23/2026) |

| | | |
|---|---|---|
| 06/23/2026 | 27 | MEMORANDUM in Support of Motion re 26 MOTION to Strike 24 Memorandum in Support of Motion, *(Supplement to Motion to Remand)* filed by Defendant Better Mortgage Corporation. (Scherer, Richard) (Entered: 06/23/2026) |
| 06/24/2026 | 28 | Docket Text ORDER: IT IS HEREBY ordered that Richard M. Sherer, Jr.'s pro hac vice motion (Doc. 22 ) is GRANTED. Signed by District Judge Maria A. Lanahan on June 24, 2026. (JMT) (Entered: 06/24/2026) |
| 06/24/2026 | | ORDER RECEIPT: (see receipt) Docket No: 28. Wed Jun 24 12:16:52 CDT 2026 (JMT) (Entered: 06/24/2026) |
| 06/24/2026 | 29 | MEMORANDUM in Opposition re 26 MOTION to Strike 24 Memorandum in Support of Motion, *(Supplement to Motion to Remand)* or in the Alternative, Motion for Leave Nunc Pro Tunc to File Supplemental Memorandum filed by Plaintiffs Sarah Wilson, William Wilson. (Attachments: # 1 Text of Proposed Order)(ANR) (Entered: 06/24/2026) |
| 06/24/2026 | 30 | Plaintiff's Reply in Further Support of Their Motion to Remand/REPLY to Response to Motion re 8 MOTION to Remand Case to State Court filed by Plaintiffs Sarah Wilson, William Wilson. (ANR) (Entered: 06/24/2026) |
| 06/29/2026 | 31 | MEMORANDUM in Opposition re 20 MOTION for Reconsideration filed by Defendant Better Mortgage Corporation. (Scherer, Richard) (Entered: 06/29/2026) |
| 06/29/2026 | 32 | REPLY to Response to Motion re 20 MOTION for Reconsideration filed by Plaintiffs Sarah Wilson, William Wilson. (TMT) (Entered: 06/30/2026) |
| 07/02/2026 | 33 | REPLY to Response to Motion re 26 MOTION to Strike 24 Memorandum in Support of Motion, *(Supplement to Motion to Remand)* filed by Defendant Better Mortgage Corporation. (Scherer, Richard) (Entered: 07/02/2026) |
| 07/06/2026 | 34 | RESPONSE in Opposition re 23 MOTION for Leave to File a Second Amended Petition filed by Defendant Better Mortgage Corporation. (Scherer, Richard) (Entered: 07/06/2026) |
| 07/07/2026 | 35 | REPLY to Response to Motion re 23 MOTION for Leave to File a Second Amended Petition filed by Plaintiffs Sarah Wilson, William Wilson. (BRP) (Entered: 07/07/2026) |
| 07/15/2026 | 36 | MOTION to Dismiss Case by Defendant Better Mortgage Corporation. (Scherer, Richard) (Entered: 07/15/2026) |
| 07/15/2026 | 37 | MEMORANDUM in Support of Motion re 36 MOTION to Dismiss Case filed by Defendant Better Mortgage Corporation. (Scherer, Richard) (Entered: 07/15/2026) |
| 07/15/2026 | 38 | AFFIDAVIT re 36 MOTION to Dismiss Case by Defendant Better Mortgage Corporation. (Attachments: # 1 Exhibit A - Proposed Amended Complaint, # 2 Exhibit B - Commitment Letter, # 3 Exhibit C - Plaintiffs' Memo)(Scherer, Richard) (Entered: 07/15/2026) |
| 07/17/2026 | 39 | PLAINTIFF'S MEMORANDUM in OPPOSITION TO DEFENDANT BETTER MORTGAGE CORPORATION'S MOTION TO DISMISS THE FIRST AMENDED PETITION 36 filed by Plaintiffs Sarah Wilson, William Wilson. (JMT) (Entered: 07/17/2026) |

| | | |
|---|---|---|
| 07/22/2026 | 40 | MOTION for Leave to File a Surreply in Opposition to Defendant's Motion to Dismiss the First Amended Petition by Plaintiffs Sarah Wilson, William Wilson. (Attachments: # 1 EXHIBIT A - Plaintiffs' Surreply in Opposition to Motion to Dismiss)(KCD) (Entered: 07/22/2026) |
| 07/22/2026 | 41 | MEMORANDUM in Support of Motion re 40 MOTION for Leave to File a Surreply in Opposition to Defendant's Motion to Dismiss the First Amended Petition filed by Plaintiffs Sarah Wilson, William Wilson. (KCD) (Entered: 07/22/2026) |
| 07/23/2026 | 42 | Plaintiffs' Notice of Supplemental Development and Request for Expedited Ruling on Plaintiffs' Motion to Remand and Supplemental Motion to Remand and for Leave to File A Second Amended Petition Joining Honey Bee Holdings LLC by Plaintiffs Sarah Wilson, William Wilson. (Attachments: # 1 A - Honey Bee v Wilson Filed Petition)(KCD) (Entered: 07/23/2026) |
| 07/23/2026 | 43 | MOTION to Strike 39 Memorandum in Opposition to Motion by Defendant Better Mortgage Corporation. (Scherer, Richard) (Entered: 07/23/2026) |
| 07/23/2026 | 44 | MEMORANDUM in Support of Motion re 43 MOTION to Strike 39 Memorandum in Opposition to Motion filed by Defendant Better Mortgage Corporation. (Scherer, Richard) (Entered: 07/23/2026) |
| 07/27/2026 | 45 | REPLY to Response to Motion re 36 MOTION to Dismiss Case filed by Defendant Better Mortgage Corporation. (Little, Brendan) (Entered: 07/27/2026) |
| 07/28/2026 | 46 | MEMORANDUM in Opposition re 43 MOTION to Strike 39 Memorandum in Opposition to Motion filed by Plaintiffs Sarah Wilson, William Wilson. (BRP) (Entered: 07/28/2026) |
| 08/05/2026 | 47 | RESPONSE in Opposition re 40 MOTION for Leave to *file su-reply* filed by Defendant Better Mortgage Corporation. (Scherer, Richard) (Entered: 08/05/2026) |
| 08/13/2026 | 48 | REPLY to Response to Motion re 40 MOTION for Leave to filed by Plaintiffs Sarah Wilson, William Wilson. (BRP) (Entered: 08/13/2026) |
| 08/13/2026 | 49 | Letter to Judge Lanahan from William and Sarah Wilson re:request for ruling. (KCD) (Entered: 08/13/2026) |
| 10/29/2026 | 50 | PLAINTIFFS' NOTICE OF WITHDRAWAL OF SUPPLEMENTAL MOTION TO REMAND AND MOTION FOR LEAVE TO FILE SECOND AMENDED PETITION JOINING HONEY BEE HOLDINGS LLC (DOC. 23) by Plaintiffs Sarah Wilson, William Wilson. (JMT) (Entered: 10/29/2026) |
| 11/06/2026 | 51 | MEMORANDUM AND ORDER: IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File Second Amended Petition, Doc. 23 , is GRANTED. IT IS FURTHER ORDERED that this case is REMANDED to state court in accordance with 28 U.S.C. § 1447(e). SO ORDERED. Signed by District Judge Maria A. Lanahan on 11/06/2026. (KCD) (Entered: 11/06/2026) |
| 11/06/2026 | 52 | SECOND AMENDED COMPLAINT against defendant Better Mortgage Corporation, Honey Bee Holding LLC, filed by William Wilson, Sarah Wilson. (Attachments: # 1 Exhibit)(KCD) (Entered: 11/06/2026) |

Not an Official Court Document

FILED
11/16/2026
Kristina Bone
CLERK, CIRCUIT COURT
ST. FRANCOIS COUNTY

Not an Official Court Document

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| WILLIAM WILSON and<br>SARAH WILSON,<br>P.O. Box 227<br>Farmington, Missouri 63640<br><br>Plaintiffs,<br><br>v.<br><br>BETTER MORTGAGE CORPORATION,<br>1 World Trade Center, 80th Floor<br>New York, New York 10007<br><br>Serve Registered Agent:<br>C T CORPORATION SYSTEM<br>5661 Telegraph Road, Suite 4B<br>Saint Louis, Missouri 63129<br><br>and<br><br>HONEY BEE HOLDINGS LLC,<br>a Missouri limited liability company<br>Serve Registered Agent:<br>DAVID SCHOMER<br>2675 Meyer Road<br>Festus, Missouri 63028<br><br>Defendants. | Case No. 4:26-cv-00885-MAL<br><br>(Removed from the Circuit Court of St. Francois County, Missouri, No. 26SF-CC00101)<br><br>Nature of Cause: Contract / Other Tort — Lender Liability, Fraud, Negligent Misrepresentation, Missouri Merchandising Practices Act, Tortious Interference, Negligent and Intentional Infliction of Emotional Distress, Breach of Implied Covenant of Good Faith, Promissory Estoppel, Civil Conspiracy, and (as to Defendant Honey Bee Holdings LLC) Declaratory Judgment, Breach of Contract, and Determination of Disposition of Earnest Money<br><br>TRIAL BY JURY DEMANDED |

**PLAINTIFFS' SECOND AMENDED PETITION FOR DAMAGES, DECLARATORY JUDGMENT, AND JURY DEMAND**

*(Adding Defendant Honey Bee Holdings LLC, Filed Upon Leave of Court Pursuant to Fed. R. Civ. P. 15(a)(2))*

COME NOW Plaintiffs William Wilson and Sarah Wilson, appearing pro se, and for their Second Amended Petition for Damages, Declaratory Judgment, and Other Relief against Defendants Better Mortgage Corporation and Honey Bee Holdings LLC, state and allege as follows:

## PRELIMINARY STATEMENT

This pleading is filed pursuant to leave of Court granted under Rule 15(a)(2) of the Federal Rules of Civil Procedure. It is denominated a "Second Amended Petition" to maintain continuity with the pleadings filed in the state court before removal and is the operative complaint in this action. By this amendment, Plaintiffs join Honey Bee Holdings LLC, the seller of the Property, because Better's refusal to fund the loan ripened an actual and present controversy concerning the disposition of Plaintiffs' earnest money, the continued operation of the financing contingency, and whether the failure to close was caused by Better rather than by any default of Plaintiffs. The claims against Honey Bee arise out of the same failed purchase transaction already at issue in the claims against Better, depend on overlapping facts, and should be resolved in a single action to avoid duplicative litigation, inconsistent rulings, and unnecessary expense. This amendment is not interposed for the purpose of manufacturing a jurisdictional defect. Rather, it addresses a concrete seller-side dispute that became unavoidable when Better failed to fund and Honey Bee asserted, or threatened to assert, a right to retain the earnest money. Plaintiffs accordingly seek adjudication, in one case, of the intertwined rights and liabilities arising from the same failed closing.

Not an Official Court Document

Not an Official Court Document

## I. INTRODUCTION

1. This action arises from Defendant Better Mortgage Corporation's ("Better" or "Defendant Better") wrongful refusal to fund a written, binding FHA mortgage loan commitment that it had issued to the Plaintiffs on February 17, 2026, in connection with what would have been Plaintiffs' first home purchase. In reliance upon Better's binding written commitment, Plaintiffs vacated their rented residence in Palmdale, California, contracted with an interstate moving carrier to relocate their entire household more than 1,800 miles to St. Francois County, Missouri, wired cash-to-close, and stood ready, willing, and able to close on the purchase of the Property located at 1239 Stono Mountain Drive, Farmington, Missouri 63640 (the "Property").

2. Better, after locking the loan, issuing a written Mortgage Commitment Letter expressly stating that the commitment was "binding upon both parties," collecting fees from Plaintiffs, allowing Plaintiffs to incur tens of thousands of dollars of detrimental-reliance expenses, and repeatedly representing through its licensed loan officer that closing was imminent — and on March 17, 2026 expressly representing through its loan officer that the loan was "clear to close" — simultaneously and contradictorily informed the settlement agent on the very same day that the loan was NOT clear to close. Better thereafter failed and refused to fund the loan, manufactured pretextual underwriting objections (including a fabricated "Klarna" balance), and finally issued a written Adverse-Action Notice whose only stated reason was the single word "UnverifiableInformation" — a reason so devoid of specific information that it independently violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d), and Regulation B, 12 C.F.R. § 1002.9.

3. Better's conduct was not a mere underwriting decision. It was a course of conduct that combined breach of a binding written loan commitment, breach of the implied covenant of good

Not an Official Court Document

faith and fair dealing, intentional and reckless misrepresentations of present fact made to induce Plaintiffs' reliance, negligent misrepresentations by an entity that had assumed a duty of care to provide accurate information, unfair and deceptive practices "in connection with" the sale of a loan within the meaning of the Missouri Merchandising Practices Act, RSMo § 407.020, tortious interference with the Plaintiffs' separate real-estate purchase contract with a third-party seller, and the foreseeable infliction of severe emotional distress upon an eggshell plaintiff with a medically diagnosed and disclosed preexisting bipolar disorder.

4. Better's wrongful refusal to fund did not merely injure Plaintiffs as against Better. It directly precipitated a second, distinct controversy between Plaintiffs and the seller of the Property, Defendant Honey Bee Holdings LLC ("Honey Bee" or "Seller"). Because Better failed to provide loan approval and funding, the purchase could not close on the Seller's timetable. The Seller thereafter refused to extend the closing, issued a written "close-or-release" ultimatum, threatened to re-list the Property, and has asserted a claimed contractual right to retain Plaintiffs' $10,000.00 earnest money now held in escrow with Preferred Land and Title. That asserted right does not exist, because the Sale Contract permits the Seller to retain the earnest money as liquidated damages only "[i]f the default is by Buyer," and Plaintiffs were not in default. The financing contingency in Paragraph 4 of the Sale Contract remained operative; Plaintiffs exercised reasonable diligence and good faith in pursuing financing; the failure to obtain a funded loan was caused by Better, not by any default of the Plaintiffs; and Plaintiffs are accordingly entitled to a return of the earnest money. Plaintiffs therefore seek, as against Honey Bee, a declaratory judgment and supplemental relief determining the disposition of the earnest money, together with damages for breach of contract and contractual attorney's fees and costs of litigation under Paragraph 13 of the Sale Contract.

5. As a direct and proximate result of the foregoing, Plaintiffs and their infant daughter E.G.W. (born April 12, 2025) were thrown into housing crisis; Plaintiffs lost the benefit of their $410,000 purchase contract on a Property independently appraised at $423,000 (representing a minimum of $13,000 in day-one equity); Plaintiffs incurred substantial out-of-pocket expense, lost personal property, and irreplaceable family heirlooms; the Plaintiffs' earnest money has been placed in jeopardy of wrongful forfeiture; and Plaintiff William Wilson, a person with a preexisting bipolar diagnosis well-known and disclosed during the loan process, suffered an aggravation of his condition diagnosable and medically significant within the meaning of Bass v. Nooney Co., 646 S.W.2d 765 (Mo. banc 1983), and a foreseeable aggravation of a preexisting condition compensable under Widener v. St. Louis Public Service Co., 230 S.W.2d 698 (Mo. 1950).

## II. PARTIES, JURISDICTION, AND VENUE

6. Plaintiff William Wilson is an adult resident and citizen of St. Francois County, Missouri, with mailing address Post Office Box 227, Farmington, Missouri 63640. At the time Plaintiffs applied to Better for the FHA purchase-money mortgage loan that is the subject of this action, and at all relevant times through and including February 27, 2026, Plaintiff William Wilson resided at a rented single-family residence located in Palmdale, California. Plaintiff William Wilson physically relocated from Palmdale, California to St. Francois County, Missouri on or about February 27, 2026, in direct reliance upon Better's binding written Mortgage Commitment Letter of February 17, 2026 and Better's repeated subsequent representations that the loan was clear to close.

7. Plaintiff Sarah Wilson is an adult resident and citizen of St. Francois County, Missouri, with the same mailing address. Plaintiffs are husband and wife. At the time Plaintiffs applied to

Better, and at all relevant times through and including February 27, 2026, Plaintiff Sarah Wilson also resided at the same rented single-family residence in Palmdale, California, together with Plaintiff William Wilson and Plaintiffs' infant daughter, E.G.W., born April 12, 2025. Plaintiff Sarah Wilson physically relocated from Palmdale, California to St. Francois County, Missouri on or about February 27, 2026, in direct reliance upon Better's binding written Mortgage Commitment Letter of February 17, 2026 and Better's repeated subsequent representations that the loan was clear to close. At all relevant times, Plaintiffs intended to acquire and to occupy the Property as their personal, family, and household residence within the meaning of RSMo § 407.025.1, and both Better and the Seller were so informed.

8. Defendant Better Mortgage Corporation is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 1 World Trade Center, 80th Floor, New York, New York 10007. For purposes of diversity of citizenship under 28 U.S.C. § 1332(c)(1), Better is a citizen of both the State of California (its State of incorporation) and the State of New York (its principal place of business). Better is licensed under the laws of the State of Missouri as a mortgage broker / mortgage lender under Missouri Mortgage Broker License No. 330511 and NMLS Identifier No. 330511.

9. Defendant Honey Bee Holdings LLC is a Missouri limited liability company organized and existing under the laws of the State of Missouri, with its registered office and registered agent in the State of Missouri. Honey Bee Holdings LLC was the Seller of the Property under the written Sale Contract described below, which it executed by and through David Schomer on or about December 27, 2025. For purposes of diversity of citizenship, a limited liability company is a citizen of every state of which any of its members is a citizen. On information and belief, each member of Honey Bee Holdings LLC is a citizen of the State of Missouri, including its organizer

and member of record, David Schomer, whose address of record with the Missouri Secretary of State is 2675 Meyer Road, Festus, Missouri 63028. Honey Bee Holdings LLC may be served through its registered agent, David Schomer, at 2675 Meyer Road, Festus, Missouri 63028.

10. This action was originally commenced in the Circuit Court of St. Francois County, Missouri, Twenty-Fourth Judicial Circuit, as Case No. 26SF-CC00101, and was thereafter removed by Defendant Better to this Court. All causes of action against both Defendants arise under Missouri statutory and common law. The seller-side claims are brought because Better's non-funding created a present controversy over the earnest money and the continued force of the financing contingency, and those issues overlap factually and legally with Plaintiffs' claims against Better.

11. This Court has personal jurisdiction over Better because Better purposefully directed its mortgage-lending activities into Missouri. Specifically, Better: (a) solicited and accepted a loan application from Plaintiffs for the purpose of financing the purchase of Missouri real property; (b) issued a binding written Mortgage Commitment Letter on February 17, 2026 obligating itself to fund a loan secured by Missouri real property; (c) ordered and obtained an appraisal of Missouri real property; (d) was to disburse loan proceeds in Missouri and to record a deed of trust in the real-property records of St. Francois County, Missouri; (e) directed numerous communications by telephone, email, and text to and through a Missouri-based settlement agent and a Missouri-based closing transaction; (f) communicated directly with Plaintiffs in Missouri following Plaintiffs' physical relocation on or about February 27, 2026 and continuing through and after the collapse of the closing; and (g) is licensed under the laws of the State of Missouri and transacts a regular and continuous mortgage-lending business in Missouri. RSMo § 506.500.

Not an Official Court Document

12. This Court has personal jurisdiction over Honey Bee Holdings LLC because it is a Missouri limited liability company that owned Missouri real property, entered into the Sale Contract for the sale of Missouri real property, transacted business in Missouri, and committed acts and omissions in Missouri giving rise to the claims asserted herein. RSMo § 506.500.

13. A substantial part of the events and omissions giving rise to the claims occurred in St. Francois County, Missouri: the real property that is the subject of the loan commitment and the Sale Contract lies in St. Francois County, the closing was to occur in St. Francois County, the earnest money is held in escrow in St. Francois County, and Plaintiffs were first injured in St. Francois County.

14. Plaintiffs' claims against Better and against Honey Bee Holdings LLC arise out of the same series of transactions and occurrences—the financing, attempted closing, collapse of closing, and resulting dispute over the earnest money—and present overlapping questions of law and fact, including whether Plaintiffs exercised diligence and good faith in seeking financing, whether the financing contingency remained operative, whether Plaintiffs were in default under the Sale Contract, whether Better's conduct caused the failure of the closing, and whether Honey Bee may retain the earnest money.

14A. Plaintiffs could not obtain complete relief against Better alone because Better's liability and Honey Bee's asserted right to the earnest money turn on overlapping questions concerning the cause of the failed closing, the continuing operation of the financing contingency, and whether Plaintiffs were in default.

14B. Absent joinder of Honey Bee, Plaintiffs would be required to litigate in separate forums the same failed-closing facts, including Better's non-funding, Plaintiffs' diligence in

seeking financing, the reason the closing failed, and the legal consequence of that failure under the Sale Contract.

14C. Plaintiffs sought joinder after the earnest-money controversy became concrete and after it became apparent that the Better-centered litigation alone would not resolve the parties' competing claims to the escrowed funds.

14D. The claims against Honey Bee are not nominal or peripheral. They seek adjudication of an actual dispute over identified escrowed funds, construction of specific provisions of the Sale Contract, and complete relief arising from the same failed transaction already pleaded against Better.

15. Complete relief cannot be accorded in the absence of Honey Bee Holdings LLC because Honey Bee claims an interest in the same earnest money and asserts a contract-based position that turns on the same failed-closing facts giving rise to Plaintiffs' claims against Better. If Honey Bee were excluded, Plaintiffs would be forced to litigate overlapping issues in separate forums, with a substantial risk of duplication, inconsistent adjudications, and unnecessary expense.

15A. Plaintiffs sought leave to add Honey Bee promptly after the seller-side dispute became concrete and after it became clear that adjudication of the Better claims alone would not resolve the earnest-money controversy. Plaintiffs do not seek joinder to multiply proceedings or to impose tactical cost; to the contrary, joinder is sought so that all rights arising from the failed transaction may be resolved in one action.

Not an Official Court Document

## III. COMMON FACTUAL ALLEGATIONS AS TO DEFENDANT HONEY BEE HOLDINGS LLC

16. On or about December 22, 2025, Plaintiffs, as Buyers, and Honey Bee Holdings LLC, as Seller, entered into a written Special Sale Contract (Form 2043) for the purchase and sale of the Property at 1239 Stono Mountain, Farmington, Missouri 63640 (the "Sale Contract"). The Seller executed the Sale Contract by and through David Schomer on or about December 27, 2025. The Sale Contract is a valid, binding, and enforceable written agreement, governed by Missouri law pursuant to its express terms. (Ex. A)

17. Paragraph 3 of the Sale Contract established a total purchase price of $410,000.00 and required Plaintiffs to deposit earnest money in the amount of $10,000.00, to be held in escrow by Preferred Land and Title, Farmington, Missouri, as escrow agent. Plaintiffs duly deposited the $10,000.00 earnest money, which remains held in escrow.

18. ***The Financing Contingency — Paragraph 4.*** Paragraph 4 of the Sale Contract provided that the contract was "Contingent Upon Financing." Under that financing contingency, in the event the Buyers were unable to obtain loan approval, the Buyers were to deliver to the Seller or the listing broker, on or before the Loan Contingency Date (stated as 90 days), either (a) the lender's written notice of the Buyers' inability to obtain loan approval, or (b) if the lender would not provide such written notice, the Buyers' notarized affidavit attesting to the inability to obtain loan approval. Upon timely delivery of such notice or affidavit, the contract would terminate and the earnest money would be returned to the Buyers, subject to Paragraph 12. The financing contingency operated for the protection of the Buyers and remained operative through the Loan Contingency Date.

Not an Official Court Document

Not an Official Court Document

19. ***The Earnest-Money / Escrow Provision — Paragraph 12.*** Paragraph 12 of the Sale Contract governed the disposition of the earnest money in the event of a dispute. It provided that, in the event of a dispute over the earnest money, the escrow agent is to retain the earnest money until the escrow agent receives (a) a written release from all parties consenting to its disposition, (b) notice that a civil action has been filed to determine its disposition (in which event the escrow agent may deposit the earnest money into court, with court costs and the escrow agent's reasonable attorney's fees to be paid from the earnest money), (c) a final, non-appealable court judgment determining its disposition, or (d) such disposition as otherwise required by law. Paragraph 12 references RSMo § 339.105.4.

20. ***The Remedies / Liquidated-Damages and Attorney's-Fee Provision — Paragraph 13.*** Paragraph 13 of the Sale Contract provided that, "[i]f the default is by Buyer," the Seller may either accept the earnest money as liquidated damages, or pursue any other remedy available at law or in equity. Paragraph 13 further provided that, "[i]n the event of litigation between the parties," the prevailing party shall recover the cost of litigation, including reasonable attorney's fees. By its plain terms, the Seller's entitlement to retain the earnest money as liquidated damages is conditioned expressly and exclusively upon a default by the Buyer. Absent a default by the Buyer, the Seller has no right to retain the earnest money as liquidated damages.

21. ***Plaintiffs' Performance and the Cause of the Failure to Close.*** Plaintiffs performed, or stood ready, willing, and able to perform, every obligation imposed upon them as Buyers under the Sale Contract. Plaintiffs deposited the earnest money, applied for and pursued FHA financing with diligence and good faith, locked their rate, paid all required fees, wired cash-to-close, executed the FHA Amendatory Clause and Real Estate Certification (which the Seller countersigned on or about February 16, 2026), relocated their household to Missouri, and

presented themselves ready to close. The sole reason the purchase did not close was Better's wrongful refusal to fund the loan it had bindingly committed to fund — not any act, omission, or default of the Plaintiffs.

22. ***The Seller's "Close-or-Release" Ultimatum and Re-Listing Threat.*** As Better manufactured and persisted in pretextual underwriting objections, and as the originally scheduled closing of March 13, 2026 approached and then passed without funding by Better, the Seller refused to extend the closing and issued a written "close-or-release" notice. On or about March 16, 2026, the Seller, through the parties' communications, gave Plaintiffs an ultimatum of approximately twenty-four hours to close, failing which the Seller stated it would re-list the Property and would not close even if presented with a new offer. The Seller took the position that the 90-day financing contingency "did not matter" if the Seller did not agree to extend closing — a position contrary to the plain terms of Paragraph 4 of the Sale Contract.

23. ***The Signed Amendment.*** On or about February 13, 2026, Plaintiffs and the Seller executed a written amendment to the Sale Contract that set the closing date for March 13, 2026. Plaintiffs expressly allege that this amendment did not constitute, and was not intended by Plaintiffs to constitute, a waiver of the financing contingency in Paragraph 4, a waiver of Plaintiffs' right to the return of the earnest money in the event of non-funding through no default of their own, or an election by Plaintiffs to proceed with the purchase without financing. At all times Plaintiffs continued to pursue the very FHA financing that Better had bindingly committed to provide. The failure of the March 13, 2026 closing, and every consequence that followed, was caused solely by Better's misrepresentations, negligence, reversals, and wrongful refusal to fund — not by any act, omission, or default of the Plaintiffs.

Not an Official Court Document

24. ***Affirmative Negation of Waiver.*** Plaintiffs affirmatively allege, and the facts establish, that Plaintiffs at no time waived the financing contingency in Paragraph 4 of the Sale Contract, and at no time elected to proceed with the purchase of the Property without financing. Specifically: (a) Plaintiffs never delivered to the Seller any written waiver of the financing contingency; (b) Plaintiffs continuously and diligently pursued FHA financing with Better through and after the dates of the scheduled closings; (c) Plaintiffs never represented that they would or could close the purchase in the absence of a funded loan; (d) the parties' February 13, 2026 amendment, which set the March 13, 2026 closing date, did not waive or abandon the financing contingency; and (e) Plaintiffs timely invoked, and stood ready to invoke, the financing-contingency mechanism of Paragraph 4 upon Better's definitive refusal to fund and issuance of the Adverse-Action Notice. Any contention by the Seller that Plaintiffs waived the financing contingency, or elected to forgo it, is contrary to the facts and to the conduct of the parties.

25. ***The Seller's Earnest-Money Demand and the Present Contract Controversy.*** Following the collapse of the closing caused by Better's non-funding, an actual, justiciable, and present controversy arose between Plaintiffs and the Seller concerning the disposition of the $10,000.00 earnest money held in escrow. The Seller has asserted, or threatened to assert, a contractual right to retain the earnest money as liquidated damages under Paragraph 13 of the Sale Contract on the theory that Plaintiffs defaulted. Plaintiffs dispute that assertion in its entirety: Plaintiffs were not in default; the failure to obtain a funded loan was caused by Better; the financing contingency in Paragraph 4 remained operative; and the Seller's alleged right to retain the earnest money never arose. Those issues substantially overlap the causation, reliance,

and failed-closing allegations asserted against Better and should be resolved in the same proceeding.

## IV. COMMON FACTUAL ALLEGATIONS AS TO DEFENDANT BETTER

### *A. Pre-Application: California-to-Missouri Relocation and Plaintiff's Health Status*

26. In late 2025 and early 2026, while still residing in a rented single-family residence in Palmdale, California, Plaintiffs planned a relocation from California to St. Francois County, Missouri so that Plaintiffs and their infant daughter could be closer to extended family and so that the household could realize a meaningfully lower cost of living. Plaintiffs disclosed both their then-current California residence and their intended Missouri relocation to Better at and throughout the loan-application process, and Better at all relevant times knew that Plaintiffs were applying for an FHA purchase-money loan to acquire Missouri real property to which Plaintiffs would relocate from California in direct reliance upon Better's financing. At all times material to this action, Plaintiff William Wilson was continuously employed; he had been employed with DLG since November 2024 in a position he continued to hold uninterrupted through and after the events alleged below. In connection with the planned Missouri move, Plaintiff William Wilson's DLG employment transitioned to a fully remote arrangement effective February 1, 2026 — a change in work location, not a change in employer or in employment status. At all relevant times prior to and during the loan-application process, Plaintiff William Wilson was diagnosed with and treated for bipolar disorder, a condition known to Better through information voluntarily disclosed during the loan-application process and in subsequent communications with Better's loan officer.

27. Plaintiff William Wilson's primary income at all relevant times was his continuous W-2 employment with DLG. Effective February 1, 2026 — at the same time his DLG

employment transitioned to a fully remote arrangement — Plaintiff additionally undertook secondary, remote-only employment as a settlement negotiator for an entity hereinafter referred to as "BD&J," representing an increase in, not a disruption of, Plaintiff's income. At all relevant times Plaintiff William Wilson's compensation, employer-of-record, and W-2 status remained continuous and unchanged.

### *B. The Pre-Approval, Rate Lock, and Mortgage Commitment*

28. On or about February 1, 2026, Plaintiffs applied to Better for an FHA purchase mortgage loan in connection with the proposed acquisition of the Property. Better assigned Loan No. 1649285704 and FHA Case No. 292-8445580 to the file. On or about February 2, 2026, Better issued a written Pre-Approval Letter to Plaintiffs. Better then assigned Loan Officer Ashley Rayne Gould-Martinez, NMLS #1943523 ("Ashley"), as the licensed mortgage loan originator responsible for the file. Ashley was at all relevant times an employee, agent, and/or apparent agent of Better, acting within the course and scope of her employment and with actual and apparent authority to make the representations and commitments hereinafter described. On or about February 4, 2026, Ashley telephoned Plaintiff William Wilson to discuss a rate lock. On or about February 12, 2026, Plaintiffs locked their loan rate with Better.

29. On or about February 13, 2026, Plaintiffs signed an FHA Amendatory Clause and Real Estate Certification. The Seller, Honey Bee Holdings LLC, countersigned on or about February 16, 2026.

30. On or about February 17, 2026, Better issued to Plaintiffs a written Mortgage Commitment Letter (the "Commitment"). The Commitment set forth the committed loan terms, including a loan amount of $395,650.00, a locked interest rate of 5.875% per annum, and a loan term of 360 months, and stated that the rate lock and Commitment were to remain effective

through March 16, 2026. The Commitment expressly stated that, upon Plaintiffs' acceptance, it was "binding on both parties." The Commitment identified the conditions that Better — not Plaintiffs — was required to manage prior to closing, including but not limited to (a) verification of sufficient assets, (b) verbal verification of employment within ten (10) days of closing, (c) soft credit review, (d) title, (e) appraisal, (f) fraud review, and (g) pre-closing quality-control review. Plaintiffs accepted the Commitment. (Ex. B)

31. On February 25, 2026, Plaintiff William Wilson, having received and reviewed Better's then-current Loan Estimate, sent Ashley a written email observing that the Loan Estimate reflected approximately $15,000 of cash required at closing in addition to the $10,000 in earnest money that Plaintiffs had already paid to the title company. Ashley promptly telephoned Plaintiff William Wilson in response. In the ensuing telephone conversation: (a) the parties discussed restructuring the transaction by applying lender credits to reduce the cash required at closing; (b) Ashley confirmed that Plaintiffs' cash to close would be set at exactly 3.5% of the purchase price — the minimum FHA-required down payment — and no more; (c) Plaintiff reiterated that he did not wish to use his 401(k) funds as part of the transaction; (d) Ashley responded that Plaintiff could "ignore" the 401(k) verification task on his Better portal, and that she would "override" or "delete" that task herself; (e) Ashley affirmatively represented that Better had "already verified enough assets and income" on the file, and that Plaintiff should "not worry about it"; and (f) at no point did Ashley disclose that any cash-reserve requirement existed or that Plaintiff's 401(k) funds would be needed to satisfy any such requirement. (Ex. D)

32. In reliance on Better's binding written Commitment, on Better's representations of February 25, 2026, and on Better's repeated indications that closing could occur on or before the scheduled closing date of March 13, 2026, Plaintiffs, on or about February 27, 2026: (a) caused

their household goods to be loaded and transported from California to Missouri; (b) physically relocated themselves and their family from California to Missouri; and (c) thereby committed themselves to taking possession of the Property at closing. Thereafter, consistent with Better's final Loan Estimate dated March 2, 2026, which reflected a cash-to-close figure of $4,111.00, Plaintiffs wired cash-to-close of $4,111.00 to the settlement agent in further reliance on Better's Commitment and its representation that the loan would close. (Ex. H) (Ex. K)

***C. Better's First Reversal: The Manufactured $8,500 "Reserve Requirement" of March 9, 2026***

33. On or about March 9, 2026 — only four (4) days before the scheduled March 13, 2026 closing — Ashley reversed her February 25, 2026, representations and informed Plaintiff William Wilson that an $8,500 "reserve requirement" had been imposed on the file and that Plaintiff's 401(k) funds would be required to satisfy it. When Plaintiff reminded Ashley of her February 25 statements that the 401k task could be ignored and expressed his confusion regarding the sudden requirement of reserves, Ashley's only explanation was that "all FHA loans require reserves" — a statement that is false as a categorical matter of FHA underwriting.

34. Plaintiff William Wilson, in continued reliance on Better's Commitment, complied by submitting a 401(k) account screenshot. The Better underwriter rejected the screenshot, demanding additional documentation that Plaintiff could not produce on the compressed timetable Better itself had created. Plaintiff then substituted, as proof of liquid assets equal to the needed reserve amount.

***D. The March 10–11, 2026 Title and "Klarna" Pretexts***

35. On or about March 10, 2026, Better processor Philip Chan informed Plaintiff William Wilson that the title work for the Property had been "ordered, not received," and that closing



Not an Official Court Document

could not proceed. Plaintiff immediately contacted Lisa Campbell, the closer at Preferred Land Title, LLC (File No. F2512108). Lisa Campbell confirmed the title work had been sent to Better weeks earlier, forwarded the title commitment again, and reported she had been unable to reach anyone at Better to confirm closing numbers. Plaintiff re-uploaded the title work to the Better borrower portal.

36. On or about March 11, 2026, Better, on a purported "re-review" of Plaintiff's bank statements, generated three (3) separate borrower-portal verification tasks directed at three small, ordinary one-time debit-card purchases from Plaintiff's Chase account ending in 5021, each asserting on its face that the transaction was a "large or recurring payment" requiring verification. The three transactions, verbatim, were: (i) "$52.4 made from your Chase account 5021 on 2/9/2026 to Klarna"; (ii) "$40 made from your Chase account 5021 on 1/26/2026 to Klarna"; and (iii) "$15.54 made from your Chase account 5021 on 2/18/2026 to Klarna." None of the three transactions was "large" (the amounts were $52.40, $40.00, and $15.54), and none was "recurring" (three different amounts on three different dates across three statement cycles). Better's characterization of these de minimis, non-recurring debit-card entries as "large or recurring" payments was, on the face of Better's own task language, demonstrably false.

37. Plaintiff William Wilson promptly submitted a verified letter of explanation and Klarna's own customer documentation, which confirmed that the three flagged entries were ordinary paid-in-full debit-card purchases, that no installment balance existed, and that Plaintiff's current Klarna balance was $0. Notwithstanding this, Better did not withdraw, clear, or close its "Klarna" objection. As a foreseeable result of Better's manufactured and persistently maintained "Klarna" objection, the March 13, 2026 closing did not proceed, and the Seller refused to extend and issued a written "close-or-release" notice.

Not an Official Court Document

38. On or about March 13, 2026, Better processor Philip Chan emailed Preferred Land Title and represented that the file was not clear to close because "buyer has outstanding tasks." Plaintiff had no outstanding tasks; the file was paused solely because Better was conducting underwriting review based on its own manufactured "Klarna" pretext.

***E. March 17, 2026 — Better's Simultaneous, Contradictory External Communications***

39. On March 17, 2026, Ashley sent a text message to Plaintiff William Wilson stating, verbatim, "Got the clear to close!!!!" Plaintiff, reasonably relying on the representation by Better's licensed loan officer, promptly telephoned the settlement agent Lisa Campbell and communicated that Better's loan officer had advised that the loan was clear to close. (Ex. I) (Ex. H)

40. On the same day, March 17, 2026, the settlement agent Lisa Campbell, in reasonable reliance on the borrower-relayed representation that Better's loan officer had said the loan was "clear to close," emailed Hasnat Sapui, a member of Better's closing department, stating, verbatim: "the buyer called me and said we now have clear to close. I have revised my cd and put tomorrow's date as closing." Acting on the same representation, Lisa Campbell had already begun preparing revised closing documents and had set the closing for the following day. (Ex. J)

41. In direct response to Lisa Campbell's email, and on the same day, March 17, 2026, Hasnat Sapui replied to the settlement agent, stating, verbatim: "No it is not clear to close and also verification employment pending." Plaintiff was not a party to, copied on, or otherwise included in this email exchange between Better's closing department and the settlement agent; Plaintiff did not see this communication at the time it was sent. This statement by Better's own closing-department employee was directly and irreconcilably inconsistent with the "clear to

Not an Official Court Document

Not an Official Court Document

close" representation that Ashley, Better's licensed loan officer, had already made to the borrower earlier that same day. (Ex. J)

42. Better's left hand (loan officer Ashley) and Better's right hand (closing-department employee Hasnat Sapui) were issuing directly contradictory representations externally to two different parties to the same closing on the same day. While Better's closer was telling the settlement agent the loan was NOT clear to close, Better's loan officer had already told the borrower that it WAS clear to close, and the settlement agent had already begun preparing revised closing documents based on the borrower-relayed misrepresentation. Plaintiff was not included on the direct email correspondence between Better's closing department, the settlement agent, and the Seller. Plaintiff learned of Better's contradictory communications only after the fact, when the settlement agent Lisa Campbell and the Seller — who were themselves receiving conflicting information from Better and were attempting to reconcile it — forwarded the underlying emails to Plaintiff. It was through those forwarded communications, and not through any direct disclosure by Better, that Plaintiff first became aware that Better's own personnel were simultaneously representing both that the loan was, and was not, clear to close.

***F. The March 18–19, 2026 Closing Collapse***

43. On March 18, 2026, Hasnat Sapui emailed: "Docs will be shared when VOE is completed." Later that same day, Hasnat Sapui emailed: "Working on revised CD." That same day, Better's borrower portal showed that the final underwriting/approval task had been completed and a new task to schedule closing had appeared. Plaintiff William Wilson, still relying on Better's representation that the loan was clear to close, rescheduled the closing for the morning of March 19, 2026.

44. On March 19, 2026, the closing did not occur. Better did not fund. Better did not appear. Better did not produce signed loan documents. Better never thereafter funded the loan. (Ex. K)

### *G. The Loss of Plaintiff's Employment and Health Insurance*

44A. At the time of the March 19, 2026 closing failure, William Wilson held two concurrent positions: a primary, full-time, remote W-2 position with DLG, and a secondary position with BD&J, together providing a combined annual base salary of $213,400.00 and employer-sponsored health insurance for William Wilson and his family.

44B. On or about March 19, 2026, Better disclosed to William Wilson — for the first time — that it had been conducting an employment search on him and contacting DLG, and that DLG was being reported as no longer employing him. Better's disclosure, coming only after Better had deferred meaningful verbal employment verification until the eleventh hour, precipitated an acute manic episode arising from William Wilson's disclosed bipolar disorder. That episode damaged William Wilson's relationship with DLG, and DLG discontinued the employment relationship.

44C. The same manic episode, and the depression that followed, also impaired William Wilson's ability to perform his secondary position with BD&J, and that relationship likewise ended. Within a matter of days, William Wilson lost both of his positions, the entirety of his combined annual base salary of $213,400.00, and the employer-sponsored health insurance those positions provided. But for Better's misrepresentations about the status of the loan and Better's decision to defer verbal employment verification until the eleventh hour, Plaintiffs would have delayed their relocation, William Wilson would not have suffered the manic episode that destroyed both employment relationships, and he would not have lost his income or his family's

health coverage. Each of these losses was a direct, proximate, and reasonably foreseeable consequence of Better's conduct, on which William Wilson justifiably relied to his detriment.

44D. The loss of William Wilson's employment also extinguished the employer-sponsored health-insurance coverage that William Wilson and his family had maintained through that employment. As a direct, proximate, and reasonably foreseeable result of Better's conduct, William Wilson and his family lost their health-insurance continuity, including coverage for his infant daughter and for the ongoing treatment of his disclosed bipolar disorder.

### *H. The Defective Adverse-Action Notice*

45. On or about April 1, 2026, Better issued to Plaintiffs a written Adverse-Action Notice. The only stated reason for adverse action was the single, undifferentiated word: "UnverifiableInformation." Under the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(2)–(3), and Regulation B, 12 C.F.R. § 1002.9, a creditor taking adverse action is required to provide specific reasons for adverse action. A creditor's reason that has no concrete factual basis subverts the notification purpose of ECOA. Sayers v. General Motors Acceptance Corp., 522 F. Supp. 835, 839 (W.D. Mo. 1981).

46. Better's stated reason, "UnverifiableInformation," is generic, conclusory, and indistinguishable from no reason at all, and was a pretextual cover for Better's own internal contradiction and unwillingness to fund a loan it had bindingly committed to.

### *I. The Sellers, the Purchase Contract, and Better's Knowledge*

47. At all times material hereto, Plaintiffs were parties to a binding written real-estate purchase contract with Seller Honey Bee Holdings LLC for the purchase of the Property at the price of $410,000.00. Better knew of the existence and material terms of that contract, including the closing date, the cash-to-close requirement, and the conditions of seller cooperation. Better

Not an Official Court Document

received and reviewed the executed purchase contract as a routine part of its underwriting; Better was the lender identified on the FHA Amendatory Clause and Real Estate Certification countersigned by the Seller on February 16, 2026.

48. On or about March 5, 2026, the FHA appraisal of the Property was completed by an FHA-approved appraiser. The appraised value of the Property was $423,000.00 — approximately $13,000.00 above the contract price of $410,000.00 — representing at minimum $13,000.00 in day-one equity that the Plaintiffs would have realized upon funding of the loan and closing.

### *J. The Wilsons' Post-Collapse Position*

49. Following the collapse of closing, Plaintiffs were displaced. Their household goods had already been transported by Plymouth Van Lines, an interstate moving carrier with whom Plaintiffs had contracted in reliance upon Better's binding written commitment to fund the loan. Plaintiffs could not occupy the Property because the closing had not funded. The Seller refused to extend and pursued or threatened pursuit of the Plaintiffs' earnest money and additional remedies. Plaintiffs were forced into temporary, more expensive housing, with associated moving and storage costs. Plaintiff William Wilson's housing stability, household-income stability, and health-insurance continuity were each materially disrupted, and his preexisting bipolar disorder was significantly and medically aggravated. (Ex. C) (Ex. E)

50. Plymouth Van Lines tendered first availability for delivery of Plaintiffs' household goods on March 13, 2026. Because the closing had collapsed and Plaintiffs had no funded residence in which to accept delivery, Plymouth Van Lines was required to retain Plaintiffs' entire household, including all furniture, personal property, and irreplaceable family heirlooms, in storage commencing March 13, 2026, at a recurring storage charge of $950.00 per month. As

of the filing of this Second Amended Petition, the threat of total loss of Plaintiffs' household goods remains imminent and ongoing as a direct, proximate, and reasonably foreseeable consequence of Better's wrongful refusal to fund the loan, and Plaintiffs continue to incur additional storage charges at $950.00 per month.

51. Plaintiffs incurred out-of-pocket damages including, without limitation, application fees, FHA case-number fees, appraisal fee, credit-report fees, inspection fee, earnest-money exposure, double-rent overlap, Plymouth Van Lines interstate-moving charges, recurring storage charges of $950.00 per month commencing March 13, 2026 (producing an outstanding balance of not less than $9,439.00), increased rent at replacement housing, and related transaction expenses totaling not less than approximately $32,051.00, exclusive of additional storage charges continuing to accrue, the threatened loss of household goods of approximate replacement value of $150,000.00, and consequential losses identified elsewhere herein.

52. Plaintiffs lost the benefit of their bargain — the $13,000 day-one equity at minimum — and additionally lost the differential between the locked loan rate and the materially less favorable replacement loan rate that would now be needed if Plaintiffs could ever obtain replacement financing. Plaintiffs lost or suffered damage to personal property of approximate replacement value of $150,000.00, and to irreplaceable family heirlooms whose value is properly determined by the jury as the actual value to the owner under Missouri's long-settled rule. Ladeas v. Carter, 845 S.W.2d 45 (Mo. App. W.D. 1992); Breece v. Jett, 556 S.W.2d 696 (Mo. App. 1977). (Ex. F)

53. Plaintiff William Wilson suffered medically diagnosable and medically significant emotional distress, including aggravation of his preexisting bipolar disorder, anxiety, depression, sleep disturbance, and other manifestations. Plaintiff Sarah Wilson likewise suffered medically

diagnosable and medically significant emotional distress. Plaintiffs will reasonably incur future medical and psychiatric expense as a consequence of Better's conduct.

### *K. Pattern-and-Practice Allegations (Made on Information and Belief)*

54. On information and belief, Better's conduct in the Plaintiffs' file was not an isolated incident. On information and belief, following Better's December 2023 initial public offering and the well-publicized series of large-scale Better workforce reductions, Better operated under unusual underwriting and capacity pressure, and adopted underwriting and closing practices that systematically permitted loan officers to make representations of imminent closing in advance of completed verifications. Discovery is reasonably expected to disclose comparable incidents demonstrating a pattern-and-practice of unfair and deceptive conduct subjecting borrowers to the same kind of injury inflicted upon the Plaintiffs.

## V. CAUSES OF ACTION AGAINST DEFENDANT BETTER MORTGAGE CORPORATION

### COUNT I — BREACH OF MORTGAGE LOAN COMMITMENT

***(Against Defendant Better)***

55. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

56. Under Missouri law, the elements of a breach-of-contract claim are: (a) the existence and terms of a contract; (b) the plaintiff's performance or tender of performance; (c) the defendant's breach; and (d) damages resulting from that breach. Keveney v. Missouri Military Academy, 304 S.W.3d 98, 104 (Mo. banc 2010).

Not an Official Court Document

57. Better issued, and Plaintiffs accepted, a written Mortgage Commitment Letter dated on or about February 17, 2026. The Commitment expressly recited that it was "binding on both parties," identified the principal loan terms, and identified the conditions to be cleared before closing. The Commitment, together with Better's related written loan records and internal documentation reflecting the committed transaction, satisfies the writing requirement applicable to credit agreements. RSMo § 432.047; Bailey v. Hawthorn Bank, 382 S.W.3d 84 (Mo. Ct. App. 2012).

58. Plaintiffs performed, tendered performance of, or stood ready, willing, and able to perform each obligation imposed upon them by the Commitment, including locking the rate, paying required fees, signing disclosures and certifications, wiring the required cash-to-close, executing the FHA Amendatory Clause, and responding to Better's underwriting requests. To the extent Better contends that any additional pre-closing condition remained unsatisfied, Plaintiffs allege that the satisfaction of such condition was prevented, delayed, or impeded by Better's own handling of title, verification, underwriting, conditions clearance, document preparation, and closing coordination.

59. Better breached the Commitment by failing and refusing to fund the loan on March 19, 2026, by failing thereafter to fund the loan at any reasonable time, and by attempting to justify nonperformance through shifting, pretextual, or unstated conditions, including the post-hoc reserve demand, the manufactured "Klarna" issue, and the conclusory "UnverifiableInformation" rationale. To the extent Better relies on any condition said to excuse performance, Plaintiffs allege that no such forfeiture-producing condition was stated in express or clear terms in the Commitment, that unstated conditions cannot be imported after the fact to defeat funding, and that Better cannot rely on conditions whose alleged nonoccurrence Better

itself caused or prevented. Pointe Development, LLC v. Enterprise Bank & Trust, 316 S.W.3d 543 (Mo. Ct. App. 2010).

60. As the direct and proximate result of Better's breach of the Commitment, Plaintiffs have suffered the damages set forth in paragraphs 51 through 53 above, together with such additional contract damages as the evidence may show at trial.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count I in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest where allowed by law, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT II — BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

***(Against Defendant Better)***

61. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

62. Missouri law implies a covenant of good faith and fair dealing in every contract. That covenant requires a party exercising contractual discretion to do so in good faith and not in a manner that evades the spirit of the transaction or denies the other party the expected benefit of the agreement. Bad-faith performance may include evasion of the spirit of the bargain, lack of diligence and slacking off, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance. Missouri Consolidated Health Care Plan v. Community Health Plan, 81 S.W.3d 34 (Mo. Ct. App. 2002).

63. Better had substantial unilateral and discretionary control over underwriting, verification, conditions clearance, document preparation, funding, and closing coordination



Not an Official Court Document

under the Commitment, and was bound to exercise that discretion in good faith. Better breached that covenant by, among other things, reversing prior representations only after Plaintiffs had relocated and wired funds; asserting demonstrably pretextual objections; failing to perform or timely coordinate Better-controlled tasks; issuing contradictory clear-to-close representations to different participants in the same closing; and using its discretionary control over the file in a manner that evaded the spirit of the bargain and denied Plaintiffs the expected benefit of the Commitment. As a direct and proximate result, Plaintiffs suffered the damages set forth in paragraphs 51 through 53.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count II in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT III — FRAUDULENT MISREPRESENTATION (Pleaded with Particularity Pursuant to Rule 55.15)

***(Against Defendant Better)***

64. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

65. The elements of fraudulent misrepresentation under Missouri law are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of falsity or ignorance of the truth; (5) the speaker's intent that the representation be acted upon; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely; and (9) consequent and proximately caused injury. Clark v. Olson, 726 S.W.2d 718, 719 (Mo. banc 1987).

Not an Official Court Document

66. Plaintiffs plead the following fraudulent misrepresentations of material fact, with particularity and in compliance with Rule 55.15: (a) on February 25, 2026, Ashley represented in a telephone conversation that Plaintiffs' cash to close would be limited to the FHA minimum down payment, that the 401(k) task could be ignored and would be overridden, and that Better had already verified enough assets and income, while omitting any then-asserted reserve issue; (b) on March 10, 2026, Better represented through processor Philip Chan that title work had been "ordered, not received," when the settlement agent had previously sent the title work and promptly confirmed that fact; (c) on March 11, 2026, Better characterized three ordinary, small, paid-in-full debit transactions as "large or recurring" payments requiring explanation, despite Better's own task language and the contemporaneous documentation showing otherwise; (d) on March 13, 2026, Better represented to Preferred Land Title that the file was not clear to close because "buyer has outstanding tasks," when Plaintiffs had no outstanding borrower tasks preventing closing; (e) on March 17, 2026, Ashley texted Plaintiff William Wilson, "Got the clear to close!!!!," while Better's closing department represented to the settlement agent that the loan was not clear to close and that employment verification remained pending; and (f) after the closing collapsed, Better represented in its Adverse-Action Notice that the denial rested on "UnverifiableInformation," when Better had already received the title and Klarna-related materials it had claimed to need and was using a generic, shifting, and pretextual rationale to conceal the true basis of its refusal to fund.

67. Each representation identified above concerned a present or then-existing fact material to the transaction; each was false when made or was made with reckless disregard for the truth; each was made with the intent that Plaintiffs act upon it in the ongoing purchase transaction; Plaintiffs were ignorant of the falsity, had a right to rely on representations supplied

by their lender in the course of the transaction, and did in fact rely upon them; and such reliance proximately caused the injuries set forth in paragraphs 51 through 53. Plaintiffs seek all fraud damages permitted by Missouri law, including out-of-pocket and consequential losses proximately caused by the fraud, and, to the extent supported by the evidence and permitted on these facts, benefit-of-the-bargain damages. Clark v. Olson, 726 S.W.2d 718 (Mo. 1987); Heberer v. Shell Oil Co., 744 S.W.2d 441 (Mo. 1988).

68. Better's conduct was committed knowingly, intentionally, or with conscious disregard for Plaintiffs' rights and interests, and the factual basis for punitive damages is pleaded pursuant to RSMo § 510.261.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count III in an amount in excess of $25,000.00 that is fair and reasonable, including fraud damages permitted by Missouri law and, upon the requisite showing, punitive damages, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**COUNT IV — NEGLIGENT MISREPRESENTATION (Pleaded in the Alternative)**

***(Against Defendant Better)***

69. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein, and plead this Count in the alternative to Count III.

70. The elements of negligent misrepresentation are: (1) the defendant supplied information in the course of its business; (2) because of the defendant's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided for the guidance of limited persons in a particular transaction; (4) the plaintiff justifiably relied; and (5) the plaintiff suffered pecuniary loss. Once a lender undertakes to provide information concerning

a loan transaction for the borrower's guidance, a duty to use due care arises. Bailey v. Hawthorn Bank, 382 S.W.3d 84 (Mo. Ct. App. 2012); Frame v. Boatmen's Bank of Concord Village, 824 S.W.2d 491 (Mo. Ct. App. 1992).

71. In the course of its mortgage-lending business, Better supplied the information identified in paragraph 66 for the purpose of guiding Plaintiffs in this particular purchase transaction. Better failed to exercise reasonable care in supplying and coordinating that information, including by allowing internal file status, title status, reserve status, borrower-task status, and clear-to-close communications to become false, inconsistent, or misleading. Plaintiffs justifiably relied on that information and thereby suffered pecuniary loss, including the financial losses described in paragraphs 51 through 53. This Count seeks pecuniary losses only and is pleaded in the alternative to Count III.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count IV in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT V — VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT

***(RSMo §§ 407.020, 407.025) (Against Defendant Better)***

72. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

73. RSMo § 407.020.1 declares unlawful the act, use, or employment of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce in or from Missouri. RSMo § 407.025.1 creates a private right

of action for any person who purchases merchandise primarily for personal, family, or household purposes and thereby suffers ascertainable loss. The making and servicing of a residential mortgage loan is the "sale of merchandise" within the meaning of the MMPA. Conway v. CitiMortgage, Inc., 438 S.W.3d 410 (Mo. banc 2014); Watson v. Wells Fargo Home Mortgage, Inc., 438 S.W.3d 404, 407 (Mo. banc 2014).

74. Better engaged in deception, misrepresentation, unfair practice, and the concealment or omission of material fact in connection with the sale of the residential mortgage loan and related services, including without limitation the false and misleading statements identified in paragraph 66; the post-hoc imposition of an undisclosed reserve demand after prior assurances to the contrary; the manufactured "Klarna" issue; the contradictory March 17, 2026 clear-to-close communications; the failure to disclose that employment verification remained unresolved when Better represented the loan was clear to close; and the use of a vague, generic adverse-action rationale after the file collapsed. The making and servicing of a residential mortgage loan falls within the MMPA. Davis R. Conway and Sheri D. Conway v. CitiMortgage, Inc. and Federal National Mortgage Association, Inc., 438 S.W.3d 410 (Mo. 2014); Shelby E. Watson v. Wells Fargo Home Mortgage, Inc., 438 S.W.3d 404 (Mo. 2014).

75. As a direct result of Better's unlawful practices, Plaintiffs suffered ascertainable loss, including fees and charges paid in connection with the loan transaction, the cash-to-close wire, moving and storage costs, increased housing costs, and such other actual losses as are proved at trial. Plaintiffs seek actual damages and such discretionary punitive damages and attorney's fees as may be permitted under § 407.025. Thomas Binkley, Harlene J. Binkley, Roland E. Sturhahn, and Susan J. Sturhahn v. American Equity Mortgage, Inc., 447 S.W.3d 194 (Mo. 2014); Schoenlein v. Routt Homes, Inc., 260 S.W.3d 852 (Mo. Ct. App. 2008).

Not an Official Court Document

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count V for actual damages, such punitive damages and attorney's fees as the statute permits, costs, and such other and further relief as the Court deems just and proper.

## COUNT VI — TORTIOUS INTERFERENCE WITH CONTRACT

***(Wilson–Honey Bee Holdings LLC Real-Estate Purchase Contract) (Against Defendant Better)***

76. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

77. Plaintiffs had a binding written real-estate purchase contract with Honey Bee Holdings LLC for the purchase of the Property. Better had actual knowledge of that contract, its closing date, the need for financing, the earnest-money structure, and the seller's participation in the FHA-related documents. Better was not a party to the Wilson—Honey Bee contract and thus was a third party to that contract for purposes of this Count. Nazeri v. Missouri Valley College, 860 S.W.2d 303 (Mo. 1993); Zipper v. Health Midwest, 978 S.W.2d 398 (Mo. Ct. App. 1998).

78. Better intentionally interfered with that contract by using improper means, including misrepresentations and misleading communications concerning title status, borrower-task status, and clear-to-close status; by failing to fund despite representing that closing was imminent; and by causing the purchase to fail on the dates fixed by the parties. Better's economic interest as proposed lender did not justify interference by improper means. Nazeri v. Missouri Valley College, 860 S.W.2d 303 (Mo. 1993); Western Blue Print Co. v. Roberts, 367 S.W.3d 7 (Mo. 2012).

79. But for Better's interference, Plaintiffs and Honey Bee would have closed on the Property, or at minimum would not have been forced into the earnest-money dispute and related



Not an Official Court Document

Case 4:26-cv-00851-MA Doc. #: 1 Filed: 01/21/26 Page: 34 of 50 PageID #: 160

losses caused by Better's conduct. As a direct and proximate result, Plaintiffs suffered the damages set forth in paragraphs 51 through 53, including the loss of the contract bargain and the jeopardy to the earnest money. Better's interference was committed knowingly or with conscious disregard for Plaintiffs' rights, and the factual predicate for punitive damages is pleaded pursuant to RSMo § 510.261.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count VI in an amount in excess of $25,000.00 that is fair and reasonable, together with punitive damages as permitted, pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**COUNT VII — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

***(Including Aggravation of Preexisting Condition) (Against Defendant Better)***

80. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

81. A plaintiff may recover for negligent infliction of emotional distress when (a) the defendant should have realized that the conduct involved an unreasonable risk of causing the distress, and (b) the emotional distress is medically diagnosable and medically significant. Bass v. Nooney Co., 646 S.W.2d 765 (Mo. banc 1983); Asaro v. Cardinal Glennon Memorial Hospital, 799 S.W.2d 595 (Mo. banc 1990). A direct-victim plaintiff need not satisfy any zone-of-danger requirement. Jarrett v. Jones, 258 S.W.3d 442 (Mo. banc 2008).

82. Better owed Plaintiffs a duty of reasonable care arising from its undertaking to process, communicate, coordinate, and accurately report the status of the loan transaction and from its duty, once it undertook to supply information for Plaintiffs' guidance, to do so with due care. The duty asserted in this Count is grounded in Better's independent tort duty not to



Not an Official Court Document

negligently misstate or mishandle information in the transaction. Frame v. Boatmen's Bank of Concord Village, 824 S.W.2d 491 (Mo. Ct. App. 1992); Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184 (Mo. Ct. App. 2010).

83. Better knew or should have known that its conduct involved an unreasonable risk of causing medically significant emotional distress because Better knew Plaintiffs were first-time homebuyers undertaking a cross-country move in reliance on funding; knew Plaintiffs had already vacated California housing and moved their household goods; knew the transaction involved an infant child; and knew, through disclosures made during the loan process, that Plaintiff William Wilson had a preexisting bipolar disorder that made false clear-to-close assurances, sudden reversals, and closing-day nonfunding especially hazardous. Better nevertheless engaged in the conduct described in paragraphs 31 through 46.

84. Plaintiff William Wilson suffered emotional distress that was medically diagnosable and medically significant, including aggravation of a preexisting bipolar condition, and Plaintiff Sarah Wilson likewise suffered medically diagnosable and medically significant emotional distress, all to the extent shown by the evidence. Plaintiffs seek recovery for the aggravation of preexisting condition to the extent proximately caused by Better's conduct. Asaro v. Cardinal Glennon Memorial Hospital, 799 S.W.2d 595 (Mo. 1990); Widener v. St. Louis Public Service Co., 230 S.W.2d 698 (Mo. 1950).

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count VII in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**COUNT VIII — PROMISSORY ESTOPPEL (Pleaded in the Alternative)**

Not an Official Court Document

*(Against Defendant Better)*

85. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein and plead this Count expressly and only in the alternative to Counts I and II. This Count is to be reached only if the Court determines that the February 17, 2026 Commitment is not enforceable as a binding contract. Missouri procedure permits alternative and inconsistent pleading. Mays-Maune & Associates., Inc. v. Werner Bros., Inc., 139 S.W.3d 201 (Mo. Ct. App. 2004).

86. Better made definite promises to Plaintiffs, including the written Commitment, the February 25 representations that no additional reserve showing would be required beyond what had already been verified, and the March 17 representation that the loan was clear to close. Better should reasonably have expected Plaintiffs to act on those promises, and Plaintiffs in fact relied on them by vacating housing, moving across the country, wiring funds, and foregoing other options. If, and only if, the Court concludes that no enforceable contract existed, injustice can be avoided only by enforcement of the promises or an award of reliance-based relief sufficient to place Plaintiffs in the position they would have occupied had the promises not been made and relied upon. Clevenger v. Oliver Insurance Agency, Inc., 237 S.W.3d 588 (Mo. 2007).

WHEREFORE, Plaintiffs respectfully pray, in the alternative, for judgment against Better Mortgage Corporation on Count VIII in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

Not an Official Court Document

## COUNT IX — CIVIL CONSPIRACY

***(Against Defendant Better)***

87. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

88. Civil conspiracy is pleaded here as a theory of concerted liability, in the alternative to the extent Missouri law recognizes legally distinct conspirators on the facts developed in discovery. The elements are: (1) two or more persons; (2) with an unlawful objective, or with a lawful objective pursued by unlawful means; (3) after a meeting of the minds; (4) one or more acts in furtherance of the conspiracy; and (5) resulting damage. The unlawful objectives and means underlying this Count are the fraudulent and deceptive acts described in Counts III and V and the tortious interference described in Count VI. Oak Bluff Partners, Inc. v. Meyer, 3 S.W.3d 777 (Mo. 1999); Gettings v. Farr, 41 S.W.3d 539 (Mo. Ct. App. 2001).

89. Plaintiffs allege that Better, Ashley Rayne Gould-Martinez, Hasnat Sapui, Philip Chan, and such additional persons as discovery may reveal reached a common understanding to advance the file, communicate status, preserve commissions, performance metrics, employment standing, or institutional advantage through false or misleading representations rather than truthful disclosure of the loan's actual status. The concerted nature of the conduct is shown by the coordinated or mutually reinforcing misstatements concerning title, borrower tasks, and clear-to-close status, and by the failure to correct the false "clear to close" representation after Better's own personnel knew the opposite was being represented inside the company and to the settlement agent. This Count is pleaded on the further basis that, to the extent any individual actors were pursuing personal compensation, file-completion metrics, blame-shifting, or employment-related interests distinct from Better's unified corporate interest, the alleged

concerted conduct was not merely a single corporate decision. As a direct and proximate result, Plaintiffs suffered the damages alleged herein, and all conspirators are jointly and severally liable to the extent permitted by law. Gettings v. Farr, 41 S.W.3d 539 (Mo. Ct. App. 2001).

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count IX in an amount in excess of $25,000.00 that is fair and reasonable, jointly and severally against all legally responsible conspirators, with punitive damages as permitted, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT X — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

***(Against Defendant Better)***

90. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein, and plead this Count in the alternative to, and additionally and independently of, Count VII pursuant to Mo. R. Civ. P. 55.10.

91. To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress resulting in bodily harm. This Count is pleaded in the alternative and in addition to Count VII to the extent the evidence shows that Better's conduct was not merely negligent but intentional or reckless. Nazeri v. Missouri Valley College, 860 S.W.2d 303 (Mo. 1993); K.G. v. R.T.R., 918 S.W.2d 795 (Mo. 1996).

92. Better's conduct, taken as a whole and viewed in the light most favorable to Plaintiffs, was extreme and outrageous because Better issued a binding written commitment; knowingly allowed Plaintiffs to relocate across the country with an infant child in reliance on imminent funding; communicated shifting and pretextual obstacles while the transaction was

collapsing; represented to the borrower that the loan was clear to close while Better's own closing personnel were simultaneously stating the opposite; failed to correct that contradiction before the rescheduled closing; and then attempted to explain the collapse with a generic and conclusory adverse-action rationale. Plaintiffs further allege that Better acted intentionally or recklessly in the face of known vulnerability after receiving disclosures concerning William Wilson's bipolar disorder and the family's dependence on the closing for housing stability. Such conduct caused severe emotional distress and bodily-harm sequelae to the extent shown by the evidence, and the factual basis for punitive damages is pleaded pursuant to RSMo § 510.261.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count X in an amount in excess of $25,000.00 that is fair and reasonable, including damages for severe emotional distress and related bodily-harm consequences, with punitive damages as permitted, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## VI. CAUSES OF ACTION AGAINST DEFENDANT HONEY BEE HOLDINGS LLC

### COUNT XI — DECLARATORY JUDGMENT (RSMo §§ 527.010 et seq.)

***(Against Defendant Honey Bee Holdings LLC)***

93. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

94. The Missouri Declaratory Judgment Act, RSMo §§ 527.010 through 527.130, empowers this Court to declare the rights, status, and other legal relations of parties to a written contract, whether or not further relief is or could be claimed, and any person interested under a written contract may have determined any question of construction or validity arising under the

contract and obtain a declaration of rights, status, or other legal relations thereunder. RSMo §§ 527.020, 527.030.

95. An actual, justiciable, and presently existing controversy exists between Plaintiffs and Honey Bee Holdings LLC concerning the parties' respective rights and obligations under the Sale Contract and, in particular, concerning the disposition of the $10,000.00 earnest money held in escrow. The Seller has asserted, or threatened to assert, a contractual right to retain the earnest money as liquidated damages on the theory that Plaintiffs defaulted; Plaintiffs deny that they defaulted and assert their right to the return of the earnest money. The controversy is ripe, definite, and concrete, touches the legal relations of parties having adverse legal interests, and is of sufficient immediacy to warrant declaratory relief.

96. Plaintiffs have a legally protectable interest in the earnest money and in the proper construction of the Sale Contract, including the financing contingency, waiver, buyer default, and the conditions under which the Seller may retain earnest money. Declaratory relief is proper because Plaintiffs seek an adjudication of present contractual rights and escrow entitlement, not merely a damages award for past breach, and because that determination will terminate uncertainty and materially narrow or resolve the seller-side dispute.

97. Plaintiffs respectfully request that the Court declare and adjudge: (a) that the financing contingency contained in Paragraph 4 of the Sale Contract remained operative unless and until properly waived or extinguished according to its terms; (b) that Plaintiffs exercised reasonable diligence and good faith in seeking loan approval and funding; (c) that the failure of the purchase to close was caused by Better's refusal to fund rather than by any default of Plaintiffs; (d) that Plaintiffs were not in default under the Sale Contract; (e) that Honey Bee Holdings LLC therefore acquired no contractual right to retain the earnest money as liquidated

damages under Paragraph 13; (f) that Plaintiffs are entitled to the return of the earnest money, together with any accrued interest, subject to the Court's further orders concerning disbursement; and (g) that Plaintiffs, if prevailing in the contract dispute with Honey Bee, are entitled to recover such litigation costs and attorney's fees as Paragraph 13 permits.

## COUNT XII — BREACH OF CONTRACT

***(Against Defendant Honey Bee Holdings LLC)***

98. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

99. The elements of a breach-of-contract claim under Missouri law are: (a) the existence and terms of a contract; (b) the plaintiff's performance or tender of performance; (c) the defendant's breach; and (d) damages resulting from that breach. Keveney v. Missouri Military Academy, 304 S.W.3d 98, 104 (Mo. banc 2010).

100. The Sale Contract is a valid and enforceable written agreement between Plaintiffs, as Buyers, and Honey Bee Holdings LLC, as Seller. Plaintiffs performed, tendered performance, or stood ready, willing, and able to perform their obligations, including depositing earnest money, pursuing financing with reasonable diligence and good faith, paying transaction costs, and preparing to close. Missouri law imposes a duty of reasonable diligence and good faith on buyers proceeding under a financing contingency, and whether that duty was satisfied is a factual question. Swartz v. Mann, 160 S.W.3d 411 (Mo. Ct. App. 2005).

101. Honey Bee Holdings LLC breached the Sale Contract by refusing to recognize the continuing force of the financing contingency, by asserting a right to retain the earnest money absent a buyer default, and by refusing to release or consent to the release of the earnest money after the closing failed due to Better's non-funding. Under Paragraph 13, any right to retain



Not an Official Court Document

earnest money as liquidated damages arises only if the default is by Buyer. Plaintiffs allege there was no such default.

102. Plaintiffs do not contend that Honey Bee owes them liquidated damages. Rather, Plaintiffs contend that Honey Bee breached by wrongfully claiming a contractual entitlement that never arose under the parties' agreement and by withholding consent to disbursement of funds to which Plaintiffs remained entitled under the Sale Contract as properly construed.

103. As a direct and proximate result of Honey Bee Holdings LLC's breach, Plaintiffs have been damaged by the withholding of the $10,000.00 earnest money, the loss of use of those funds, and the necessity of litigation to establish their contractual rights. To the extent Plaintiffs prevail in litigation between Buyer and Seller under Paragraph 13, Plaintiffs seek the contractual litigation costs and attorney's fees permitted by that provision, construed according to its terms. Ordower v. NRT Missouri, LLC, 528 S.W.3d 463 (Mo. Ct. App. 2017).

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendant Honey Bee Holdings LLC on Count XII for return of the earnest money, interest, loss-of-use damages as allowed by law, contractual litigation costs and attorney's fees as permitted, and such other and further relief as the Court deems just and proper.

## COUNT XIII — SUPPLEMENTAL RELIEF AND ORDER DETERMINING DISPOSITION OF EARNEST MONEY

***(RSMo §§ 527.080, 339.105; Against Defendant Honey Bee Holdings LLC)***

104. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

105. RSMo § 527.080 provides that further relief based on a declaratory judgment may be granted whenever necessary or proper, upon application to a court having jurisdiction to grant

the relief. Plaintiffs request such supplemental relief, both as part of, and in addition to, the declaratory relief sought in Count XI.

106. Paragraph 12 of the Sale Contract, consistent with RSMo § 339.105.4, provides that in the event of a dispute over the earnest money, the escrow agent is to retain the earnest money until it receives a written release, notice that a civil action has been filed to determine disposition, a final court judgment determining disposition, or such disposition as otherwise required by law. By this action, Plaintiffs have invoked judicial determination of the parties' rights to the earnest money.

107. Because Plaintiffs were not in default and Honey Bee has no right to retain the earnest money, Plaintiffs request supplemental relief determining that the earnest money belongs to Plaintiffs and directing Honey Bee Holdings LLC to execute any release or other document necessary to effectuate that disposition. If the escrow agent has deposited, or later deposits, the funds into the registry of the Court, Plaintiffs request an order disbursing those funds to Plaintiffs.

WHEREFORE, Plaintiffs respectfully pray that the Court enter supplemental relief consistent with the declaratory judgment sought in Count XI and determine the disposition of the earnest money in favor of Plaintiffs, together with such further relief as the Court deems just and proper.

## VII. DAMAGES SUMMARY AND VALUATION

108. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

109. Plaintiffs have suffered and will continue to suffer the following damages, in amounts to be proved at trial:

Not an Official Court Document

**(a)** OUT-OF-POCKET / RELIANCE DAMAGES: application fees, FHA case-number fees, lock fees, appraisal fees, credit-report fees, inspection fees, earnest money, the $4,111.00 cash-to-close wire, moving expenses, storage costs, double-rent overlap, and related transaction costs, in a total approximate amount of $32,051.00 as documented to date and subject to amendment as discovery progresses.

**(b)** LOST BENEFIT OF THE BARGAIN / EXPECTANCY OR FRAUD-BASED VALUE DIFFERENTIAL: to the extent permitted by the substantive law governing the particular count and supported by the evidence, the difference between the value represented and the value received, including the alleged $13,000 difference between appraised value and contract price, together with any additional rate-lock differential or expectancy-based damages recoverable under the applicable theory.

**(c)** PERSONAL PROPERTY DAMAGES: replacement cost of approximately $150,000.00 for ordinary household personal property lost or damaged as a foreseeable consequence of the storage and displacement caused by Better's conduct.

**(d)** HEIRLOOM / IRREPLACEABLE PROPERTY DAMAGES: the actual value to the owner of irreplaceable family heirlooms, photographs, and items of intrinsic family significance, in an amount determined by the jury. Ladeas v. Carter, 845 S.W.2d 45 (Mo. App. W.D. 1992); Breece v. Jett, 556 S.W.2d 696 (Mo. App. 1977).

**(e)** CONSEQUENTIAL / RELIANCE DAMAGES: losses naturally and foreseeably flowing from Better's conduct, including loss of the Wilson–Seller transaction, increased rent at temporary replacement housing, loss of health-insurance continuity, employment-deterioration consequences, additional moving costs, and storage costs.

**(f)** EMOTIONAL DISTRESS / NIED DAMAGES: past and future psychiatric and medical care; severe mental suffering; loss of sleep; aggravation of preexisting bipolar disorder; lost enjoyment of life; and related general damages. Bass v. Nooney Co., 646 S.W.2d 765; Widener, 230 S.W.2d 698.

**(g)** MMPA STATUTORY REMEDIES: actual damages, discretionary punitive damages, reasonable attorneys' fees (subject to retention of counsel), and costs. RSMo § 407.025.

**(h)** EARNEST-MONEY AND SELLER-RELATED RELIEF: return of the $10,000.00 earnest money held in escrow, loss of use of those funds, and the costs of litigation including reasonable attorney's fees recoverable from Defendant Honey Bee Holdings LLC under Paragraph 13 of the Sale Contract, as set forth in Counts XI through XIII.

**(i)** PRE-JUDGMENT INTEREST: on liquidated and ascertainable damages from the date demand for a specific amount was first made. RSMo § 408.040.

110. ***PUNITIVE DAMAGES FACTUAL PREDICATE.*** Plaintiffs plead the factual predicate for punitive damages on Counts III, V, VI, IX, and X, and on any other count for which punitive damages are legally available under the evidence and governing law, pursuant to RSMo § 510.261. No punitive damages are sought against Defendant Honey Bee Holdings LLC. Pursuant to RSMo § 510.261, no specific punitive amount is alleged in this petition; Plaintiffs reserve the right, after appropriate discovery and upon leave of court, to seek leave to amend to plead a specific punitive amount.

## VIII. JURY DEMAND

111. Pursuant to Article I, § 22(a) of the Missouri Constitution and Mo. R. Civ. P. 69.01, Plaintiffs hereby demand a trial by jury on all issues so triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, having pleaded all causes of action and incorporated all factual allegations by reference, Plaintiffs William Wilson and Sarah Wilson respectfully pray for judgment as follows:

A. On Count I (Breach of Mortgage Loan Commitment), against Defendant Better, in an amount in excess of $25,000.00 that is fair and reasonable;

B. On Count II (Breach of Implied Covenant of Good Faith and Fair Dealing), against Defendant Better, in an amount in excess of $25,000.00 that is fair and reasonable;

C. On Count III (Fraudulent Misrepresentation), against Defendant Better, in an amount in excess of $25,000.00 that is fair and reasonable, including benefit-of-the-bargain damages, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

D. On Count IV (Negligent Misrepresentation, in the alternative), against Defendant Better, in an amount in excess of $25,000.00 that is fair and reasonable for pecuniary loss;

E. On Count V (Missouri Merchandising Practices Act), against Defendant Better, for actual damages, discretionary statutory punitive damages, reasonable attorneys' fees (subject to retention of counsel), costs of investigation and litigation, and such further statutory remedies as the Court may deem appropriate;

F. On Count VI (Tortious Interference with the Wilson–Honey Bee Holdings Real-Estate Purchase Contract), against Defendant Better, in an amount in excess of $25,000.00 that is fair

Not an Official Court Document

and reasonable, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

G. On Count VII (Negligent Infliction of Emotional Distress, including aggravation of preexisting condition), against Defendant Better, in an amount in excess of $25,000.00 that is fair and reasonable;

H. On Count VIII (Promissory Estoppel, in the alternative), against Defendant Better, in an amount in excess of $25,000.00 that is fair and reasonable;

I. On Count IX (Civil Conspiracy), against Defendant Better, in an amount in excess of $25,000.00 that is fair and reasonable, jointly and severally against all conspirators, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

J. On Count X (Intentional Infliction of Emotional Distress), against Defendant Better, in an amount in excess of $25,000.00 that is fair and reasonable, including damages for severe emotional distress, aggravation of preexisting psychiatric condition, past and future medical and psychiatric care, and bodily-harm sequelae, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

K. On Count XI (Declaratory Judgment), against Defendant Honey Bee Holdings LLC, for a declaratory judgment declaring the rights of the parties as set forth in paragraph 97(a) through (g) above, including a declaration that Plaintiffs were not in default, that the financing contingency remained operative and was not waived, that Honey Bee Holdings LLC is not entitled to retain the earnest money, and that the earnest money should be returned to the Plaintiffs;

L. On Count XII (Breach of Contract), against Defendant Honey Bee Holdings LLC, for the return of the $10,000.00 earnest money together with interest, damages for loss of use, and the costs of litigation including reasonable attorney's fees under Paragraph 13 of the Sale Contract;

M. On Count XIII (Supplemental Relief and Order Determining Disposition of Earnest Money), against Defendant Honey Bee Holdings LLC, for an order directing the escrow agent to release and disburse the $10,000.00 earnest money, together with accrued interest, to the Plaintiffs;

N. Pre-judgment interest on liquidated and ascertainable damages from the date of demand pursuant to RSMo § 408.040;

O. Post-judgment interest at the statutory rate;

P. Costs of court, including filing and service costs and reasonable costs of investigation and litigation;

Q. Reasonable attorneys' fees pursuant to RSMo § 407.025 (against Better) should counsel be retained, and reasonable attorney's fees pursuant to Paragraph 13 of the Sale Contract (against Honey Bee Holdings LLC);

R. Trial by jury on all issues so triable; and

S. Such other and further legal and equitable relief as the Court deems just and proper.

Plaintiffs reserve the right, after appropriate discovery and upon leave of Court pursuant to RSMo § 510.261, to amend this petition to allege a specific punitive damages amount on those Counts for which the factual predicate for punitive damages has been pleaded.

Not an Official Court Document

Not an Official Court Document

Respectfully submitted,

WILLIAM WILSON, Plaintiff Pro Se
P.O. Box 227
Farmington, Missouri 63640
Telephone: (573) 315-5902
E-mail: Wilwilson1217@outlook.com

Sarah Wilson

SARAH WILSON, Plaintiff Pro Se
P.O. Box 227
Farmington, Missouri 63640
E-mail: Swilson121722@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of September, 2026, I caused a true and correct copy of Plaintiffs' Second Amended Petition for Damages, Declaratory Judgment, and Jury Demand, together with all exhibits thereto, to be served upon the following parties and counsel in the manner indicated below:

**Counsel for Defendant Better Mortgage Corporation**

Brendan H. Little
Richard M. Scherer, Jr.
LIPPES MATHIAS LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: 716-853-5100
Email: blittle@lippes.com; rscherer@lippes.com

Method of service: via the Court's CM/ECF electronic filing system, which will send notification of such filing to all counsel of record, and additionally by electronic mail to the addresses set forth above.

**Defendant Honey Bee Holdings LLC**

Honey Bee Holdings LLC
c/o David Schomer, Registered Agent
2675 Meyer Road
Festus, Missouri 63028

Method of service: Defendant Honey Bee Holdings LLC has not yet appeared in this action. A Notice of a Lawsuit and Request to Waive Service of Summons, together with two copies of the waiver form and a copy of the foregoing Second Amended Petition and exhibits, was mailed by first-class United States Mail, postage prepaid, to the registered agent at the address set forth above, pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

William Wilson

Not an Official Court Document

26SF-CC00101 Wilson v Better MortgageWilliam Wilson to: SFRCivil.eMail@courts.mo.gov 11/12/2026 09:59 AM

2 Attachments

Wilson_et_al_v_Better_Mortgage_Corporation__moedce-26-00885__0051.0 (1).pdf

Wilson_et_al_v_Better_Mortgage_Corporation__moedce-26-00885__0052.0.pdf

Dear clear,

Please see attached order from the federal court remanding this matter back to this court along with Plaintiffs 2nd amended petition adding honey bee holdings. Please file this in the subjected case.

Thank you.

William
573-315-5902

Not an Official Court Document

Not an Official Court Document

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

FILED
11/16/2026
Kristina Bone
CLERK, CIRCUIT COURT
ST. FRANCOIS COUNTY

| | | |
|---|---|---|
| WILLIAM WILSON and | ) | |
| SARAH WILSON, | ) | Case No. 26SF-CC00101 |
| P.O. Box 227 | ) | |
| Farmington, Missouri 63640 | ) | Division: ________ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BETTER MORTGAGE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE OF PLAINTIFFS' FIRST INTERROGATORIES DIRECTED TO DEFENDANT BETTER MORTGAGE CORPORATION**

Under Missouri Supreme Court Rules 43.01 and 57.01(b)(3) and (d), the undersigned certify as follows:

1. **Document served.** Plaintiffs' First Interrogatories Directed to Defendant Better Mortgage Corporation, Set No. 1, Interrogatories 1 through 25, served jointly by Plaintiffs William Wilson and Sarah Wilson.

2. **Party required to respond.** Defendant Better Mortgage Corporation.

3. **Date and manner of service.** On November 16, 2026, the interrogatories were served on Better Mortgage Corporation through its counsel of record, Matthew J. Bell, Martin Golden Lyons Watts Morgan PLLC, 1200 S. Big Bend Blvd., St. Louis, Missouri 63117, by e-mail to mbell@mgl.law.

4. **Electronic copy.** An electronic copy of the interrogatories in Microsoft Word (.docx) format was provided to the same counsel as an attachment to that e-mail.

Dated: November 16, 2026

William Wilson, Plaintiff pro se
P.O. Box 227, Farmington, Missouri 63640
(573) 315-5902
wilwilson1217@outlook.com

Sarah Wilson
Sarah Wilson, Plaintiff pro se
P.O. Box 227, Farmington, Missouri 63640
(573) 315-5902
swilson121722@gmail.com

Not an Official Court Document

Not an Official Court Document

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

FILED
11/16/2026
Kristina Bone
CLERK, CIRCUIT COURT
ST. FRANCOIS COUNTY

| | | |
|---|---|---|
| WILLIAM WILSON and | ) | |
| SARAH WILSON, | ) | Case No. 26SF-CC00101 |
| P.O. Box 227 | ) | |
| Farmington, Missouri 63640 | ) | Division: ________ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BETTER MORTGAGE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE OF PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT BETTER MORTGAGE CORPORATION**

Under Missouri Supreme Court Rules 43.01 and 58.01(b)(3) and (d), the undersigned certify as follows:

1. **Document served.** Plaintiffs' First Request for Production of Documents Directed to Defendant Better Mortgage Corporation, Set No. 1, Requests 1 through 73, served jointly by Plaintiffs William Wilson and Sarah Wilson.

2. **Party required to respond.** Defendant Better Mortgage Corporation.

3. **Date and manner of service.** On November 16, 2026, the requests were served on Better Mortgage Corporation through its counsel of record, Matthew J. Bell, Martin Golden Lyons Watts Morgan PLLC, 1200 S. Big Bend Blvd., St. Louis, Missouri 63117, by e-mail to mbell@mgl.law.

4. **Electronic copy.** An electronic copy of the requests in Microsoft Word (.docx) format was provided to the same counsel as an attachment to that e-mail.

Dated: November 16, 2026

William D Wilson

William Wilson, Plaintiff pro se
P.O. Box 227, Farmington, Missouri 63640
(573) 315-5902
wilwilson1217@outlook.com

Sarah Wilson

Sarah Wilson, Plaintiff pro se
P.O. Box 227, Farmington, Missouri 63640
(573) 315-5902
swilson121722@gmail.com

Not an Official Court Document

Electronically Filed - ST. FRANCOIS - November 18, 2026 - 03:32 PM

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY**
**STATE OF MISSOURI**

WILLIAM WILSON,
SARAH WILSON

Plaintiffs

v.

BETTER MORTGAGE CORPORATION,
HONEY BEE HOLDINGS LLC

Defendants.

CASE NO.: 26SF-CC00101

**JOINT VOLUNTARY PARTIAL DISMISSAL WITH PREJUDICE**

COMES NOW the Parties, Plaintiffs William Wilson and Sarah Wilson (collectively "Plaintiffs) and Defendant Better Mortgage Corporation ("Defendant"), and pursuant to Sup. Ct. R. 67.02, acts as follows:

1. Plaintiffs voluntarily dismiss all claims against Defendant Honey Bee Holdings LLC asserted in the Second Amended Petition with prejudice.

2. This Voluntary Dismissal dismisses all pending claims against and/or brought by Defendant Honey Bee Holdings LLC only and is intended to fully dispose of this Case against Defendant Honey Bee Holdings LLC, who has not appeared in this action or otherwise responded to the Second Amended Petition.

WHEREFORE, the Parties jointly dismiss all claims and issues against Defendant Honey Bee Holdings LLC, with prejudice, and request such other relief as this Court deems just and proper.

[SIGNATURES AND SERVICE ON FOLLOWING PAGE]

Not an Official Court Document

Electronically Filed - ST. FRANCOIS - November 18, 2026 - 03:32 PM

Respectfully Submitted,

Dated: November 18, 2026

By: /s/ Matthew J. Bell
Matthew J. Bell, Mo. Bar No. 67241
MARTIN GOLDEN LYONS WATTS MORGAN PLLC
1200 S. Big Bend Blvd.
St. Louis, Missouri 63117
mbell@mgl.law
P: (314) 669-5490
F: (888) 632-6937
*Attorneys for Defendant Better Mortgage Corporation*

Dated: November 18, 2026

By: /s/ William Wilson
Plaintiff, pro se
P.O. Box 227
Farmington, Missouri
P: (573) 315-5902
wilwilson1217@outlook.com

By: /s/ Sarah Wilson
Plaintiff, pro se
P.O. Box 227
Farmington, Missouri
P: (573) 315-5902
Swilson121722@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the Court's e-filing system on November 18, 2026, to all parties of record.

By: /s/ MATTHEW J. BELL

Not an Official Court Document